LAW OFFICES OF RON BOCHNER
Ron K. Bochner - 160093
3333 Bowers Avenue, Suite 130
Santa Clara, California 95054
(408) 200-9890

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DIVISION OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOEMIA CARVALHO, et al., | Case No.  C 08-1317 JF (HRL) |
| Plaintiff, | NOTICE OF MOTION TO CERTIFY CLASS ACTION |
| vs. | |
| CREDIT CONSULTING SERVICES, INC. dba CCS, et al., | |
| Defendants. | DATE:        September 26, 2008 TIME:        9:00 a.m. DEPT.:       COURTROOM 3 |
| _____/ | |

PLEASE TAKE NOTICE that on September 26, 2008, or such date as the court may set,

at 9:00 a.m. in Courtroom 3 of the above court, located at 280 South First Street, San Jose,

California, Plaintiff Noemia Carvalho, individually and on behalf of all others similarly situated,

will make the above entitled motion.

The motion seeks an order certifying the matter as a class action.  This motion will be

1   made on the ground that the complaint meets all the requirements for class certification.  The

2   motion will be based upon this notice, the attached points and authorities, the attached

3   Declarations of Noemia Carvalho, Evan Hendricks and Ron Bochner, the court file in this case

4   and such other and further evidence as may be adduced at or before any hearing on the matter.

5

6   August 21, 2008                    LAW OFFICE OF RON BOCHNER

7

8

9                                      BY _____

10                                        RON K. BOCHNER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

2

# TABLE OF CONTENTS

I.  BACKGROUND-CLASS ACTION ALLEGATIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND-CREDIT REPORTING AND CREDIT REPORTING AGENCIES  . . . . 2

III.  FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.  Legal Standards for Determining Motion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.  The Proposed Class Satisfies the Requirements of Rule 23(a)  . . . . . . . . . . . . . . 10

      1.  The Class is so numerous that joinder of all members is impracticable  . . . . . . . . . 12

      2.  There are questions of law and fact common to the Class  . . . . . . . . . . . . . . . . . . . . 13

      3.  The claims of the representative parties are typical of the claims of the Class  . . . . . 16

      4.  The Plaintiffs will fairly and adequately protect the interests of the Class  . . . . . . . . 17

      C.  The Conditions of Rule 23(b) Have Been Met  . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      1.  The Conditions of Rule 23(b)(2) Have Been Met  . . . . . . . . . . . . . . . . . . . . . . . 19

      2.  The Conditions of Rule 23(b)(3) Have Been Met  . . . . . . . . . . . . . . . . . . . . . . . 20

          a.  Common Issues Predominate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          b.  Class Action is Superior  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     V.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## **TABLE OF AUTHORITIES**

CASE LAW

Abramovitz v. Ahern, 96 FRD 208 (D Ct 1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Amchem Products v. Windsor, 521 US 591 (1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Anderson v. City of Albuquerque, 690 F.2d 796 (10th Cir. 1982)  . . . . . . . . . . . . . . . . . . . . . 9

Andrews v. Trans Union, 7 F.Supp.2d 1056 (CD Cal. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . 20

Ansari v. NYU 179 FRD 112 (SD NY 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Baby Neal v. Casey, 43 F.3d 48 (3d. Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

Ballard v. Equifax, 186 FRD 589 (ED Cal. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

Chandler v. Southwest Jeep-Eagle, 162 F.R.D. 302 (N.D. Ill. 1995)  . . . . . . . . . . . . . . . . . . 14

Clark v. Experian, 2001 WL 1946329 (DSC 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Clark v. Experian, 2002 WL 2005709 (DSC 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Consolidated Rail v. Hyde Park 47 F3d 473 (2nd Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . 13

Cook v. Rockwell Int'l Corp., 151 F.R.D. 378 (D. Colo. 1993)  . . . . . . . . . . . . . . . . . . . . . . 18

Crane v. Trans Union, 282 F.Supp.2d 311 (ED Pa. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Credit Data of Arizona v. Arizona, 602 F.2d 195 (9th Cir. 1979)  . . . . . . . . . . . . . . . . . . . . . 20

CRLA v. Legal Services, 917 F2d 1171 (9th Cir. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Culinary Bartender Fund v. Las Vegas Sands, 244 F3d 1152 (9th Cir. 2001)  . . . . . . . . . . . . 18

Dawes v. The Philadelphia Gas Commission, 421 F. Supp. 806 (E.D. Pa. 1976)  . . . . . . . 10, 15

Deposit Guarantee v. Roper, 445 US 326 (1980)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Dukes v. Wal-Mart, 509 F3d 1168 (9th. Cir. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Eisen v. Carlisle & Jacqueline, 417 U.S. 156 (1974)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fraga v. Smith 607 F.Supp 517 (D Or 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . 16

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Hanlon v. Chrysler, 150 F3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Harris v. Palm Springs Alpine Estates 329 F2d 909 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . 12

Hassine v. Jeffes, 846 F.2d 169 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Heartland Communications v. Sprint Communications, 161 F.R.D. 111 (D. Kan 1995) . . . . . 15

Hoffman Elec., Inc. v. Emerson Elec. Co., 754 F. Supp. 1070 (W. D. Pa. 1991) . . . . . . . . . . 10

Hummel v. Brennan, 83 F.R.D. 141 (E.D. Pa. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Farmers Insurance FCRA Litigation, 2006 WL 1042450 (WD Ok 2006) . . . . . . . . . . 22

In re Folding Cartons Antitrust Litigation, 75 F.R.D. 727 (N.D.Ill. 1977) . . . . . . . . . . . . . . . 9

In re ORFA Sec. Litig., 654 F. Supp. 1449 (D.N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Prudential Insurance Company America, 148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . pas.

In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 21

In re School Asbestos Litig., 104 F.R.D. 422 (ED Pa. 1984) . . . . . . . . . . . . . . . . . . . . . . . pas.

In re School Asbestos Litig., 789 F.2d 996 (3rd Cir., 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Visa Check/Master Money Antitrust Litigation, 280 F3d 124 (2d Cir. 2001) . . . . . . . . . 20

Jackson v. Foley 156 FRD 538 (EDNY 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Jefferson v. Ingersoll International, Inc., 195 F.3d 894 (7th Cir. 1999) . . . . . . . . . . . . . . . . . 21

Jenkins v. Raymark Indus., Inc., 782 F.2d 468 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 13, 22

Keele v. Wexler, 1998 U.S. App. LEXIS 15029 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 14

King v. Kansas City Southern Industries, 519 F.2d 20 (7th Cir. 1975) . . . . . . . . . . . . . . . . . . 7

Lake v. First Nationwide Bank, 156 F.R.D. 615 (E.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . 22

Lerwill v. Inflight Motion Pictures, 582 F2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . 17

Lewis v. Gross, 663 Fsupp2D 1164 (EDNY 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lewis v. Curtis, 671 F2d 779 (3rd Cir., 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Moskowitz v. Lopp, 128 F.R.D. 624 (E.D. Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mullen v. Treasure Chest Casino, 186 F3d 620 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 20

Murray v. GMAC, 434 F3d 948 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Paxton v. Union Nat'l Bank, 688 F.2d 552 (8th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Piel v. National Semiconductor Corp., 86 F.R.D. 357 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . 9

Pruitt v. Allied Chemical, 85 FRD 100 (ED Va. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Robertson v. NBA 389 F.Supp. 867 (SD NY 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rosario v. Livaditis 963 F2d 1013 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sampson v. Equifax, 2005 WL 2095092 (SD Ga. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Schwarm v. Craighead, 233 FRD 655 (ED Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

Snider v. Upjohn Co., 115 F.R.D. 536 (E.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ventura v. New York City Health 125 FRD 595 (SDNY 1999) . . . . . . . . . . . . . . . . . . . . . . . . 13

West v. Costen, 558 F. Supp. 564 (W. D. Va. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

White v. First American Registry, 2005 WL 1713065 (SD NY 2005) . . . . . . . . . . . . . . . . . . . 22

White v. E-Loan, 2006 WL 2411420 (ND Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Wilborn v. Dun & Bradstreet Corporation, 1998 U.S. Dist. LEXIS 12618 (N.D. Ill. 1998) . . . 14

STATUTES

California Civil Code section 1785.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

California Civil Code section 1785.31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

FRCP Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

FRCP Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

FRCP Rule 23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . pas.

SECONDARY AUTHORITIES

2  H. Newberg, Newberg on Class Actions (3d Ed. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 18

Advisory Committee Note to Rule 23(b)(3), 39 FRD 102 (1966) . . . . . . . . . . . . . . . . . . . . 20

Manual for Complex Litigation, Third, section 30.14 . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Manual for Complex Litigation, Fourth, section 21.222 . . . . . . . . . . . . . . . . . . . . . . . . . 23

Schwarzer, Federal Civil Procedure Trial, section 10:404 . . . . . . . . . . . . . . . . . . . . . . . 19

1

2   LAW OFFICES OF RON BOCHNER
    Ron K. Bochner - 160093
3   3333 Bowers Avenue, Suite 130
    Santa Clara, California 95054
    (408) 200-9890
4
    ATTORNEY FOR PLAINTIFF
5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DIVISION OF CALIFORNIA

10                       SAN JOSE DIVISION

11

12

13

14  NOEMIA CARVALHO, et al.,              Case No.  C 08-1317 JF (HRL)

15                                        POINTS AND AUTHORITIES IN
             Plaintiff,                   SUPPORT OF MOTION TO CERTIFY
16                                        CLASS ACTION
    vs.
17

18  CREDIT CONSULTING SERVICES, INC.
    dba CCS, et al.,
19                                        DATE:      September 26, 2008
                                          TIME:      9:00 a.m.
20           Defendants.                  DEPT.:     COURTROOM 3

21
    _____/
22
    **I.  BACKGROUND-CLASS ACTION ALLEGATIONS**
23
             Plaintiff NOEMIA CARVALHO respectfully submits this memorandum in support of her
24
    Motion for Class Certification (the "Motion") pursuant to Federal Rule of Civil Procedure 23 and
25
    California Civil Code ("CC") section 1785.31(c), seeking certification of this matter as a class
26
    action and Plaintiff Carvalho as class representative.

             This is a consumer class action under the California Consumer Credit Reporting Agencies

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

Act ("CCRAA") CC sections 1785.16, et seq. brought on behalf of all California consumers who during the two year period prior to the filing of this action to the date of judgment have been subject to violations of the CCRAA by defendants Experian Information Solutions, Inc. ("Experian"), Equifax Credit Information Services, Inc, Equifax, Inc. ("Equifax") and Trans Union, LLC ("TU"), referred to collectively as "defendants" or the consumer credit reporting agencies ("CRAs"), as follows:

> 1. California consumers subject to reinvestigation procedures which do not allow for and assure review and consideration of all relevant information provided by consumers in the reinvestigation process in a manner which complies with Civil Code section 1785.16(a) and (b).

> 2. California consumers who did not receive an adequate notice of the right to receive and/or an adequate description of the procedure used to determine the accuracy and completeness of the disputed information compliant with Civil Code section 1785.16(d)(4).

The focus of the first concern and class are the subjugation of the class members to the use of the Consumer Dispute Verification (CDV) process as the means of fulfilling the reinvestigation process set forth by CC section 1785.16(a) and (b). Complaint paragraphs 8 and 13. As to each of the defendants, it includes the fact that none of them make an effort to convey documents provided by consumers to the furnisher of the disputed information.

The focus of the second concern and class is defendants' failure to provide anything more than a generalized, non-fact specific response to consumer requests for a description of the procedure used to determine the accuracy or completeness of the information in dispute in violation of CC section 1785.16(d)(4). Complaint paragraphs 9, 14.

Plaintiff requests relief in the form of injunctive relief (CC section 1785.31(b)) and statutory damages (CC section 1785.31(a)(2) and (c).

II.    **BACKGROUND-CREDIT REPORTING AND CREDIT REPORTING AGENCIES**

In the case of negative credit reporting, defendants operate something akin to an alternate judicial system, called credit reporting, whereby information is gathered about purported consumer bad debts and is made available to credit grantors for a price. In the instance of negative credit reporting of these purported consumer debts, there are two major effects they have

LAW OFFICE OF RON BOCHNER
3333 Bowers Ave., Suite 130, Santa Clara, CA 95054
(408) 200-9890

1  on consumers: first, they act as non-judicial liens on future credit transactions, typically requiring

2  payment before future credit is extended and, second, by negatively impacting credit scores,

3  increase the cost of financing credit purchases (if they do not foreclose completely on any such

4  extension).

5      An entity providing information to CRAs is called a furnisher.  Oftentimes, as in this case,

6  these are debt collectors, not the original purported creditors.  Once furnishers report entries

7  aoubt consumers, the CCRAA puts the burden on the consumer to dispute entries on the report.

8  This obligation is found at CC section 1785.16.  Once the consumer makes a dispute, the CRA is

9  obligated to "reinvestigate" the disputed information.  CC section 1785.16(a).  In conducting the

10  reinvestigation, the CRA is required to review and consider all relevant information submitted by

11  the consumer with respect to the disputed item.  CC 1785.16(b).  Pursuant to CC 1785.16(d)(4),

12  upon completion of the reinvestigation, the CRA must provide a notice that, if requested by the

13  consumer, a description of the procedure used to determine the accuracy and completeness of the

14  information disputed will be provided to the consumer.

15      The defendant CRAs each maintain a method of reinvestigation of consumer disputes

16  described as a consumer dispute verification (CDV), typically an automated consumer dispute

17  verification (ACDV) system.  The dispute verification system essentially uses a one page form

18  that reduces the consumer's dispute–no matter how lengthy or thorough or well documented-- to

19  a generic two digit code and sometimes a one-line paraphrase of the consumer's dispute.  It then

20  sends these forms, either by mail or fax in the case of the CDV or electronically in the case of an

21  ACDV to the entity that furnished the information. There is nothing in the CDV system that

22  requires or assures that any information is actually reviewed by the furnisher, or any actual

23  investigation is performed, in responding to the dispute.  In virtually no case are documents a

24  consumer submits with his or her dispute sent to the furnisher.  Indeed, the ACDV system has no

25  capability of sending documents.  To verify a debt, no explanation of the nature of the

26  investigation or explanation of its findings are required of the furnisher by any of the credit

reporting agencies.  See Declaration of Evan Hendricks, paragraph 19-21; See ***Crane v. Trans***

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

3

1 | *Union*, 282 F.Supp.2d 311, 315-317 (ED Pa. 2003).

2 | **III. FACTS**

3 |     In October of 2001, plaintiff obtained medical treatment at a facility called Bayside

4 | Medical Group.  While not relevant, at all times, Plaintiff was covered for treatment and all bills

5 | incurred therefor by her insurer, Blue Cross of California.  In March of 2003, Bayside informed

6 | plaintiff that the bill had not been paid for these services.  Plaintiff did some research and

7 | determined that Bayside had billed Blue Shield of California instead of Blue Cross of California

8 | for the medical treatment.  It appears that Bayside then assigned the debt to a debt collector and

9 | plaintiff began receiving debt collection notices from the debt collector.  Carvalho Declaration

10 | paragraph 2.

11 |     In approximately August of 2004, Ms. Carvalho began noticing that her credit report

12 | contained an entry from the debt collector and Bayside contending she owed them money for the

13 | treatment provided.  Beginning in September, 2004, plaintiff complained to the debt collector and

14 | each of the defendant consumer reporting agencies about this item's inclusion on her consumer

15 | credit report.  In doing so, she provided 15 pages of  documentation showing what was disputed

16 | and why and identifying, amongst, other things, the various entities involved, their addresses and

17 | the phone numbers of contact people. However, the derogatory item was not removed from her

18 | consumer credit report anytime before complaint was filed.  True and correct copies of the

19 | September, 2004 letter were produced by each of the defendants in response to discovery.  See

20 | Exhibit A to the Declaration of Ron Bochner, Equifax documents 5-28, Exhibit B, Experian

21 | documents 1-17, Exhibit C, Trans Union documents 51-67.  Carvalho Declaration, paragraph 3.

22 |     Discovery in this matter reveals that the CDV procedure consists of completing an

23 | electronic form including a two letter code and, sometimes, one sentence interpretation of the

24 | consumer's dispute.   Documents reflecting these procedures were produced by defendants in

25 | discovery, true and correct copies of which are attached to the Declaration of Ron Bochner as

26 | Exhibit A, Equifax, Indicating Manual, Module 1, Equifax documents 156-159, 700-703;

Verification Processer Procedure Manual, Equifax documents 504-506;  Equifax, Responses to

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

4

Special Interrogatories, Set One, Number 3 (at 4:6-25); Exhibit B, Experian, Consumer Data

Industry Association, Credit Reporting Resource Guide, Experian documents 572-575;

Consumer Investigation Procedures Participant Guide, Experian documents 635-6, 1003-4;

Exhibit C, Trans Union, CRS2 Disclosure Training Manual, Trans Union documents 365-66:

> "An investigation is when the consumer may write into Trans Union stating specifically what they do not agree with on their credit file.  Trans Union receives their written request for a dispute and it is sent to the Dispute Department.  The Dispute Department receives all correspondence concerning the consumer's dispute that needs to be processed.  A dispute investigator will determine if a certain credit company that is reporting on the consumer's file needs to be investigated per the consumer's request.  The dispute investigator will then send out a Consumer Dispute Verification form to the credit grantor. The dispute investigators job is done."

[emph. in original]  Trans Union, Dispute Processing Reference Manual, Trans Union documents

580-581; Trans Union response to Special Interrogatories, Set One, Number 3;  Hendricks

Declaration at paragraphs 19-21.   It does not include conveying documents a consumer may

attach to a dispute.  See Equifax documents 41, 69, 70, 123, true and correct copies of which are

attached as Exhibit A to the Bochner Declaration, Exhibit B, Experian documents 587-601, 1831-

1837, 2070-2075, Exhibit C, Trans Union documents 83-86, 128-131, 206-208.

In regard to Trans Union in particular, consistent with its policy, described to plaintiff that

it could not "accept" her attached documents and that such documents were "unusable" and

refused to even consider the attachments.  See Trans Union documents 81, 82, true and correct

copies of which are attached to the Declaration of Ron Bochner as Exhibit C, This remains true,

despite the fact that Trans Union's own credit reports specifically request (and acknowledge the

right to) that "[a]ny pertinent information and copies of all documents you have concerning an

error should be given to the consumer reporting agency."  TU documents 122, 148, 172, 200, 226,

252, true and correct copies of which are attached as Exhibit C to the Declaration of Ron

Bochner.  Trans Union's policy is to review only a narrow band of self-proving documents

associated with consumer disputes.  TU document 627, a true and correct copy of which is

attached as Exhibit C to the Bochner Declaration.  This is in plain contravention of CC section

1785.16(b)'s requirement that a credit reporting agency must review and consider all relevant

information submitted by the consumer with respect to the disputed item.

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

5

1    Equifax confirms that it received 3,043,050 consumer dispute reinvestigation requests, or

2 about 8,337 a day in 2006. See, Equifax Response to Special Interrogatories, Set Three,

3 Interrogatories 3 and 4, true and correct copies of which are attached to the Declaration of Ron

4 Bochner as Exhibit A.  Experian states that the average number of consumer dispute

5 reinvestigation requests received on a daily basis that were sent to third parties for verification in

6 2006 was 41,475 and that year it received 15,138,492 total such requests.  See Experian's Second

7 Supplemental Response to Plaintiff's Special Interrogatories, Set Five, Numbers 3 and 4, a true

8 and correct copy of which is attached to the Declaration Ron Bochner as Exhibit B.  Trans Union

9 confirms that between May 1, 2006 and July 31, 2007 it received 19,030,289 tradeline disputes

10 and performed 4,332,111 reinvestigations in 2006.  See Trans Union Supplemental Responses to

11 Special Interrogatories, Set Two, Number 1 and Supplemental Responses to Special

12 Interrogatories, Set Three, Number 4, true and correct copies of which are attached as Exhibit C

13 to the Declaration of Ron Bochner.

14    Additionally, after getting no satisfaction about her disputes, Ms. Carvalho requested,

15 pursuant to CC section 1785.16(d)(4) a description of the procedure used to determine the

16 accuracy or completeness of the information in dispute.  See requests, Equifax documents 42-43,

17 76-82, Experian documents 18, 24, Trans Union documents 101, 230-3, true and correct copies of

18 which are attached to Exhibits A, B and C, respectively.  In apparent response, the defendant

19 credit reporting agencies provided, at best, a generalized description of the reinvestigation

20 process, instead of an explanation of the procedure actually used to make a determination of the

21 accuracy or completeness of the information disputed.  See Equifax documents 104, 118,

22 Experian documents 86 (not clear if responsive to April 1, 2005 request, if so it was untimely)

23 124, 142 (not clear if responsive to March 17, 2006 request) and 2192-2195, Trans Union

24 documents 103 (non-response), 255-260, true and correct copies of which are attached to the

25 Declaration of Ron Bochner as Exhibits A, B and C, respectively.  Defendants provide such

26 responses as a matter of routine practice and policy.  Equifax, Response to Requests for

Admission, Set One, Number 1, Experian documents 2192-2195 and TU documents 723-724.

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

6

1  true and correct copies of which are attached to the Declaration or Ron Bochner as Exhibits A, B,

2  and C, respectively.

3      These descriptions simply restate the statutory requirements for reinvestigations and do

4  not attempt to explain how the individual's consumer dispute was reinvestigated in fact.  Indeed,

5  in the case of Equifax and Experian, these "descriptions" automatically come *before* the

6  consumer even requests them, but instead with the results of the reinvestigation.  Experian has

7  stated that it has provided the "standard paragraph explaining the investigation process to

8  consumers 1,711,566 times" between April 1, 2004 and June 1, 2007.  See Experian response to

9  Special Interrogatories, Set Four, Number 4, a true and correct copy of which is attached as

10  Exhibit B to the Declaration of Ron Bochner.  Trans Union does not automatically include the

11  generalized language in providing the response to the reinvestigation, but acknowledges sending

12  out 270,365 copies of its form description letter (TU 723-4) between May 1, 2005 and May 31,

13  2007.  See, TU documents 723-24 and Trans Union response to Special Interrogatories, Set Two,

14  Number 2, true and correct copies of which are attached as Exhibit C to the Declaration of Ron

15  Bochner.  Indeed, given their entire lack of specificity, they could come even before

16  reinvestigations are performed.  This very generality and all purpose nature of the disclosure

17  shows the very lack of compliance with (d)(4) that plaintiff complains of.

18  **IV.  ARGUMENT**

19      "Rule 23 must be liberally interpreted" and read to "favor maintenance of class actions."

20  *King v. Kansas City Southern Industries*, 519 F.2d 20, 25-26 (7th Cir. 1975).

21      Class actions are essential to enforce laws protecting consumers.  The Supreme Court

22  confirms: Class actions serve an important function in our system of civil justice because they

23  permit plaintiffs to "vindicate the rights of individuals who otherwise might not consider it worth

24  the candle to embark on litigation in which the optimum result might be more than consumed by

25  the cost." *Deposit Guarantee v. Roper*, 445 US 326, 338 (1980).  "Class actions serve an

26  important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99

(1981).

LAW OFFICE OF RON BOCHNER
3333 Bowers Ave., Suite 130, Santa Clara, CA 95054
(408) 200-9890

1    In determining whether a class will be certified, the merits of the case are not examined

2    and the substantive allegations of the complaint should be taken as true.   ***Eisen v. Carlisle &***

3    ***Jacqueline***, 417 U.S. 156, 177-78 (1974) ***Blackie v. Barrack***, 524 F.2d 891, 901 (9th Cir. 1975),

4    ***cert. denied***, 429 U.S. 816 (1976).

5    Plaintiff seeks certification of a plaintiff class or classes against defendants defined as any

6    or all of the below:

7    1. California consumers subject to reinvestigation procedures using the consumer dispute
     verification method or the automated consumer dispute verification method.

8
9    2. California consumers subject to form descriptions of the procedure used to determine
     the accuracy and completeness of the disputed information.

10   Plaintiff intends "procedures" in 1. above to specifically include:

11   A.  a CDV method that limits the ability to review and consider all relevant information

12   provided by the consumer in the reinvestigation process;

13   B.  a CDV method that does not allow or require the furnisher to state how it actually

14   investigates a consumer dispute;

15   C.  a CDV method that does not allow for the relay of consumer dispute support

16   documentation to the furnisher;

17   D.  a CDV method that does not include the originating creditor or other entity assigning

18   an account to the ultimate furnisher of the information to a CRA;

19   E.  a reinvestigation method that exclusively relies on the furnisher to conduct the

20   investigation and decide the validity of the disputed information; and

21   F.  any method that purports to fulfill a credit reporting agency's duty to reinvestigate

22   solely through the use of the CDV method of reinvestigation.

23   **A.    Legal Standards for Determining Motion**

24   For a suit to be maintained as a class action under Rule 23, Plaintiffs must allege facts

25   establishing each of the four threshold requirements of subsection (a) of the Rule, which

26   provides:

     One or more members of a class may sue or be sued as representative parties on
     behalf of all only if (1) the class is so numerous that joinder of all members is

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

8

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs must also allege that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b).

Under Rule 23(b)(2), a class action will be appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Under Rule 23(b)(3), a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Under Rule 23(c)(4), where appropriate an action may be brought or maintained as a class action with respect to particular issues and under (c)(5) where appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

Plaintiffs bear the initial burden of advancing reasons why a putative class action meets the requirements of Rule 23. However, Plaintiff's burden is not a heavy one. *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 368 (E.D. Pa. 1980). *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982). Once a plaintiff has made a preliminary legal showing that the requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise. 2 H. Newberg, *Newberg on Class Actions* (3d Ed. 1992) ("Newberg") § 7.22 at 7-74 to 7-75. The Court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action," so that it will remain an effective vehicle for deterring corporate wrongdoing. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); accord, *In re Folding Cartons Antitrust Litigation*, 75 F.R.D. 727 (N.D.Ill. 1977).

As defined, this case is precisely the type that courts have repeatedly found should be certified for class treatment. The class is united with respect to proof of liability and potential

1  injury because the claims are based on defendants' uniform policies and practices and

2  standardized CDVs and ACDVs and uniform descriptions of the investigation performed.  These

3  uniform procedures, the improper exercise of which affected all members in the same fashion,

4  constitute a failure to comply with the CCCRA's dual requirements: that all dispute information

5  provided by a consumer be reviewed and considered as part of the reinvestigation process and

6  that a consumer be given an explanation of how that purported reinvestigation was in fact

7  performed upon request.  The two policies here in dispute are designed to and do go together.

8  Since the reinvestigation process and result do not include the consumer after the dispute is made,

9  1785.16(a) and (b) and (d)(4) exist to assure the process actually takes place and allows the

10  consumer to know how in fact the dispute was "adjudicated."  Here, unless the class is certified

11  the minimal assurance of fairness the CCRAA affords consumers will not be guaranteed.

12          B.      **The Proposed Class Satisfies the Requirements of Rule 23(a)**

13          The determinations called for by Rule 23(a) are questions addressed to the sound

14  discretion of the district court.  *Gulf Oil Co.*, *supra* at 100.   Courts have adopted a liberal

15  construction of Rule 23.  *Blackie, supra* at 901-05.

16          The focus is simply on whether the prerequisites of Rule 23(a) have been met.  ***Dawes v.***

17  ***The Philadelphia Gas Commission***, 421 F. Supp. 806, 813 (E.D. Pa. 1976).  In determining

18  whether an action may be maintained as a class action, the issue is "merely whether the

19  representative plaintiffs have demonstrated the probability of the existence of a sufficient number

20  of persons inclined and similarly situated."  Moreover, since class determination is made at the

21  pleading stage of the action, the substantive allegations in the complaint are accepted as true for

22  purposes of the class motion.  *Blackie, supra* at 901.   "Courts take a common sense approach

23  that the class is united by a common interest in determining whether a defendant's course of

24  conduct is in its broad outlines actionable, which is not defeated by slight differences in class

25  members' positions."  *Id.* at 902-3.  If any doubt exists, "any error, if there is to be one, should be

26  committed in favor of allowing the class action."  *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754

F. Supp. 1070, 1075 (W. D. Pa. 1991);  *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989).

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

10

1    The acts which are alleged to have occurred and, more importantly, continue to occur,

2    violate important public rights.  By enacting the reinvestigation provisions of the CCRAA, the

3    legislature determined that consumers must have a reasonable, fair and thorough opportunity to

4    assure that items being reported about them and used by third persons are, in fact, accurate.  This

5    requirement is doubly important as it is the sole means by which a consumer may dispute what

6    can be an entirely unfounded and inaccurate assertion about their character.  The matters at issue

7    are not insubstantial: they go to basic financial credit concerns such as purchasing a home.  Here,

8    as currently practiced by each of the CRAs, the reinvestigation process allows the party

9    originating the disputed information to be the sole investigator and judge of the veracity of what

10   they themselves report and oftentimes have an interest in continuing to report.  Moreover there is

11   nothing that assures the furnisher will actually do any investigation at all. As the sole remedy, it

12   is clear that the reinvestigation procedures were meant to be something more than a pro forma

13   parroting back and forth of the information provided.  Unfortunately, that is precisely what the

14   CDV process is.  See *Crane, supra* at 315-317; *Sampson v. Equifax*, 2005 WL 2095092 (SD Ga.

15   2005).

16   Moreover, and doubly injurious to California consumers, even when the consumer

17   requests a description of how her dispute was actually investigated, she is given nothing more

18   than a boilerplate recitation of the defendants' reinvestigation duties, not what was actually done

19   in her particular case.  In essence meaning that, after the consumer makes a dispute, she is left

20   entirely in the dark about how the dispute has been "adjudicated" no matter how much effort she

21   makes–unless a lawsuit and discovery procedures are initiated in a court of law.  As such,

22   prosecution as a class action is appropriate and desirable.

23   Further, judicial economy requires that this action proceed through the class action

24   vehicle.  The CCCRA specifically provides for class actions in the case of willful violation of any

25   of its provisions.  CC section 1785.31(c).  The Plaintiff and the Class members' only alternative to

26   proceeding as a class action is to file individual claims.  To do so would be time consuming and

redundant, as each Plaintiff would be required to conduct discovery into Defendants' business

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

11

1  practices to prove exactly the same allegations and proffer exactly the same evidence.  Each

2  Plaintiff would then be required to brief and argue the same questions of law.

3       This action, as discussed below, meets all the requirements of Rule 23(a).  This class is

4  ascertainable by and through the fact that the use of CDVs are uniform and so too the practices

5  and procedures used pursuant to them.  The practices are similarly uniform, i.e., what the CDVs

6  allow in terms of reflecting consumer disputes is uniform–limitation to a two word code and one

7  sentence statement, failure to determine what a furnisher does in response to the CDV, the failure

8  of the CDV system to allow for relaying of consumer dispute support documentation.  Each of

9  these shows a well-defined community of interest exists and common issues of fact and law

10 predominate.  The same is true for the form response to consumer requests for a description of the

11 reinvestigation process.  Further, the proposed Class Representative meets each of the applicable

12 criteria for certification since he suffered all the delicts alleged in the complaint.

13      **1. The Class is so numerous that joinder of all members is impracticable**

14      Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so

15 numerous that joinder of all members is impracticable."  FRCP 23(a)(1).  The Rule does not

16 require that joinder be impossible; rather, joinder of all members is impracticable when the

17 procedure would be "inefficient, costly, time-consuming, and probably confusing."  ***Harris v.***

18 ***Palm Springs Alpine Estates*** 329 F2d 909, 913-4 (9th Cir. 1964).  This Court may make

19 "common sense assumptions" in order to support the finding of numerosity.  ***Snider v. Upjohn***

20 ***Co.***, 115 F.R.D. 536, 539 (E.D. Pa. 1987).  Moreover, it is permissible to estimate class size.  ***In***

21 ***re ORFA Sec. Litig.***, 654 F. Supp. 1449, 1464 (D.N.J. 1987).

22      The numerosity requirement is satisfied as long there is a reasonable basis for believing

23 the number of class members exceeds the minimum required.  It is then incumbent on the

24 defendant to show a more accurate figure.  In particular, lack of knowledge as to the exact

25 number of class members should not be a bar to maintaining a class action where the defendants

26 alone have access to such data.  ***Jackson v. Foley*** 156 FRD 538 (EDNY 1994); ***Ventura v. New***

***York City Health*** 125 FRD 595, 599 (SDNY 1999); ***Lewis v. Gross*** 663 Fsupp 1164, 1169

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

12

1  (EDNY 1986). "Generally speaking, courts will find that the "numerosity" requirement has been

2  satisfied when the class comprises 40 or more members and will find that it has not been satisfied

3  when the class comprises 21 or fewer." *Ansari v. NYU* 179 FRD 112, 114 (SD NY 1998);

4  *Consolidated Rail v. Hyde Park* 47 F3d 473, 483 (2nd Cir. 1995).

5      Here, there is no dispute that there will be thousands, at a minimum, of each type of class

6  member. It is without dispute that millions of consumer disputes are made nationwide to each of

7  the defendants each year, that each employs the reinvestigation processes in dispute and that each

8  routinely provides descriptions of the reinvestigation process in a boilerplate fashion.  While

9  defendants have steadfastly refused to provide actual numbers of California consumers subjected

10  to these practices, the clear inference from the numbers actually provided is that there will be

11  more than enough California consumers effected to meet the numerosity requirements.

12  Therefore, there appears to be no issue that the numerosity element is met.

13      **2. There are questions of law and fact common to the Class**

14      Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to

15  the class."  FRCP (a)(2). "The Ninth Circuit construes commonality liberally." *Schwarm v.*

16  *Craighead*, 233 FRD 655, 660-61 (ED Cal. 2006), citing *Hanlon v. Chrysler*, 150 F3d 1011,

17  1019 (9th Cir. 1998) ["23(a)(2) has been construed permissively. All questions of fact and law

18  need not be common to satisfy the rule.  The existence of shared legal issues with divergent

19  factual predicates is sufficient as is a common core of salient facts with disparate legal

20  remedies.]"  This "threshold of commonality is not high." *In re School Asbestos Litig.*, 789 F.2d

21  996, 1010 (3rd Cir., 1986) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir.

22  1986), <u>*cert. denied*</u>, 479 U.S. 852 (1987)).  The rule does not require that all questions be

23  common or even that common questions predominate. *Hummel v. Brennan*, 83 F.R.D. 141, 145

24  (E.D. Pa. 1979).  All class members need not share identical claims; "factual differences among

25  the claims of the putative class members do not defeat certification." *Baby Neal v. Casey*, 43 F.3d

26  48, 56 (3d. Cir. 1994.  Indeed, a single common question is sufficient to satisfy the requirements

of Rule 23(a)(2). *In re Prudential Insurance Company America Sales Practice Litigation*

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

13

1  *Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998).

2      A common question is one which "arises from 'a common nucleus of operative facts'

3  regardless of whether 'the underlying facts fluctuate over the class period and vary as to

4  individual claimants.' " *In re School Asbestos Litig.*, 104 F.R.D. 422, 429 (ED Pa. 1984).  "The

5  fact that there is some factual variation among the class grievances will not defeat a class action. .

6  . . A common nucleus of operative facts is usually enough to satisfy the commonality requirement

7  of Rule 23(a)(2)."  *Rosario v. Livaditis* 963 F2d 1013, 1017-8 (7th Cir. 1992).

8      Suits seeking joint relief, such as an injunction or declaratory judgment, usually present

9  "common questions" by their very nature.  *Fraga v. Smith* 607 F.Supp 517, 522 (D Or 1985).  A

10  lesser degree of certainty is required when the class is a 23(b)(2) class seeking injunctive or

11  declaratory relief.  *Robertson v. NBA* 389 F.Supp. 867, 896-7 (SD NY 1975).  *Manual for*

12  *Complex Litigation*, Third, section 30.14.

13      Courts have typically found a common nucleus of operative facts where, as in the present

14  action, the defendant engaged in standardized conduct toward putative class members.  *Keele v.*

15  *Wexler*, 1998 U.S. App. LEXIS 15029 (7th Cir. 1998) (class certified in FDCPA action on behalf

16  of all Colorado residents who received debt collection letters from defendant); *Wilborn v. Dun &*

17  *Bradstreet Corporation*, 1998 U.S. Dist. LEXIS 12618 (N.D. Ill. 1998) (FDCPA class certified

18  regarding form collection letter);  *West v. Costen*, 558 F. Supp. 564,  (W. D. Va. 1983) (FDCPA

19  class certified regarding alleged failure to provide required "validation" notices);  *Prudential,*

20  *supra*, at 309-310 (Prudential's orchestrated sales presentations, the plaintiffs' common legal

21  theories, Prudential's common defenses, and other common issues undoubtedly satisfy the

22  commonality and predominance requirements); *Chandler v. Southwest Jeep-Eagle*, 162 F.R.D.

23  302, 308 (N.D. Ill. 1995) (common nucleus of operative facts where defendants engaged in

24  standardized conduct toward members of the proposed class).

25      Moreover, it is well established that the presence of some individualized issues does not

26  overshadow the common nucleus of operative fact presented when the defendant has engaged in

standardized conduct toward the Class.  *Prudential, supra* at 309-310 (individual damages do not

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

undermine predominance of common issues); **Dawes, supra** at 814 (presence of individual

damage claims does not justify denial of class treatment of common issues); **Heartland**

**Communications v. Sprint Communications**, 161 F.R.D. 111, 114-15 (D. Kan 1995) (minor

differences in contracts signed by class members did not suffice to preclude a finding of

commonality).

Plaintiff has alleged that each member of the proposed Class was subject to acts violative

of the CCRAA and redressable as statutory violations under CC section 1785.31 from a common

course of conduct.  The complaint details the straightforward common nucleus of facts and

resulting common questions of law and fact: the improper reinvestigation process and inadequate

response to requests to detail that process.  Both of these are shown by the systemic use of forms,

the CDVs and the description of the reinvestigation process.

Each of these issues is best suited to proof and adjudication on a classwide basis, given

that the issues are common as is the relief sought and the ability to determine California

consumers were subject uniformly to the acts, practices and policies alleged, particularly given

the clarity and legal nature of the allegations in issue and the court's ability to determine whether

defendants' acts, practices and policies comply with the law.

As to the pertinent class and class definition, the proof of all elements is quite simple: the

failure to maintain a reinvestigation procedure that complies with the CCRAA and the failure to

provide a notice and/or an actual description of the reinvestigation process.  As to the

reinvestigation process, the CDVs themselves, and the practices and procedures of each of the

defendant credit reporting agencies regarding their use, is largely the same: a two letter code is

used to describe the consumer's dispute, a one sentence statement is derived from the consumer's

dispute on a commonly used form.  There is no room given to explain what the investigation

entailed or why the result was what it was.   No document the consumer provides with a dispute

is conveyed to the so-called furnisher.  The CDV is not sent to the actual purported creditor, but

to a debt collector.  As to the reinvestigation description, none of the defendant credit reporting

agencies actually details the reinvestigation process upon request.  Rather, they provide a

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

1  boilerplate form explanation of what the reinvestigation process is–most times, before it is even

2  requested.

3      Accordingly, the proposed class presents a well defined community of interest and

4  common issues of law and fact prevail over individual issues.

5      **3.  The claims of the representative parties are typical of the claims of the Class**

6      Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims

7  . . . of the class."  FRCP 23(a)(3).  Rule 23(a)(3) and the adequacy of representation requirement

8  set forth in subsection (a)(4), are designed to assure that the interests of unnamed class members

9  will be adequately protected by the named class representatives.  ***General Telephone Co. of***

10  ***Southwest v. Falcon***, 457 U.S. 147, 157 n.13 (1982);  ***In re School Asbestos Litig***., ***supra,*** at

11  429-30.

12      The threshold for establishing typicality is low. "Under the rule's [23's] permissive

13  standards, representative claims are "typical" if they are reasonably co-extensive with those of

14  absent class members; they need not be substantially identical." ***Hanlon, supra*** at 508; ***CRLA v.***

15  ***Legal Services***, 917 F2d 1171, 1175 (9th Cir. 1990).  "Typicality refers to the nature of the claim

16  or defense of the class representative, and not the specific facts from which it arose or the relief

17  sought." ***Schwarm, supra***, at 662.  "Rule 23 does not require that the representative plaintiff have

18  endured precisely the same injuries that have been sustained by the class members, only that the

19  harm complained of be <u>common</u> to the class . . . ." ***Hassine v. Jeffes***, 846 F.2d 169, 177 (3d Cir.

20  1988) (emphasis in original).  The measure of whether a plaintiff's claims are typical is whether

21  the nature of plaintiff's claims, judged from both a factual and a legal perspective, are such that in

22  litigating his personal claims he can reasonably be expected to advance the interest of absent

23  class members. ***General Telephone, supra***  at 156-157;  ***CRLA, supra*** at 1175.  Put another way,

24  "[c]laims [are considered] typical when the 'essence' of the allegations concerning liability, and

25  not the particularities, suggest adequate representation of the interests of the proposed class

26  members." ***In re School Asbestos Litig., supra*** at 430; ***Prudential, supra*** at 311-312.

      Where, as here, the Plaintiff alleges a common pattern of wrongdoing, and will present the

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

same evidence (based on the same legal theories) to support her claims and the claims of the Class members, courts have held the typicality requirement to be satisfied, notwithstanding factual variances in the position of each class member.  Here, the class representative's claim is similarly situated in regards to the course of conduct that gives rise to the claims of the other class members, and her claims are based on the same legal theory.  Ms. Carvalho was subject to the reinvestigation methods in dispute.  Her dispute was reduced to a two letter code and a one sentence narrative.  It did not include the conveyance of the documents she sent in support of her dispute to the furnishers of the disputed entry.  It did not include any communication with the actual originator of the disputed information.  It did not include any investigation by the defendants more than putting together and sending the CDV.  It did not include any requirement that the furnisher actually investigate anything.  It is apparent that these policies of "reinvestigation" are systemic and routinely used by the defendants.

Moreover, having been subjugated to this reinvestigation method, the defendants admittedly provided plaintiff and other members of the class nothing more than a recapitulation of their statutory duties when responding to requests for a description of how a reinvestigation was performed and do so in a pro forma manner.   Hence, the consumer may face not only the routine verification of a disputed entry, but the entire failure to explain how the dispute was in fact verified.  Under the authorities, no further showing is required to satisfy the requirement of typicality.

**4.  The Plaintiffs will fairly and adequately protect the interests of the Class**

The requirement of Rule 23(a)(4) is met if it appears that (1) Plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation and (2) Plaintiffs' interests are not antagonistic to those of the class they seek to represent.  ***Lerwill v. Inflight Motion Pictures***, 582 F2d 507, 512 (9th Cir. 1978); ***Prudential***, 148 F.3d at 312.

The existence of the elements of adequate representation are presumed and "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." ***In re School Asbestos Litig., supra*** at 430.  As the court explained in ***Cook v. Rockwell Int'l Corp.***, 151

LAW OFFICE OF RON BOCHNER
3333 Bowers Ave., Suite 130, Santa Clara, CA 95054
(408) 200-9890

F.R.D. 378, 386 (D. Colo. 1993):

> [A]dequate representation presumptions are usually invoked in the absence of contrary evidence by the party opposing the class. On the issue of no conflict with the class, one of the tests for adequate representation, the presumption fairly arises because of the difficulty of proving negative facts. On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent. Finally, on the issue of intent to prosecute the action vigorously, the favorable presumption arises because the test involves future conduct of persons, which cannot fairly be prejudged adversely.
>
> If there are any doubts about adequate representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration, or subclasses might be created initially.

Id., (quoting *2 Newberg*, § 7.24 at pp. 7-81, 7-82).

Both prongs of the "adequacy" test are met here. First, Plaintiffs have retained counsel highly experienced in class action litigation to prosecute their claims and those of the Class. Bochner Declaration at paragraph 7. Second, the representative plaintiff will fairly and adequately represent the interests of the class.

As to adequacy of counsel, it is properly presumed at the outset of litigation, in the absence of specific proof to the contrary by the defendant. 2 *Newberg on Class Actions*, section 3.42 at 3-220-21. Prior experience in class actions and in the substantive law area involved is not required for demonstrating that class counsel will adequately represent the class. *Newberg on Class Actions*, section 3.42 at 3-223. In any case, plaintiff's counsel has experience in complex multi-plaintiff (approximately 120 plaintiffs) litigation, as well as lead counsel on two other class certified cases and approximately one half dozen certification-pending cases. *Culinary Bartender Fund v. Las Vegas Sands*, 244 F3d 1152, 1162 (9th Cir. 2001).

As to adequacy of representative, there is nothing to suggest that the representative Plaintiff has any interest antagonistic to the vigorous pursuit of the Class claims against Defendants. Because of the difficulty in proving the negative, it is Defendants' burden to prove any antagonism. See *Lewis v. Curtis*, 671 F2d 779, 788 (3rd Cir., 1982). The representative plaintiff's interests in the litigation are co-extensive with the interests of the class. She and the class were both subject to the improper practices alleged. Ms. Carvalho has further agreed to act as class representatives and has retained experienced counsel. This demonstrates her

LAW OFFICE OF RON BOCHNER
3333 Bowers Ave., Suite 130, Santa Clara, CA 95054
(408) 200-9890

1    commitment to bringing about the best possible results for the benefit of the class and thus meets

2    the adequacy requirement.

3    **C.    The Conditions of Rule 23(b) Have Been Met**

4    In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one

5    of the three conditions of subdivision (b) of Rule 23.  Plaintiff proceeds here under Rule 23(b)(2)

6    and (3) which provides in pertinent part:

7        An action may be maintained as a class action if the prerequisites of subdivision
         (a) are satisfied, and in addition:

8

9            (2)    the party opposing the class has acted or refused to act on grounds
         generally applicable to the class, thereby making appropriate final injunctive relief
         or corresponding declaratory relief with respect to the class as a whole; or

10

11           (3)    the court finds that the questions of law or fact common to the
         members of the class predominate over any questions affecting only individual
         members . . .

12

13   FRCP 23(b)(2), (3).  A court may certify a class for injunctive relief under Rule 23(b)(2) and a

     separate class for individual damages claims that meet Rule 23(b)(3).  If the individual damages
14
     claims do not meet Rule 23(b)(3) standards, the court may certify the Rule 23(b)(2) class alone.
15
     Schwarzer, *Federal Civil Procedure Trial*, section 10:404; *Dukes v. Wal-Mart*, 509 F3d 1168,
16
     1186-1188 (9th Cir. 2007).
17
     **1.    The Conditions of Rule 23(b)(2) Have Been Met**
18
     The requirements of Rule 23(b)(2) are met where the acts alleged apply generally to the
19
     class, but this does not mean that every single class member must have been injured or aggrieved
20
     in the same way by the defendant's conduct.  It is sufficient if defendant has adopted a pattern of
21
     activity that is likely to be the same as to all members of the class.  *Baby Neal, supra* at 52 and
22
     63-4.  The CCRAA, CC section 1785.31(b) specifically provides that "injunctive relief shall be
23
     available to any consumer aggrieved by a violation or a threatened violation of this title whether
24
     or not the consumer seeks any other remedy under this section."    Injunctive relief has been
25
     allowed in FCRA cases.  See *Andrews v. Trans Union*, 7 F.Supp.2d 1056, 1084 (CD Cal. 1998)
26
     and it does not appear that the FCRA preempts state law on the issue.  *Credit Data of Arizona v.*

     *Arizona*, 602 F.2d 195, 197 (9th Cir. 1979); *White v. First American Registry*, 2005 WL

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

19

1  1713065 *3, 4 (SD NY 2005).    Plaintiffs have alleged a uniform practice and policy conducted

2  by Defendants against Plaintiffs and the Class members and seek injunctive relief therefrom.

3          2.      **The Conditions of Rule 23(b)(3) Have Been Met**

4          In the case of a Rule 23(b)(3) certification [where damages are sought], the court looks to

5  whether questions of law or fact common to the class "predominate" over questions affecting

6  individual members and, on balance, whether a class action is superior to other methods available

7  for adjudicating the controversy.

8          a.  **Common Issues Predominate**

9          Common issues predominate over individual issues where plaintiffs have alleged a

10  common course of conduct on the part of a defendant.  ***Prudential, supra*** at 314-315.

11  Predominance is determined not by counting the number of common issues but by weighing their

12  significance.  ***Mullen v. Treasure Chest Casino***, 186 F3d 620, 627 (5th Cir. 1999).  Further,

13  differences in class members' damages generally will not prevent a finding of predominance.  ***In***

14  ***re Visa Check/Master Money Antitrust Litigation***, 280 F3d 124 (2d Cir. 2001); ***Blackie, supra*** at

15  905. Where common questions predominate, a class action can achieve economies of time, effort

16  and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be

17  economically litigated individually, and avoid inconsistent outcomes, because the same issue can

18  be adjudicated the same way for the entire class.  If common questions do not predominate, then

19  little time or effort is saved and a class action for damages is not appropriate.  ***Advisory***

20  ***Committee Note to Rule 23(b)(3)***, 39 FRD 102 (1966).

21          Here, the weighty issues of the propriety of the broadly and uniformly used, but facially

22  noncompliant CDVs and boilerplate descriptions of the reinvestigation provided by the CRAs

23  weigh heavily for a finding of predominance in this case. To the rare extent a CDV was not used

24  in a reinvestigation, such consumers can be excluded from the class.

25          As set forth, the damages plaintiff seeks are statutory in nature, see CC sections

26  1785.31(a)(2)(B) and 1785.31(c).  There has been some issue as to how class actions are to be

handled vis-a vis "actual" damages.  In ***Schwarm, supra***, a Fair Debt Collection Practices Case,

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

20

the court certified a class of both actual and statutory damage.  In ***Clark v. Experian***, 2001 WL

1946329 * 3, 4 (DSC 2001), the court refused to certify a Fair Credit Reporting Act (FCRA) class

action because only statutory damages were sought.  In ***Clark v. Experian***, 2002 WL 2005709

(DSC 2002), upon amendment of the complaint to include, in the alternative, an allegation that

the defendants negligently violated the FCRA, * 2, the court certified the action, despite the fact

that actual damages type claims were not suitable for class action, it found the statutory damage

claims predominated. *4.

     In ***Murray v. GMAC***, 434 F3d 948 (7th Cir. 2007), the court provided an extended analysis

explaining why class actions seeking statutory damage claims alone, despite the availability of

other remedies under the FCRA, were certifiable:

> The district court's second reason [for denial of class certification]—that Murray should
> have sought compensatory damages for herself and all classmembers rather than relying
> on the statutory-damages remedy—would make consumer class actions impossible. What
> each person's injury may be is a question that must be resolved one consumer at a time.
> Although compensatory damages may be awarded to redress negligence, while statutory
> damages require wilful conduct, introducing the "easier" negligence theory would
> preclude class treatment.  Common questions no longer would predominate, and an
> effort to determine a million consumers' individual losses would make the suit
> unmanageable. Yet individual losses, if any, are likely to be small—a modest concern
> about privacy, a slight chance that information would leak out and lead to identity theft.
> That actual loss is small and hard to quantify is why statutes such as the Fair Credit
> Reporting Act provide for modest damages without proof of injury.  Rule 23(b)(3) was
> designed for situations such as this, in which the potential recovery is too slight to support
> individual suits, but injury is substantial in the aggregate.  See, e.g., ***Mace v. Van Ru***
> ***Credit Corp***., 109 F.3d 338, 344-45 (7th Cir. 1997).
>
>                       * * *
>
> Refusing to certify a class because the plaintiff decides not to make the sort of
> person-specific arguments that render class treatment infeasible would throw away the
> benefits of consolidated treatment. Unless a district court finds that personal injuries are
> large in relation to statutory damages, a representative plaintiff must be allowed to forego
> claims for compensatory damages in order to achieve class certification. When a few class
> members' injuries prove to be substantial, they may opt out and litigate independently.
> See ***Jefferson v. Ingersoll International, Inc.***, 195 F.3d 894 (7th Cir. 1999). Only when
> all or almost all of the claims are likely to be large enough to justify individual litigation
> is it wise to reject class treatment altogether. Cf. ***In re Rhone-Poulenc Rorer Inc***., 51
> F.3d 1293 (7th Cir. 1995).

See also ***White v. E-Loan***, 2006 WL 2411420 *3 (ND Cal. 2006).  ***Murray's*** well reasoned

opinion now seems to express the state of law as seen by a large majority of courts considering

such issues.  See ***In re Farmers Insurance FCRA Litigation***, 2006 WL 1042450, *7 (WD Ok

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

1   2006) [compiling cases].  However plaintiff is willing to pursue other damages if required to

2   certify the case.

3       Moreover, in any case, individual damages issues should not prevent a finding of

4   predominance.  The court may certify as to liability alone.  If some common issues could be

5   dispositive, though there are also individual issues, the court may certify a class (or classes) as to

6   the common issues alone.  FRCP 23(c)(4); *Jenkins, supra* at 472.   Finally, if common issues do

7   not predominate across the entire class, subclassing may facilitate the prerequisites of Rule

8   23(b)(3).  *Pruitt v. Allied Chemical*, 85 FRD 100, 118 (ED Va. 1980).

9               b.    **Class Action is Superior**

10      In addition to finding the predominance of common questions, Rule 23(b)(3) also requires

11  that the Court determine that "a class action is superior to other available methods for the fair and

12  efficient adjudication of the controversy."  It has been widely recognized that a class action is

13  superior to other available methods--particularly, individual lawsuits--for the fair and efficient

14  adjudication of a suit that affects a large number of persons injured by violations of consumer

15  protection laws or common law.  *Prudential, supra* at 316.  Class treatment is especially

16  appropriate for consumer claims.  *Amchem Products v. Windsor*, 521 US 591, 625 (1997).

17  Consumer class actions such as the case at bar easily satisfy the superiority requirement of Rule

18  23.  *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (public interest in

19  seeing that rights of consumers are vindicated favors disposition of claims in a class action).  In

20  regards to the CCRAA, the legislature, apparently understanding the momentous step it was

21  taking by allowing private entities to largely adjudicate disputed claims, specifically allowed

22  class actions when these responsibilities were breached.  See CC section 1785.31(c).  It is so

23  because it is so unlikely and unwieldy for unknowing individuals to bring lawsuits on their own

24  for violation of the provisions at issue in this case, while on the other hand, it is so important to

25  deter the CRAs from continuing these practices.

26      Rule 23(b)(3)(A)-(D) lists four factors pertinent to the decision of whether a class action

    is superior: the interests of the members of the class to individually control the prosecution of

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

22

separate actions, the extent and nature of litigation concerning the controversy already

commenced by the members of the class, the desirability or lack of desirability of concentrating

the litigation of the claims in the particular forum and the difficulties likely to be encountered in

the management of the class action.

As to the first factor, the issues are simply (1) whether CDVs comport with CCRAA

section 1785.16's requirements and, if not, whether the CRAs violate the CCRAA in using the

CDV process in such a matter that it constitutes a statutory violation per CCRAA section

1785.31(a)(2) and (c) and (2) whether the description of the reinvestigation provided to

consumers by the CRAs comport with CCRAA section 1785.16(d)(4).  CCRAA specifically

provides for class actions irrespective of any other prerequisites at section 1785.31(c), indicated

the legislature's intent that class actions were a superior method of handling claims for violations

of the CCRAA.  The court in *Schwarm*, supra at 664 found that "class action certifications to

enforce compliance with consumer protection laws are "desirable and should be encouraged,"

citing *Ballard v. Equifax*, 186 FRD 589, 600 (ED Cal. 1999).

As to the second and third factors, plaintiff is unaware of any pending cases, class or

otherwise, specifically addressing the issue of the CDVs or descriptions compliance with the

CCRAA.  Even if there were, it is not clear why having a single ruling regarding the adequacy of

the CRAs' procedures would make a class action inferior.  It would have the efficient effect of

providing a single ruling applicable to any case where the issue were the same.  Plaintiff is

unaware of any reason why concentrating the issues in this court would not be desirable.

In regard to the fourth factor, manageability, plaintiff is aware of no likely difficulties in

proceeding.  The parties acknowledging having records of the persons subject to the acts in

dispute.  Court have found that the plaintiff is not required at the certification stage of the

proceedings to establish the existence and identity of class members.  The issue, within the

context of manageability, the issue is whether there exist sufficient means for identifying class

members at the remedial stage.  The identity of class members need not be ascertained before

class certification, they need only be ascertainable.  *Manual for Complex Litigation, Fourth* at

LAW OFFICE OF RON
BOCHNER
3333 Bowers Ave., Suite
130, Santa Clara, CA
95054
(408) 200-9890

23

section 21.222. Here, the means are available in that there is no issue that the defendants have records from which to identify class members. Indeed, courts have allowed notice by publication to discover whether an ascertainable class exists. *Abramovitz v. Ahern*, 96 FRD 208, 213 (D Ct 1982).

**V. CONCLUSION**

This case meets all the requirements for class certification: There is an ascertainable class and a well-defined community of interest in the litigation. Plaintiffs have demonstrated the predominance of common issues of fact and law, numerosity, typicality, adequacy and superiority.

For these reasons, plaintiffs respectfully submit the proposed class should be certified.

August _____, 2008                    LAW OFFICE OF RON BOCHNER

BY _____
RON K. BOCHNER
Attorney for Plaintiff Carvalho
and The Class

LAW OFFICE OF RON BOCHNER
3333 Bowers Ave., Suite 130, Santa Clara, CA 95054
(408) 200-9890