1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  STEPHEN J. NEWMAN (State Bar No. 181570)
   BRIAN C. FRONTINO (State Bar No. 222032)
3  2029 Century Park East
   Los Angeles, CA  90067-3086
4  Telephone:  310-556-5800
   Facsimile:  310-556-5959
5  lacalendar@stroock.com

6  Attorneys for Defendant
     TRANSUNION LLC

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  NOEMIA CARVALHO, on behalf of herself    ) Case No. 5:08-cv-01317-JF-HRL
    and other similarly situated people,      )
12                                            ) [Assigned to the Honorable Jeremy Fogel]
                                              )
13              Plaintiff,                    ) **NOTICE OF MOTION AND MOTION OF**
                                              ) **DEFENDANT TRANSUNION LLC FOR**
14        vs.                                 ) **SUMMARY JUDGMENT OR, IN THE**
                                              ) **ALTERNATIVE, SUMMARY**
15  CREDIT CONSULTING SERVICES, INC.,         ) **ADJUDICATION; MEMORANDUM OF**
    dba CCS, EQUIFAX CREDIT                    ) **POINTS AND AUTHORITIES IN**
16  INFORMATION SERVICES, LLC,                ) **SUPPORT THEREOF**
    EXPERIAN INFORMATION SOLUTIONS,           )
17  INC., TRANS UNION LLC, and DOES 1-50,     ) **[F.R.C.P. 56(b), (d)]**
    inclusive,                                )
18                                            ) Date:      September 26, 2008
                                              ) Time:      9:00 a.m.
19              Defendants.                   ) Courtoom: 3
                                              )
20                                            ) [Declarations of Diane Terry and Brian C.
                                              ) Frontino filed and [Proposed] Order lodged
21                                            ) concurrently]

22

23

24

25

26

27

28

LA 51030068v9

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 26, 2008, at 9:00 a.m., or as soon thereafter as the Court may hear this matter in Courtroom 3 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California, 95113, defendant TransUnion LLC ("TransUnion") will and hereby does move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in favor of TransUnion against plaintiff Noemia Carvalho ("Plaintiff") on the First (and only) Cause of Action, asserted against TransUnion in Plaintiff's Complaint.

This Motion is made on the grounds that: (1) Plaintiff can raise no triable issue of <u>material</u> fact demonstrating that TransUnion willfully violated its duties under California's Consumer Credit Reporting Agencies Act, Civil Code Section 1785.1, <u>et</u> <u>seq.</u> (the "CCRAA"); (2) Plaintiff is estopped from pursuing her claims because she admits that the item on her TransUnion credit report at issue is, and at all relevant times was, accurately reported; and (3) Plaintiff does not allege, and has not suffered, any actual damage, and therefore cannot seek injunctive relief or punitive damages under the CCRAA.

Alternatively, TransUnion requests that the Court, pursuant to Federal Rule of Civil Procedure 56(d), summarily adjudicate one or more of the following:

1.      Plaintiff's claim fails because she admits the item on her credit report at issue in this action is, and at all relevant times was, accurately reported;

2.      TransUnion did not violate California Civil Code section 1785.16(a) with respect to Plaintiff's September 2004 dispute submitted to TransUnion;

3.      TransUnion did not violate California Civil Code section 1785.16(a) with respect to Plaintiff's April 2005 dispute submitted to TransUnion;

4.      TransUnion did not violate California Civil Code section 1785.16(a) with respect to Plaintiff's June 2005 dispute submitted to TransUnion;

5.      TransUnion did not violate California Civil Code section 1785.16(a) with respect to Plaintiff's February 2006 dispute submitted to TransUnion;

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

6.      TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's September 2004 dispute submitted to TransUnion;

7.      TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's April 2005 dispute submitted to TransUnion;

8.      TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's June 2005 dispute submitted to TransUnion;

9.      TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's February 2006 dispute submitted to TransUnion;

10.      TransUnion did not violate California Civil Code section 1785.16(d)(4) in its October 13, 2004 communication to Plaintiff;

11.      TransUnion did not violate California Civil Code section 1785.16(d)(4) in its May 3, 2005 communication to Plaintiff;

12.      TransUnion did not violate California Civil Code section 1785.16(d)(4) in its June 10, 2005 communication to Plaintiff;

13.      TransUnion did not violate California Civil Code section 1785.16(d)(4) in its February 20, 2006 communication to Plaintiff;

14.      TransUnion did not willfully violate the CCRAA;

15.      Plaintiff does not allege actual damages and, therefore, is not entitled to injunctive relief under the CCRAA; or

16.      Plaintiff does not allege actual damages and, therefore, is not entitled to punitive damages under the CCRAA.

//

//

//

//

//

//

LA 51030068v9

- 2 -

1    This Motion is based upon this Notice of Motion and Motion, the accompanying

2  Memorandum of Points and Authorities, the concurrently filed Declarations of Diane Terry and

3  Brian C. Frontino, Plaintiff's Complaint in this action, such further papers as TransUnion may file

4  in connection with this Motion, such further evidence or argument as may be presented at or before

5  the hearing on this Motion and all pleadings, files and records in this action.

6

7  Dated:  August 22, 2008                          Respectfully submitted,

8                                                    STROOCK & STROOCK & LAVAN LLP
                                                     JULIA B. STRICKLAND
9                                                    STEPHEN J. NEWMAN
                                                     BRIAN C. FRONTINO
10

11
                                                     By:_____/s/ Brian C. Frontino_____
12                                                                        Brian C. Frontino

13                                                   Attorneys for Defendant
                                                       TRANSUNION LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

**TABLE OF CONTENTS**

2
**Page**

3   I.      INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

4   II.     STATEMENT OF ISSUES TO BE DECIDED ........................................2

5   III.    UNDISPUTED FACTS.........................................................2

6           A.      Plaintiff's Medical Treatment At Bayside..........................2

7           B.      Assignment Of Plaintiff's Unpaid Bayside Bill To CCS For Collection...................4

8           C.      The Credit Report Dispute Process ................................6

9                   1.      TransUnion's Dispute Procedures ..........................6

10                  2.      Plaintiff's Disputes .....................................7

11                          a.      September 2004 ...................................7

12                          b.      April 2005........................................9

13                          c.      June 2005.........................................9

14                          d.      February 2006 ....................................10

15          D.      Allegations Of The Complaint .....................................10

16  IV.     ARGUMENT .................................................................11

17          A.      Standard Of Review. ..............................................11

18          B.      Plaintiff's Admission That Her Credit Report Is Accurate Is Dispositive Of Her Suit. ...............................11

19
20          C.      The Evidence Conclusively Demonstrates That TransUnion Conducted The Reinvestigations Of Plaintiff's Disputes In Accordance With The CCRAA In Any Event. ..............................13

21
22                  1.      TransUnion Fully Complied With Section California Civil Code Section 1785.16(a) In Connection With Plaintiff's Disputes. .............13

23                          a.      The First Dispute ................................13

24                          b.      The Second Dispute...............................14

25                          c.      The Third Dispute................................14

26                          d.      The Fourth Dispute ..............................15

27                  2.      TransUnion Fully Complied With California Civil Code Section 1785.16(b). ...............................15

28

LA 51030068v9

- i -

**MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

3.     TransUnion's Reinvestigations Were Clearly Reasonable ............................. 17

D.    TransUnion Fully Complied With California Civil Code Section 1785.16(d)(4). ................................................................................................ 19

E.    Plaintiff Is Precluded From Obtaining Any Of The Relief For Which She Prays. .............................................................................................................. 20

1.     Plaintiff Is Not Entitled To Injunctive Relief Because She Does Not Allege Actual Damages. ......................................................... 20

2.     Without Actual Damages, Plaintiff Also Is Precluded From Obtaining Punitive Damages. .................................................... 21

3.     Plaintiff Cannot Show A Willful Violation Of The CCRAA And, Therefore, Is Not Entitled To Punitive Damages For This Additional Reason. ................................................................ 21

V.       CONCLUSION ....................................................................................................... 23

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ........................................................................................ 11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ........................................................................................ 11

DeAndrade v. Trans Union LLC,
    523 F.3d 61 (1st Cir. 2008) ....................................................................... 12, 18

Dennis v. BEH-1, LLC,
    520 F.3d 1066 (9th Cir. 2008) ....................................................................... 12

Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,
    472 U.S. 749 (1985) ........................................................................................ 12

Equifax v. Federal Trade Commission,
    678 F.2d 1047 (11th Cir. 1982) ..................................................................... 12

Grimes v. Rave Motion Pictures Birmingham, L.L.C.,
    552 F. Supp. 2d 1302 (N.D. Ala. 2008) ........................................................ 21

Karmolinski v. Equifax Information Services LLC,
    Civ. No. 04-1448-AA, 2007 WL 2492383 (D. Or. Aug. 28, 2007) ............... 18

Olson v. Six Rivers National Bank,
    111 Cal. App. 4th 1 (2003) ............................................................................ 11

Reynolds v. Hartford Finance Services Group, Inc.,
    435 F.3d 1081 (9th Cir. 2006) ....................................................................... 22

Safeco Insurance Co. of America v. Burr,
    127 S. Ct. 2201 (2007) .............................................................................. 18, 22

Schaffhausen v. Bank of America,
    393 F. Supp. 2d 853 (D. Minn. 2005) ........................................................... 17

Spano v. Safeco Corp.,
    40 Fed. Appx. 746 (9th Cir. 2005) ................................................................ 22

Trujillo v. First America Registry, Inc.,
    157 Cal. App. 4th 628 (2007) ................................................................... 20, 21

Wantz v. Experian Information Solutions,
    386 F.3d 829 (7th Cir. 2004) ......................................................................... 12

Werschkull v. United Cal. Bank,
    5 Cal. App. 3d 98 (19780 ............................................................................... 21

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

1

# STATUTES

2   15 U.S.C. § 1681i ................................................................................................ 12, 17

3   15 U.S.C. § 1681n ..................................................................................................... 21

4   Cal. Civ. Code § 1785.16(a) ....................................................................................... 12

5   Cal. Civ. Code. § 1785.16(b) ................................................................................ 12, 16

6   Cal. Civ. Code. § 1785.16(d) ...................................................................................... 19

7   Cal. Civ. Code § 1785.31 ..................................................................................... 11, 21

8   Fed. R. Civ. P. 56 ....................................................................................................... 11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S T R O O C K  &  S T R O O C K  &  L A V A N  LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51030068v9

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

There is not a single material fact in dispute in this case, and it is mystifying why it was filed against the named defendants in the first place.  The claim of plaintiff Noemia Carvalho ("Plaintiff") arises under California's Consumer Credit Reporting Agencies Act, Civil Code Section 1785.1, et seq. (the "CCRAA").  Dispositive of her claim, however, is that Plaintiff admits that her credit report is and always has been <u>accurate</u>, which is a threshold issue for her claim.

On October 19, 2001, Plaintiff visited Bayside Medical Group ("Bayside") regarding pain in her knee.  Upon arrival and before meeting with a Bayside physician, Plaintiff completed and duly executed an agreement with Bayside to pay for charges incurred, and to remain personally financially responsible for the charges if her health insurer did not pay.  Plaintiff's visit to Bayside cost $118.  As a courtesy, Bayside billed Plaintiff's health insurance company.  The insurance claim was denied.

Plaintiff admits receiving a final bill and notice from Bayside demanding payment and ignoring it.  Similarly, Plaintiff admits she received and ignored multiple letters from the collection agency engaged by Bayside, Credit Collection Services, Inc. ("CCS"), requesting payment of the $118 and warning Plaintiff that failure to pay could result in negative credit reporting.  Plaintiff still failed and refused to pay the $118 medical expense she validly and voluntarily incurred.  Finally, months after Bayside provided medical care to Plaintiff, for which Plaintiff never paid, CCS duly reported Plaintiff's delinquent debt to TransUnion.  TransUnion, in turn, noted CCS's collection item on Plaintiff's credit report, which Plaintiff concedes is accurate.  For this single reason, this case should be dismissed against TransUnion.

Rather than pay the admittedly valid debt, Plaintiff seeks to hold TransUnion liable for violating the CCRAA.  In so doing, Plaintiff oddly alleges that TransUnion failed to comply with the CCRAA by not conducting an adequate reinvestigation of her dispute of the CCS item, even though her "dispute" was not in good faith in light of its admitted accuracy.  Nonetheless, TransUnion unquestionably complied with its obligations under the CCRAA in every respect.

1    Plaintiff further claims that TransUnion failed to provide her with a certain notice required by the

2    CCRAA, but the undisputed facts demonstrate that TransUnion indisputably did provide the notice

3    to Plaintiff.

4         As to her prayer for relief, Plaintiff seeks remedies to which she is not entitled.  Plaintiff

5    does not plead, and did not identify in discovery, any actual damages resulting from TransUnion's

6    conduct.  Plaintiff's counsel confirmed this in correspondence regarding discovery.  Instead,

7    Plaintiff only seeks injunctive relief and punitive damages for <u>willful</u> violation of the CCRAA.

8    However, it is settled California law under the CCRAA that neither an injunction nor punitive

9    damages are available to plaintiffs who cannot show some actual damages.  Thus, Plaintiff is not

10   entitled to injunctive relief or punitive damages.

11        Now is the time for this Court to relieve TransUnion of the burden of defending itself

12   against Plaintiff's meritless action.  As set forth below, there is absolutely no dispute as to any

13   material fact in this action, and TransUnion is therefore entitled to summary judgment in its favor.

## II.  STATEMENT OF ISSUES TO BE DECIDED

15        Whether TransUnion is entitled to summary judgment in its favor where the undisputed

16   evidence demonstrates that (a) Plaintiff admits her credit report is accurate; (b) TransUnion

17   complied with the CCRAA in every respect in connection with the disputes Plaintiff submitted to

18   TransUnion at issue in this action; and (c) Plaintiff is not entitled to any relief.

## III.  UNDISPUTED FACTS

20   **A.     Plaintiff's Medical Treatment At Bayside**

21        On October 19, 2001, Plaintiff visited Bayside seeking treatment for pain in her knee.

22   (Deposition of Noemia Carvalho Volume 1 ("Plaintiff Depo. I"), 35:19-22; Deposition of Noemia

23   Carvalho Volume 2 ("Plaintiff Depo. II"), 372:3-11.)[1]  Upon arrival, and before meeting with any

24   Bayside physician, Plaintiff filled out and signed a contract with Bayside regarding responsibility

25   for payment of any medical services rendered (the "Agreement"), which expressly reads as follows:

---

27   [1]  Copies of the cited excerpts from Volumes I and II of Plaintiff's deposition transcripts are
     attached as Exhibits A and B, respectively, to the Declaration of Brian C. Frontino ("Frontino
28   Decl.").

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

Bayside Medical Group, Inc., will bill your insurance as a courtesy to you. If your insurance does not pay the claim within 90 days of the date of service, the balance of your account will be your responsibility.

(Plaintiff Depo. I, Ex. 3.)[2]  The Agreement further includes the following:

**Assignment and Release:**  I hereby authorize my insurance company to pay benefits directly to Bayside Medical Group, Inc. and I am financially responsible for noncovered services.

(Id. (emphasis in original).)  Plaintiff admits she understood these statements and signed the Agreement.  (Plaintiff Depo. I, 35:9-18, 40:13-42:7, Ex. 3.)

After executing the Agreement, Plaintiff saw Dr. Hart.  (Plaintiff Depo. I, 51:1-3.)  Dr. Hart examined Plaintiff, diagnosed her condition and prescribed medication.  (Plaintiff Depo. II, 372:2, 372:13-24.)  Plaintiff incurred $118 in charges for Dr. Hart's treatment at Bayside.  (Plaintiff Depo. I, 51:1-8; see also Plaintiff Depo. I, Ex. 8.)

Bayside billed the insurance company Plaintiff identified as her insurer, Blue Cross of California ("Blue Cross"), but Blue Cross denied the claim because Plaintiff was not covered. (Plaintiff Depo. I, Ex. 8.)  Bayside then billed Plaintiff directly, but Plaintiff ignored Bayside's bills.  (Plaintiff Depo. I, 57:24-58:25, Ex. 10.)  Only after nearly two years of Plaintiff's refusal to remit payment or facilitate payment from her supposed insurer, and Bayside's subsequent referral of the account to CCS for collection, did Plaintiff attempt to contact anyone at Bayside about the delinquent bill.  (Id. 63:7-12, 64:20-22.)  Plaintiff claims she spoke to a woman named Shannon. (Id.)  Shannon apparently informed Plaintiff that Bayside had billed Blue Cross and that Blue Cross had denied coverage.  (Id. 63:7-12, 65:15-19.)  Despite Plaintiff's repeated assertions that she was insured by Blue Cross for the treatment she received at Bayside on October 19, 2001, there still is no evidence conclusively demonstrating she in fact was so covered.  (See Complaint ¶ 7; see also Frontino Decl. ¶¶ 11-14, Exs. L-O.)

Indeed, TransUnion issued subpoenas to Bayside and Blue Cross seeking documentation either corroborating or refuting Plaintiff's contention that she was insured at the relevant time for the services she received at Bayside.  (See Frontino Decl., Exs. I, J.)  Bayside produced two pages,

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

---

[2] Copies of the cited exhibits from Plaintiff's deposition are attached as Exhibits C-H to the Declaration of Brian C. Frontino.

one of which demonstrated that she, in fact, was not insured by Blue Cross for the services she received at Bayside.  (Id., Ex. L ("INSURANCE PAYMENT -- NOT ELIGIBLE AT TIME OF SRVC PLEASE CALL YOUR INSURANCE").)  Blue Cross produced 16 pages of documents. (Id., Ex. M.)  While Blue Cross's documents confirmed Plaintiff's claims that she had contacted it regarding purported coverage, none of the documents established that Plaintiff was insured either when she received treatment at Bayside or for the type of treatment she received there.  (See id.)  In fact, Blue Cross has stated that it believes Plaintiff was not covered during the time period in question.  (See id.)

On Blue Cross's suggestion, TransUnion also issued a subpoena to Highmark Blue Cross Blue Shield of Pennsylvania ("Highmark") on June 25, 2008.  (Id., Exs. K, O.)  After more than a month, Highmark finally produced 26 pages of documents.  (See id., Ex. N.)  The documents Highmark produced suggest (but are not conclusive) that Plaintiff was insured by Highmark during 2001.  (See id.)  Notably, however, Plaintiff never submitted any claim under the Highmark policy.[3]  (See id.)

**B.    Assignment Of Plaintiff's Unpaid Bayside Bill To CCS For Collection**

After receiving no payment from Plaintiff's purported health insurer, Bayside sent Plaintiff a bill for the services she received there on January 15, 2002.  (Plaintiff Depo. I, Ex. 8.)  The bill indicated that Plaintiff was not eligible for insurance at the time of service and that payment was due to Bayside within 14 days pursuant to the Agreement.  (Id.)  Rather than pay the bill as she was contractually obligated to do, Plaintiff strangely sent it back to Bayside.  (Id. 52:19-53:3.)  Plaintiff apparently did nothing during the next 13 months to resolve the issue with her insurer or Bayside. Then, on March 6, 2003, Bayside sent Plaintiff a final notice regarding her bill.  (Id., Ex. 10.)  The final notice indicated that if payment in full was not made within 7 days, Bayside would turn the account over to a collection agency.  (Id.)  Plaintiff still refused to pay for her medical treatment. (Id. 58:23-25.)  Five more months passed, and Plaintiff again did nothing to resolve the issue.

---

[3]  All told, TransUnion has issued three subpoenas, sent seven follow-up letters and spent numerous hours on hold on the telephone, all in an effort to confirm Plaintiff's allegation that she was insured for the services she received at Bayside.  (See Frontino Decl. ¶¶ 10, 15, Exs. I, J, K.)

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    As a result of Plaintiff's persistent refusal to pay or facilitate payment from her insurer,

2    Bayside assigned the bill to CCS for collection.  CCS sent Plaintiff a collection notice on August 8,

3    2003.  (Plaintiff Depo. I, Ex. 11.)  In that notice, CCS indicated to Plaintiff that "[i]f paid in full …

4    all collection activity will be stopped."  (Id.)  It further notified Plaintiff that "[i]t is the policy of

5    [CCS] to report all eligible accounts to Experian, Equifax and Trans Union Credit Reporting

6    Services."  (Id.)  Plaintiff admits she received this bill and did not pay it notwithstanding these

7    warnings.  (Id. 59:15-61:12.)  Instead, Plaintiff did nothing.

8    On September 15, 2003, CCS sent Plaintiff a letter with the reminder, in all capital letters,

9    that "IF PAYMENT IN FULL REACHES THIS OFFICE BY 10-8-03, THEN THIS

10    COLLECTION ACCOUNT WILL NOT BE REPORTED ON YOUR EXPERIAN, EQUIFAX,

11    AND TRANSUNION CREDIT REPORTS.  PROTECT YOUR CREDIT, SEND PAYMENT IN

12    FULL."  (Id., Ex. 15.)  Plaintiff admits she received this letter, and still refused to pay.  (Id. 92:25-

13    93:20.)

14    Approximately a month and a half later, on October 31, 2003, CCS sent Plaintiff a third

15    warning letter, this time stating that

16    YOU HAVE FAILED TO SEND US PAYMENT.
       YOU HAVE IGNORED OUR PREVIOUS DEMANDS.

17

18    UNLESS YOU RESPOND TO THIS NOTICE IMMEDIATELY, EXPECT THE
       RESULTS OF YOUR OWN NEGLECT.

19    PAYMENTS MUST BE MADE TO THIS OFFICE WITHOUT FURTHER
       NOTICE.

20    (Plaintiff Depo. I, Ex. 18.)  Plaintiff admits she received this letter.  (Id. 96:9-18.)  Plaintiff's $118

21    bill at Bayside remains unpaid.  (Id. 61:6-12.)  CCS, in turn, reported the collection to TransUnion.

22    Plaintiff, however, admits that her credit reports accurately reflect the CCS item.  (Id.

23    131:2-6.)  Tellingly, Plaintiff unequivocally testified that Blue Cross, her alleged insurer, not

24    TransUnion, is to blame for her problems because it should have paid her Bayside bill.  (Id. 131:2-

25    14, 132:1-25, 148:14-149:17.)  Plaintiff refuses to pay the Bayside bill on the "principle" that Blue

26    Cross routinely fails to pay the claims of its customers.  (Id. 32:5-8.)

27

28

C.      **The Credit Report Dispute Process**

1.      **TransUnion's Dispute Procedures**

TransUnion is a national credit-reporting agency that provides consumer credit reports to subscribers who use the information to make credit-related decisions.  (Declaration of Diane Terry ("Terry Decl.") ¶ 2.)  TransUnion collects commercial and public information from its subscribers and other reliable sources and includes this information on consumer credit reports.  (<u>Id.</u>)

TransUnion encourages consumers to obtain copies of their credit reports, review them, and notify TransUnion of any suspected inaccuracies.  (<u>Id.</u> ¶ 3.)  In this regard, TransUnion maintains an extensive Consumer Relations Department that processes and investigates all disputes submitted by consumers.  (<u>Id.</u>)  TransUnion investigates consumer disputes and attempts to correct any and all inaccuracies brought to its attention.  (<u>See id.</u>)

When deciding whether to modify or delete an item from a consumer's credit report in response to a consumer's dispute, TransUnion dispute operators consult TransUnion's concrete guidelines regarding consumer disputes.  (<u>Id.</u> ¶ 4.)  With respect to consumer-provided documentation, TransUnion maintains carefully crafted, detailed guidelines designed to evaluate authenticity and validity of such documentation.  (<u>Id.</u>)  For instance, TransUnion will consider consumer-submitted documents valid where they are printed on the information furnisher's letterhead, contain the information furnisher's contact information and refer to the specific disputed account that can be matched to the consumer's file.  (<u>Id.</u>)  Furthermore, TransUnion only accepts authentic documents that validate the substance of the consumer's dispute.  (<u>See id.</u>)  Examples of such documents include cancelled checks proving payment for a specific account or receipt of payment from the creditor matching the disputed account.  (<u>Id.</u>)

If the consumer's dispute cannot be resolved based solely on the consumer's communication to TransUnion (either orally or in writing, or by any documentation provided by the consumer), TransUnion then logs the dispute and the nature of the dispute is recorded on a Consumer Dispute Verification ("CDV") form.  (<u>Id.</u> ¶ 5.).  A CDV also includes the consumer's name, address, and social security number, if available.  (<u>Id.</u>)  The CDV is then transmitted to the

- 6 -

1    information source, e.g., the creditor, with a request for verification and correction if necessary.

2    (Id.)  Responses to CDVs from information sources are reviewed and changes or deletions are

3    made, if and as appropriate.  (Id.)  If TransUnion receives no response to a CDV, the item is

4    deleted.  (Id.)  After an investigation is complete, TransUnion sends the results of the investigation

5    to the consumer along with an updated credit report.  (Id. ¶ 6.)  These procedures can be and are

6    adapted, depending on the nature of the consumer's dispute.  (Id.)

7         **2.    Plaintiff's Disputes**

8         In an obvious attempt to evade the consequences of her refusal to pay the valid Bayside

9    debt, Plaintiff submitted four frivolous disputes to TransUnion regarding the CCS item on her

10   credit report.

11        **a.    September 2004**

12        TransUnion received Plaintiff's first letter disputing the CCS item on September 16, 2004

13   (the "First Dispute").  (Terry Decl. ¶¶ 7-8, Ex. A.)  In the First Dispute, Plaintiff asserted that the

14   CCS item on her credit report was inaccurate because Blue Cross should have paid the underlying

15   debt to Bayside.  (Id.)  Plaintiff enclosed 16 pages of documents with her letter.  (Id.)  Among the

16   documents was a benefits page apparently from Plaintiff's employer identifying "Blue Cross PPO

17   Plan" as her "Medical" plan type during her employer's 2001 benefit year.  (Id.)  Plaintiff also

18   included copies of two conflicting insurance cards.  One of the cards identified "Blue Cross/Blue

19   Shield" as the insurer.  (Id.)  The second card identified "Blue Cross of California" as the insurer.

20   (Id.)  Neither card identified the coverage year.  (See id.)  Also included were copies of purported

21   correspondence Plaintiff had sent to Blue Cross, but no responses from Blue Cross to Plaintiff's

22   correspondence were included.  (Id.)  Plaintiff included an Explanation of Benefits page she

23   received from Blue Shield of California indicating that Plaintiff was not currently enrolled as a

24   Blue Shield of California insured.  (Id.)  Plaintiff also included correspondence she received from

25   CCS and a credit report reflecting the CCS item.  (Id.)  Most tellingly, Plaintiff included a bill she

26   received from Bayside stating "NOT ELIGIBLE AT THE TIME OF SRVC" regarding insurance

27   payment and advising Plaintiff to "PLEASE CALL YOUR INSURANCE."  (Id.)

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

1    On September 20, 2004, TransUnion began its investigation of Plaintiff's First Dispute.

2    (Id. ¶ 9.)  In accordance with its standard procedures, TransUnion reviewed Plaintiff's enclosure

3    letter and examined each of the documents she included with her First Dispute.  (Id.)  None of the

4    documents qualified as acceptable documentation by TransUnion's standards set forth above, and

5    none supported Plaintiff's assertion that the CCS item was inaccurate.  (Id.)  In fact, the document

6    from the original creditor, Bayside, plainly indicated that it had not received payment from any

7    insurer, that Plaintiff was not eligible for insurance, that Plaintiff should call her insurer and that,

8    regardless, Plaintiff owed Bayside the $118 pursuant to the Agreement that CCS was attempting to

9    collect on Bayside's behalf.  (Id.)  TransUnion advised Plaintiff in a letter dated September 20,

10    2004 that, although TransUnion was unable to accept Plaintiff's documentation, TransUnion would

11    contact CCS and seek verification of the disputed collection item.  (Id. ¶ 9, Ex. B.)

12    That same day, TransUnion sent a CDV to CCS.  (Id. ¶ 10.)  The CDV included the

13    notation, "claims company will change," which indicates to the creditor that the disputing

14    consumer believes that the creditor would change the way it reports the consumer's account to

15    TransUnion in response to the dispute.  (Id.)  TU further requested that CCS "[v]erify all account

16    information" relating to Plaintiff.  (Id.)  In response, CCS verified all of the information as

17    accurate.  (Id.)  On October 13, 2004, TransUnion completed its investigation of the First Dispute

18    and made the following modifications to Plaintiff's credit report based on CCS's response to the

19    CDV:  (1) changed the "UPDATED" field on the CCS item to "10/2004"; (2) indicated that

20    Plaintiff disputed the CCS item; and (3) noted that the $118 CCS item now was past due.  (Id. ¶ 11,

21    Ex. C.)  That same day, TransUnion sent Plaintiff a new credit report indicating the results of its

22    investigation and the resulting changes to her credit report.  (Id.)  The credit report also included

23    the following notice:

24    IF INTERESTED, YOU MAY … REQUEST A DESCRIPTION OF HOW THE
     INVESTIGATION WAS CONDUCTED ALONG WITH THE NAME, ADDRESS
25    AND TELEPHONE NUMBER OF ANYONE WE CONTACTED FOR
     INFORMATION.

26    (See id.)

27

28

- 8 -

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

    **b.**  **April 2005**

   On April 5, 2005, TransUnion received another letter from Plaintiff regarding the CCS collection item on her credit report (the "Second Dispute"). (Terry Decl. ¶ 12, Ex. D.) In the letter, Plaintiff specifically requested that the following note appear on her credit report:

> I dispute the above Credit Consulting Services Acct. No. 1834329 on my Credit Report. These bills arose out of the medical treatment I was covered for by Blue Cross of California. For some reason that is unknown to me, they did not pay these medical bills.

(See id.) TransUnion also initiated a reinvestigation and, on April 11, 2005, sent CCS another CDV, this time indicating "insurance claim delayed." (Id. ¶ 13.) TransUnion uses the "insurance claim delayed" notation to communicate the consumer's position that an insurer (e.g., workers compensation, government funded or private insurer) should have paid the disputed item. (Id.) On May 3, 2005, CCS again verified the account as accurately reported. (Id.) That same day, TransUnion sent Plaintiff an updated credit report, which, pursuant to her request, included Plaintiff's requested comment that she disputed the CCS item. (Id. ¶ 13, Ex. E.) The credit report also included the following notice:

> If interested, you may … request a description of how the investigation was conducted along with the name, address and telephone number of anyone we contacted for information.

(See id., Ex. E.)

    **c.**  **June 2005**

   On June 9, 2005, TransUnion received Plaintiff's third letter disputing the CCS item on her credit report (the "Third Dispute"). (Terry Decl. ¶ 14, Ex. F.) Plaintiff did not include any documents with the Third Dispute. (See id.) On June 10, 2005, TransUnion examined Plaintiff's credit report once again and determined that the Third Dispute was duplicative of the Second Dispute from two months earlier and took no action given CCS's two prior verifications of the item as accurately reported. (Id. ¶ 15.) On June 10, 2005, TransUnion sent Plaintiff a letter advising her that it would take no action for this reason. (Id. ¶ 15, Ex. G.)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

### d.    February 2006

On February 14, 2006, TransUnion received a fourth letter disputing the CCS item on Plaintiff's credit report (the "Fourth Dispute"). (Id. ¶ 16, Ex. H.)  The Fourth Dispute was sent by Ron Bochner, Plaintiff's counsel in this action.  (Id.)  In the Fourth Dispute, Plaintiff's counsel asserted that the CCS item was incorrect and demanded that it be removed.  (Id.)  TransUnion began its investigation of the Fourth Dispute on February 16, 2006, despite the fact that it again was duplicative of the First Dispute, Second Dispute and Third Dispute.  (Id. ¶ 17.)  TransUnion dutifully sent a CDV to CCS.  (Id.)  CCS again verified the item as accurate.  (Id.)  On February 20, 2006, TransUnion generated an updated credit report with the results of its investigation of the Fourth Dispute, and sent it to Mr. Bochner.  (Id. ¶ 17, Ex. I.)  TransUnion included the following notice on the credit report and investigation results:

> If interested, you may … request a description of how the investigation was conducted along with the name, address and telephone number of anyone we contacted for information.

(See id., Ex. I.)

### D.    Allegations Of The Complaint

In the Complaint, Plaintiff asserts a single cause of action against TransUnion, for violation of the CCRAA.  Although Plaintiff only alleges this single cause of action, she purports to allege violations of three provisions within the CCRAA.  First, Plaintiff alleges that TransUnion failed to "reinvestigate the disputed information within 30 days of the dispute by notifying the entity furnishing the disputed information …" in violation of Civil Code Section 1785.16(a) of the CCRAA.  (Complaint ¶ 8.)  Second, Plaintiff alleges that TransUnion failed to review and consider all relevant information Plaintiff submitted with respect to the disputed CCS item in violation of Civil Code Section 1785.16(b) of the CCRAA.  (Id.)  Third, Plaintiff alleges that TransUnion failed to include in its written notice to Plaintiff of the results of TransUnion's reinvestigation of Plaintiff's disputes "a notice that, if requested by [Plaintiff], a description of the procedure used to determine the accuracy and completeness of the information …" in violation of Civil Code Section 1785.16(d)(4) of the CCRAA.  (Id. ¶ 9.)

1    Plaintiff only alleges a willful violation of the CCRAA and, thereby, only seeks punitive

2    damages.[4]  (Id. ¶ 22; see id., Prayer for Relief, ¶¶ 1-6.)  Plaintiff alleges no actual damages in her

3    Complaint and has confirmed the same in discovery.  (See id., Prayer for Relief, ¶¶ 1-6; Frontino

4    Decl., Ex. P.)  Contrary to her allegations in the Complaint, Plaintiff admitted at her deposition that

5    she does not believe TransUnion violated any portion of the CCRAA purposefully.  (Plaintiff

6    Depo. II, 419:23-420:9.)

7    **IV.  ARGUMENT**

8    **A.    Standard Of Review.**

9    A party is entitled to summary judgment when "there is no genuine issue of material fact

10    and the party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emphasis added).

11    A court grants summary judgment in favor of a defendant when a plaintiff is unable sufficiently to

12    establish an essential element of his or her case when that party would bear the burden of proof at

13    trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Only disputes over material facts, i.e.,

14    those facts that might ultimately affect the outcome of the lawsuit, will preclude summary

15    judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

16    There is not a single material fact in dispute here.  Rather, the undisputed material facts

17    plainly demonstrate that TransUnion did not violate the provisions of the CCRAA as alleged.  The

18    Court, therefore, should grant the instant Motion, dismiss the action and enter judgment in

19    TransUnion's favor.

20    **B.    Plaintiff's Admission That Her Credit Report Is Accurate Is Dispositive Of Her Suit.**

21    Plaintiff admits the CCS entry on her credit report is accurate.  Under the federal Fair Credit

22    Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"), from which the CCRAA was derived, this

23    admission is dispositive of her claims.[5]  The CCRAA and FCRA require that TransUnion conduct

24    an investigation of alleged inaccurate or incomplete information in a consumer's credit file upon

---

26    [4] Plaintiff also purports to seek "statutory" damages (see Compl. ¶ 22), but as set forth below, the
CCRAA does not include a provision for "statutory" damages separate and apart from punitive
27    damages available for willful violations.  See Cal. Civ. Code § 1785.31.

28    [5] Because the CCRAA is substantially based on the FCRA, California courts treat FCRA
precedents as persuasive.  Olson v. Six Rivers Nat. Bank, 111 Cal. App. 4th 1, 12 (2003).

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    receiving a dispute from a consumer regarding inaccurate or incomplete information.  <u>Compare</u> 15

2    U.S.C. § 1681i(a)(1)(A) (requiring credit reporting agencies to conduct and complete

3    reinvestigations pursuant to consumer disputes within 30 days) <u>with</u> Cal. Civ. Code § 1785.16(a)

4    (same); <u>compare</u> 15 U.S.C. §1681i(a)(3)-(4) (concerning determinations of frivolous disputes and

5    credit reporting agencies' duties to consider information submitted by consumers) <u>with</u> Cal. Civ.

6    Code. § 1785.16(b) (same).

7        Interpreting Section 1681i, federal courts have overwhelmingly held that no claim for

8    failure to reasonably reinvestigate lies where the disputed information is accurately reported.  <u>See</u>

9    <u>Dennis v. BEH-1, LLC</u>, 520 F.3d 1066, 1069 (9th Cir. 2008) (noting that the FCRA "creates no

10   duty to reinvestigate where 'the credit report accurately reflect[s] the status of the information'")

11   (citation omitted); <u>DeAndrade v. Trans Union LLC</u>, 523 F.3d 61, 67 (1st Cir. 2008) (noting that a

12   plaintiff cannot prevail on a claim under Section 1681i "without a showing that the disputed

13   information disclosed by the credit agency was, in fact, inaccurate"); <u>Wantz v. Experian Info.</u>

14   <u>Solutions</u>, 386 F.3d 829, 834 (7th Cir. 2004) (holding that plaintiff could not prove a violation of

15   Section 1681i absent evidence that the credit reporting agency "disclosed <u>incorrect</u> information …

16   to a third party" (emphasis added)); <u>see also</u> <u>Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.</u>,

17   472 U.S. 749, 760 (1985) (standing for the proposition that the First Amendment forbids credit

18   reporting statutes from being used to allow liability for reporting truth, and explaining that credit

19   reporting is "not totally unprotected by the First Amendment"); <u>Equifax v. Fed. Trade Comm'n</u>,

20   678 F.2d 1047, 1048 (11th Cir. 1982) (noting that the stated purpose of the FCRA is "to prevent

21   consumers from being unjustly damaged because of <u>inaccurate</u> or arbitrary information in a credit

22   report") (emphasis added)).

23       Plaintiff unequivocally conceded that the CCS entry on her credit report -- <u>i.e.</u>, the item of

24   information that she claims was inaccurately reported and is the basis of her entire suit against

25   TransUnion -- is valid and accurately was reported by TransUnion at all times.  (Plaintiff Depo. I,

26   32:5-8, 131:2-14, 132:1-25, 148:14-149:17.)  Consequently, because Plaintiff concedes that the

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

CCS entry is valid and, thus, her credit report is and was always accurate, her Complaint fails in its entirety.

**C.    The Evidence Conclusively Demonstrates That TransUnion Conducted The Reinvestigations Of Plaintiff's Disputes In Accordance With The CCRAA In Any Event.**

Putting aside the admitted accuracy of Plaintiff's TransUnion credit reports, Plaintiff cannot substantiate her allegation that TransUnion failed timely to conduct a reasonable reinvestigation of her disputes. In this regard, Plaintiff alleges that TransUnion violated Civil Code Section 1785.16(a) and (b). (Complaint ¶¶ 8-9.)

**1.    TransUnion Fully Complied With California Civil Code Section 1785.16(a) In Connection With Plaintiff's Disputes.**

California Civil Code Section 1785.16(a) provides as follows:

If the completeness or accuracy of any item of information contained in his or her file is disputed by a consumer, and the dispute is conveyed directly to the consumer credit reporting agency by the consumer or user on behalf of the consumer, the consumer credit reporting agency shall within a reasonable period of time and without charge, reinvestigate and record the current status of the disputed information before the end of the 30-business-day period beginning on the date the agency receives notice of the dispute from the consumer or user, unless the consumer credit reporting agency has reasonable grounds to believe and determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure of the consumer to provide sufficient information, as requested by the consumer credit reporting agency, to investigate the dispute. Unless the consumer credit reporting agency determines that the dispute is frivolous or irrelevant, before the end of the five-business-day period beginning on the date the consumer credit reporting agency receives notice of dispute under this section, the agency shall notify any person who provided information in dispute at the address and in the manner specified by the person. A consumer credit reporting agency may require that disputes by consumers be in writing.

The undisputed evidence in this case plainly establishes that TransUnion complied with Section 1785.16(a) as it relates to each of Plaintiff's four identical disputes.

**a.    The First Dispute**

TransUnion received the First Dispute on Thursday, September 16, 2004. (Terry Decl., ¶ 7, Ex. A.) By Monday, September 20, 2004 (two business days later), TransUnion had: (i) reviewed Plaintiff's documents submitted with the First Dispute; (ii) determined that the First Dispute could not be resolved based upon the information and documentation Plaintiff provided; and (iii) sent

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  Plaintiff a letter advising Plaintiff that her documentation was insufficient, but that TransUnion

2  nonetheless would contact CCS in an attempt to verify the information reported by CCS.  (<u>Id.</u> ¶ 9,

3  Ex. B.)  Also on September 20, 2004, TransUnion sent CCS a request to verify the information it

4  had reported regarding the collection account.  (<u>Id.</u> ¶ 10.)  TransUnion received a response from

5  CCS and completed its investigation of the First Dispute on October 13, 2004 -- nineteen (19)

6  business days after receipt of the First Dispute.  (<u>Id.</u> ¶ 11.)  Also on October 13, 2004, TransUnion

7  sent Plaintiff the results of its investigation and an updated credit report.  (<u>Id.</u> ¶ 11, Ex. C.)   Based

8  on these undisputed facts, TransUnion met all of its obligations under Section 1785.16(a) with

9  respect to the First Dispute:  (1) TransUnion initiated contact with the source of the disputed

10  information within five (5) business days after receipt of Plaintiff's dispute; and (2) completed its

11  investigation and notified Plaintiff of the results within thirty (30) business days after receipt of

12  Plaintiff's dispute.

                      **b.**        **The Second Dispute**

13

14       TransUnion received the Second Dispute on April 5, 2005 and began its reinvestigation of

15  the Second Dispute four (4) business days later on April 11, 2005 by sending another CDV to CCS.

16  (<u>Id.</u> ¶¶ 12-13, Ex. D.)  CCS responded and TransUnion completed its reinvestigation on May 3,

17  2005 -- twenty (20) business days after TransUnion received the Second Dispute.  (<u>Id.</u> ¶ 13.)  That

18  same day, TransUnion sent Plaintiff the results of its reinvestigation of the Second Dispute.  (<u>Id.</u>

19  Ex. E.)  As with the First Dispute, it is incontrovertible that TransUnion fully complied with

20  Section 1785.16(a), in particular by initiating contact with the source of the disputed information

21  within five (5) business days after receipt of the Second Dispute and completing its reinvestigation

22  of the Second Dispute within thirty (30) days after receipt.

                      **c.**        **The Third Dispute**

23

24       On June 9, 2005, TransUnion received the Third Dispute.  (Terry Decl. ¶ 14.)  The very

25  next day, on June 10, 2005, TransUnion examined Plaintiff's credit report and determined that the

26  Third Dispute was duplicative of the Second Dispute and took no action given CCS's two prior

27  verifications of the item as accurately reported.  (<u>Id.</u> ¶ 15.)  TransUnion sent Plaintiff a letter

28

               - 14 -

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

advising her that TransUnion would take no action on June 10, 2005, <u>i.e.</u>, one (1) day after receipt of the Third Dispute.  (<u>Id.</u> ¶ 15, Ex. G.)

In accordance with Civil Code Section 1785.16(a), TransUnion deemed Plaintiff's Third Dispute to be frivolous or irrelevant given its duplication of the Second Dispute (and, in reality, the First Dispute as well).  As expressly permitted by Section 1785.16(b), TransUnion was not required to conduct an investigation into the Third Dispute, but only was required to advise Plaintiff of its determination and the reasons therefore, which it certainly did.  Based on these undisputed facts, TransUnion met its obligations under Section 1785.16(a) with respect to the Third Dispute.

### d.    The Fourth Dispute

TransUnion received the Fourth Dispute on February 14, 2006.  (Terry Decl. ¶ 16, Ex. H.) Notwithstanding that the Fourth Dispute again replicated the First, Second and Third Disputes, TransUnion began its investigation on February 16, 2006, <u>i.e.</u>, two (2) business days later, by sending a request to CCS that it again verify its entry on Plaintiff's credit report.  (<u>Id.</u> ¶ 17.)  CCS <u>again</u> verified the item as accurate on February 20, 2006.  (<u>Id.</u> ¶ 17.)  That same day, a mere four (4) business days after receiving the Fourth Dispute, TransUnion generated and sent Plaintiff's counsel an updated credit report with the results of its investigation of the Fourth Dispute.  (<u>Id.</u> ¶ 17, Ex. I.)

Here, TransUnion once again fulfilled its obligation to initiate contact with the source of the disputed information within five (5) business days, and complete its investigation and advise Plaintiff of the results within thirty (30) business days.  These facts indisputably demonstrate that TransUnion again complied with its obligations under Section 1785.16(a).

### 2.    TransUnion Fully Complied With California Civil Code Section 1785.16(b).

In claiming that TransUnion violated Section 1785.16(b) of the CCRAA, Plaintiff also claims that TransUnion failed properly to "consider all relevant information submitted by the consumer with respect to the disputed items."  (Complaint ¶ 8.)  Contrary to Plaintiff's cynical speculation, however, TransUnion indeed examined Plaintiff's communications and documents carefully and determined they were not dispositive of Plaintiff's disputes pursuant to TransUnion's

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1  guidelines in conducting its investigations.  (See Terry Decl. ¶¶ 4, 9.)  Section 1785.16(b) of the

2  CCRAA provides:

3      In conducting that reinvestigation the consumer credit reporting agency shall review
    and consider all relevant information submitted by the consumer with respect to the

4      disputed item of information.  If the consumer credit reporting agency determines
    that the dispute is frivolous or irrelevant, it shall notify the consumer by mail or, if

5      authorized by the consumer for that purpose, by any other means available to the
    consumer credit reporting agency, within five business days after that determination

6      is made that it is terminating its reinvestigation of the item of information.  In this
    notification, the consumer credit reporting agency shall state the specific reasons

7      why it has determined that the consumer's dispute is frivolous or irrelevant.  If the
    disputed item of information is found to be inaccurate, missing, or can no longer be

8      verified by the evidence submitted, the consumer credit reporting agency shall
    promptly add, correct, or delete that information from the consumer's file.

9  Cal. Civ. Code § 1785.16(b).

10      To this end, as mentioned above, TransUnion has developed detailed policies and

11  guidelines governing the types of documentation that is acceptable from a consumer in connection

12  with investigating a dispute.  (Terry Decl. ¶ 4.)  TransUnion will only accept a consumer's

13  documents if they demonstrate certain indicators of authenticity.  (See id.)  For example,

14  documents from the furnisher of the disputed information must be printed on the information

15  furnisher's letterhead and include the consumer's information and the account number of the

16  disputed item.  (Id.)  Further, TransUnion only accepts authentic documents that prove the

17  substance of the consumer's dispute.  (See id.)   Plaintiff submitted no such documents.

18      In her letters, Plaintiff proclaimed that the CCS item on her credit report was inaccurate

19  because Blue Cross should have paid the underlying debt to Bayside.  (Id., Ex. A.)  With the First

20  Dispute, Plaintiff enclosed numerous documents, most of which said nothing in support of

21  Plaintiff's dispute.  On the other hand, the following two documents directly contradicted

22  Plaintiff's contention in her dispute:  (1) an invoice from Bayside reflecting that Plaintiff was not

23  eligible for insurance at the time of service; and (2) an Explanation of Benefits form she received

24  from Blue Shield of California indicating that Plaintiff was not currently enrolled as a Blue Shield

25  of California insured.  (Id.)

26      Furthermore, the discovery TransUnion obtained from Blue Cross, Plaintiff's supposed

27  insurer at the time, only has revealed that Plaintiff was not insured by Blue Cross at the time for the

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51030068v9

- 16 -

1    services obtained from Bayside.  (<u>See</u> Frontino Decl. Ex. M.)  In particular, Blue Cross indicated

2    that it was "unable to locate any claims related to Bayside Medical in [its] systems" and could not

3    confirm that Plaintiff was insured for the services Bayside provided to her.  (<u>See</u> <u>id.</u>)  Regardless of

4    whether Plaintiff was covered by any insurance whatsoever, Bayside billed Plaintiff's purported

5    insurer as a courtesy, but it ultimately was Plaintiff's obligation to pay her debt to Bayside.

6    (Plaintiff Depo. I, Ex. 3.)  In addition, the documents Bayside produced suggest Plaintiff was not

7    covered for the services she received there, and Highmark's documents reveal no claims against

8    any policy.  (<u>See</u> Frontino Decl. Exs. L, N.)

9        At bottom, Plaintiff admits that she has no knowledge of TransUnion's procedures.

10   (Plaintiff Depo. II 361:4-14.)  Plaintiff merely alleges on information and belief, without any

11   concrete evidence after years of discovery, that TransUnion did not fully consider her disputes or

12   the information and documents she provided with her communications.  While Plaintiff's bald

13   allegations may be enough to survive a pleading challenge, they must give way to summary

14   judgment when evaluated by the concrete facts offered by TransUnion with this Motion.

15       **3.    TransUnion's Reinvestigations Were Clearly Reasonable.**

16       In addition, although the CCRAA does not include any requirement that TransUnion's

17   dispute reinvestigation procedures be "reasonable," it is important to note that TransUnion

18   nevertheless always strives to conduct reasonable reinvestigations in accordance with its

19   obligations under the FCRA.  (<u>See</u> Terry Decl. ¶ 18.)  <u>See</u> 15 U.S.C. § 1681i(a)(1)(A).  Under

20   FCRA standards, Plaintiff may survive a summary judgment motion only by offering "specific

21   facts that could allow a reasonable-fact-finder to determine that [the credit reporting agency's]

22   procedures were not reasonable."  <u>Schaffhausen v. Bank of Am.</u>, 393 F. Supp. 2d 853, 858 (D.

23   Minn. 2005).  TransUnion is entitled to summary judgment because Plaintiff has set forth no

24   evidence demonstrating that TransUnion behaved unreasonably in reinvestigating her disputes.

25       TransUnion responded promptly and properly to each of Plaintiff's disputes.  TransUnion

26   took into consideration all of the information and documentation Plaintiff provided with her

27   disputes and immediately took steps, in accordance with TransUnion's well-established procedures,

28

1    to address the supposed problems in the best way it could.  Importantly, none of the documents

2    Plaintiff submitted supported Plaintiff's contention that she was insured for the services she

3    received at Bayside, or that she was not legally responsible for the debt.  TransUnion has

4    repeatedly requested such documentation from Plaintiff during discovery and Plaintiff has failed to

5    produce any evidence confirming, even circumstantially, that she was insured for this claim.

6          Moreover, TransUnion subpoenaed documents from Bayside, Blue Cross and Highmark,

7    and none of the documents produced by any entity supports Plaintiff's conclusions.  Indeed, the

8    Bayside documents indicate Plaintiff was not covered.  (Frontino Decl. Ex. L )  None of the

9    documents Blue Cross produced establishes that Plaintiff was covered, and the last communication

10   from Blue Cross suggests that she was not covered.  (Id. Ex. O.)  The Highmark documents are

11   inconclusive as to whether Plaintiff was covered for the specific services she received at Bayside,

12   and reveal no insurance claim in any event.  (Id., Ex. N.)  TransUnion issued a total of three

13   subpoenas and no fewer than seven follow-up letters, and spent numerous hours on hold on the

14   telephone, all in an effort to confirm Plaintiff's allegation that she was insured for the services she

15   received at Bayside.  (See id. ¶¶ 10, 15, Exs. I, J, K.)   TransUnion's exhaustive efforts through

16   discovery in the litigation context to confirm Plaintiff's bald allegations well exceed what is

17   required (or even possible) for a reasonable 30-day reinvestigation of a consumer dispute under the

18   CCRAA (and the FCRA), particularly where the dispute is nothing more than a collateral attack on

19   the furnisher of information.  See Deandrade, 523 F.3d at 68-69.  Even using powerful discovery

20   tools in the litigation setting, TransUnion still is unable to determine whether Plaintiff's treatment

21   at Bayside was covered by insurance.

22         TransUnion's exhaustive investigations of Plaintiff's disputes included reviewing Plaintiff's

23   statements and documents she submitted with her disputes and, when that proved inconclusive,

24   communicating with CCS, the information furnisher at issue.[6]  TransUnion did its utmost to ensure

25

26   ───────────────────
     [6] Notably, courts in this Circuit have recognized that it is not reasonable for consumers, creditors,
     or even courts to expect credit reporting agencies to copy and forward all document disputes, some
27   of which may contain many (sometimes irrelevant) documents, to creditors.  See, e.g., Karmolinski
     v. Equifax Info. Services LLC, Civ. No. 04-1448-AA, 2007 WL 2492383, at *5 (D. Or. Aug. 28,
28   2007) (citing Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2216 (2007)).  Thus, not only was

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1    that Plaintiff's credit reports accurately and completely reflected information furnished by CCS.

2    There can be no doubt that the evidence clearly establishes that TransUnion completely responded

3    to each of Plaintiff's disputes in good faith.  Summary judgment in TransUnion's favor is therefore

4    warranted.

5    **D.    TransUnion Fully Complied With California Civil Code Section 1785.16(d)(4).**

6         Plaintiff also alleges that TransUnion violated California Civil Code Section 1785.16(d)(4)

7    (see Complaint ¶ 9), but the undisputed evidence conclusively demonstrates that TransUnion

8    complied with this statutory provision as well.

9         Section 1785.16(d)(4) of the CCRAA provides:

10        (d) A consumer credit reporting agency shall provide written notice to the consumer
          of the results of any reinvestigation … within five days of completion of the

11        reinvestigation.  The notice shall include … (4) a notice that, if requested by the
          consumer, a description of procedure used to determine the accuracy and

12        completeness of the information shall be provided to the consumer by the consumer
          credit reporting agency, including the name, business address, and telephone

13        number of any furnisher of information contacted in connection with that
          information…

14   (Emphasis added).  Plaintiff contends that TransUnion does not advise consumers that they may

15   request a description of the procedures TransUnion follows to determine the accuracy and

16   completeness of disputed information.  (See Complaint ¶ 9.)

17        Plaintiff's contention is demonstrably false.  Each and every time TransUnion concluded its

18   reinvestigation of each of Plaintiff's disputes, it provided Plaintiff with the notice required by

19   Section 1785.16(d), which included a notice that Plaintiff may request a description of

20   TransUnion's procedures used to determine the accuracy and completeness of the disputed

21   information as required by Section 1785.16(d)(4).  After the First Dispute, TransUnion supplied

22   Plaintiff with a credit report describing the results of its investigation of Plaintiff's dispute.  That

23   report included the following notice at page 13:

24

25

26

27

28   TransUnion justified in deeming the documents Plaintiff provided with her First Dispute
     insufficient, but TransUnion was not required to forward the documents to CCS, either.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

LA 51030068v9                                        - 19 -

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

IF INTERESTED, YOU MAY … REQUEST A DESCRIPTION OF HOW THE INVESTIGATION WAS CONDUCTED ALONG WITH THE NAME, ADDRESS AND TELEPHONE NUMBER OF ANYONE WE CONTACTED FOR INFORMATION.

(Terry Decl. ¶ 11, Ex. C at p. 13.)

After completing its reinvestigations of the Second Dispute and the Fourth Dispute, TransUnion supplied the same notice to Plaintiff.  (Id. Exs. E at p. 2, I at p. 2.)  Plaintiff's allegation is frivolous and TransUnion is therefore entitled to judgment in its favor on Plaintiff's cause of action as to Section 1785.16(d)(4) as well.

**E.     Plaintiff Is Precluded From Obtaining Any Of The Relief For Which She Prays.**

    **1.     Plaintiff Is Not Entitled To Injunctive Relief Because She Does Not Allege Actual Damages.**

California Civil Code Section 1785.31(b) "allows a plaintiff injured by a CCRAA violation to seek injunctive relief, it allows a plaintiff facing a threatened CCRAA violation to seek injunctive relief, and it clarifies an injured plaintiff may seek only injunctive relief."  Trujillo v. First Am. Registry, Inc., 157 Cal. App. 4th 628, 637 (2007).  Section 1785.31(b) "does not … allow plaintiffs, uninjured by violations that have already occurred, to bring CCRAA causes of action seeking injunctive relief."  Id.  Put simply, Section 1785.31(b) "does not supplant [the CCRAA's] actual damage requirement in cases where an uninjured plaintiff happens to seek injunctive relief."  Id.

Plaintiff seeks injunctive relief pursuant to Section 1785.31(b).  (See Complaint ¶ 21.) Plaintiff is not entitled to such relief, however, because Plaintiff expressly is not seeking actual damages.  (See id., Prayer for Relief, ¶¶ 1-6.)  Plaintiff's counsel confirmed in his May 29, 2007 letter to TransUnion's counsel that Plaintiff is not seeking actual damages.  (See Frontino Decl. Ex. P.)  Because Plaintiff is not seeking actual damages, she obviously cannot meet the CCRAA's requirement that actual damages be proven before injunctive relief may be obtained.  Injunctive relief is therefore precluded here.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

2.     **Without Actual Damages, Plaintiff Also Is Precluded From Obtaining Punitive Damages.**

As with injunctive relief, "actual damage is a general prerequisite to recovering punitive damages." Trujillo, 157 Cal. App. 4th at 638. "It is settled law in California that punitive damages cannot be awarded unless actual damages are suffered." Id. (citing Werschkull v. United Cal. Bank, 85 Cal. App. 3d 981, 1002 (1978)). Plaintiff does not seek actual damages in this action, yet seeks punitive damages.[7] (See Complaint ¶ 22; see also Frontino Decl., Ex. P.) Again, because she is not alleging actual damages, Plaintiff is precluded from recovering punitive damages under the CCRAA.

3.     **Plaintiff Cannot Show A Willful Violation Of The CCRAA And, Therefore, Is Not Entitled To Punitive Damages For This Additional Reason.**

The predicate for punitive damages under the CCRAA -- i.e., a willful violation of the statute -- is absent here. See Cal. Civ. Code § 1785.31(a)(2). As described above, Plaintiff admits that she does not believe TransUnion purposefully violated the CCRAA. (Plaintiff Depo. II, 419:23-420:9.) This admission alone is sufficient to override Plaintiff's allegation of willful CCRAA violations by TransUnion. While there is no California authority interpreting "willfulness" under the CCRAA, the United States Supreme Court has articulated what conduct constitutes "willfulness" under the FCRA. Under the Supreme Court's analysis it is clear that TransUnion committed no willful violation of the CCRAA.

On June 4, 2007, the United States Supreme Court held that conduct violating the FCRA is "willful" (thus justifying an award of statutory and potentially punitive damages) if undertaken with "reckless disregard" of the rights of consumers from a purely objective standpoint, reversing

---

[7] In her Complaint, Plaintiff purports to seek both "statutory" and punitive damages. (See Complaint ¶ 22.) Unlike the FCRA, the CCRAA does not include separate provisions for "statutory" and punitive damages in the event of a willful violation. Compare 15 U.S.C. § 1681n with Cal. Civ. Code § 1785.31(a)(2). Rather, the CCRAA provides for actual damages (which Plaintiff does not seek here) and punitive damages of "not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000)" per violation. Id. Notably, one federal court very recently held the FCRA's concomitant statutory damages provision (which provides for the smaller range of $100 – $1000 per violation) unconstitutional because the statute provides no guidance to jurors as to how to decide how much to award. See Grimes v. Rave Motion Pictures Birmingham, L.L.C., 552 F. Supp. 2d 1302, 1305 (N.D. Ala. 2008).

1    the Ninth Circuit's opinions in <u>Reynolds v. Hartford Fin. Services Group, Inc.</u>, 435 F.3d 1081 (9th

2    Cir. 2006), and <u>Spano v. Safeco Corp.</u>, 140 Fed. Appx. 746 (9th Cir. 2005). <u>See Safeco Ins. Co. of</u>

3    <u>Am. v. Burr</u>, 127 S. Ct. 2201 (2007). Plaintiff cannot establish that TransUnion "willfully"

4    violated any provision of the CCRAA based on the FCRA standard set by the United States

5    Supreme Court.

6         Under the Supreme Court's analysis, the term "recklessness" generally is understood "as

7    conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is

8    either known or so obvious that it should be known.'" <u>Id.</u> at 2215 (internal citation omitted). The

9    Supreme Court emphasized that the essence of recklessness at common law is the "high risk of

10   harm, objectively assessed." <u>Id.</u> An act is not in "reckless disregard of [the FCRA] unless the

11   action is not only a violation under a reasonable reading of the statute's terms, but shows that the

12   company ran a risk of violating the law substantially greater than the risk associated with a reading

13   that was merely careless." <u>Id.</u> (emphasis added).

14        For the simple reason that Plaintiff admits the CCS entry <u>is accurate</u>, as well as

15   TransUnion's thorough compliance with the reinvestigation requirements under the CCRAA, there

16   can be no finding of willful disregard of Plaintiff's rights. Because she cannot prove a violation of

17   any kind, it goes without saying that Plaintiff cannot prove any willful misconduct by TransUnion

18   and, therefore, she is not entitled to punitive damages.

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## V.  CONCLUSION

For the reasons set forth above, TransUnion respectfully requests that the Court grant the Motion in its entirety or, in the alternative, one or more of the issues to be summarily adjudicated pursuant to Federal Rule of Civil Procedure 56(d) as set forth in the Notice of Motion and [Proposed] Order lodged concurrently herewith.

Dated:  August 22, 2008

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN
BRIAN C. FRONTINO

By:_____/s/ Brian C. Frontino_____
              Brian C. Frontino

Attorneys for Defendant
   TRANSUNION LLC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

- 23 -

MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

(Case No. 5:08-cv-01317-JF-HRL)

1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 083013)
2  STEPHEN J. NEWMAN (State Bar No. 181570)
   BRIAN C. FRONTINO (State Bar No. 222032)
3  2029 Century Park East
   Los Angeles, CA  90067-3086
4  Telephone:  310-556-5800
   Facsimile:  310-556-5959
5  lacalendar@stroock.com

6  Attorneys for Defendant
     TRANSUNION LLC

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  NOEMIA CARVALHO, on behalf of herself    )  Case No. 5:08-cv-01317-JF-HRL
    and other similarly situated people,     )
12                                           )  [Assigned to the Honorable Jeremy Fogel]
                                             )
13              Plaintiff,                    )  **[PROPOSED] ORDER GRANTING
                                             )  MOTION OF DEFENDANT TRANSUNION
14        vs.                                 )  LLC FOR SUMMARY JUDGMENT OR, IN
                                             )  THE ALTERNATIVE, SUMMARY
15  CREDIT CONSULTING SERVICES, INC.,        )  ADJUDICATION**
    dba CCS, EQUIFAX CREDIT                  )
16  INFORMATION SERVICES, LLC,               )  **[F.R.C.P. 56(b)]**
    EXPERIAN INFORMATION SOLUTIONS,          )
17  INC., TRANS UNION LLC, and DOES 1-50,    )  Date:        September 26, 2008
    inclusive,                               )  Time:        9:00 a.m.
18                                           )  Courtroom:  3
                                             )
19              Defendants.                   )
                                             )
20  _____ )

21

22

23

24

25

26

27

28

1    The Motion of defendant TransUnion LLC ("TransUnion") for Summary Judgment or, in

2    the Alternative, Summary Adjudication (the "Motion") came on regularly for hearing on

3    September 26, 2008, at 9:00 a.m., in Courtroom 3 of the United States District Court for the

4    Northern District of California, located at 280 South 1st Street, San Jose, California 95113, the

5    Honorable Jeremy Fogel presiding.  Stroock & Stroock & Lavan appeared on behalf of

6    TransUnion, and Ron Bochner appeared on behalf of plaintiff Noemia Carvalho.  After full

7    consideration of the evidence and authorities submitted by, and arguments of, the parties, the Court

8    finds that there is no triable issue of material fact, and the Motion is granted in favor of TransUnion

9    and against Plaintiff Noemia Carvalho ("Plaintiff") on Plaintiff's Complaint against TransUnion.

10    <u>In the alternative</u>:

11    Summary adjudication is entered in favor of TransUnion and against Plaintiff on the

12    following issues:

13    1.    Plaintiff's claim fails because she admits the item on her credit report at issue in this

14    action is, and at all relevant times was, accurately reported;

15    2.    TransUnion did not violate California Civil Code section 1785.16(a) with respect to

16    Plaintiff's September 2004 dispute submitted to TransUnion;

17    3.    TransUnion did not violate California Civil Code section 1785.16(a) with respect to

18    Plaintiff's April 2005 dispute submitted to TransUnion;

19    4.    TransUnion did not violate California Civil Code section 1785.16(a) with respect to

20    Plaintiff's June 2005 dispute submitted to TransUnion;

21    5.    TransUnion did not violate California Civil Code section 1785.16(a) with respect to

22    Plaintiff's February 2006 dispute submitted to TransUnion;

23    6.    TransUnion did not violate California Civil Code section 1785.16(b) with respect to

24    Plaintiff's September 2004 dispute submitted to TransUnion;

25    7.    TransUnion did not violate California Civil Code section 1785.16(b) with respect to

26    Plaintiff's April 2005 dispute submitted to TransUnion;

27

28

[PROPOSED] ORDER GRANTING MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT
(Case No. 5:08-cv-01317-JF-HRL)

LA 51052386v1

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

8.    TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's June 2005 dispute submitted to TransUnion;

9.    TransUnion did not violate California Civil Code section 1785.16(b) with respect to Plaintiff's February 2006 dispute submitted to TransUnion;

10.    TransUnion did not violate California Civil Code section 1785.16(d)(4) in its October 13, 2004 communication to Plaintiff;

11.    TransUnion did not violate California Civil Code section 1785.16(d)(4) in its May 3, 2005 communication to Plaintiff;

12.    TransUnion did not violate California Civil Code section 1785.16(d)(4) in its June 10, 2005 communication to Plaintiff;

13.    TransUnion did not violate California Civil Code section 1785.16(d)(4) in its February 20, 2006 communication to Plaintiff;

14.    TransUnion did not willfully violate the CCRAA;

15.    Plaintiff does not allege actual damages and, therefore, is not entitled to injunctive relief under the CCRAA; or

16.    Plaintiff does not allege actual damages and, therefore, is not entitled to punitive damages under the CCRAA.

IT THEREFORE IS ORDERED that the Motion is GRANTED and that judgment in this action shall be entered in favor of TransUnion in accordance with the matters adjudicated by the Court on the Motion.

**IT IS SO ORDERED.**

Dated:  _____    _____

The Honorable Jeremy Fogel
United States District Court Judge

Submitted by:
STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN
BRIAN C. FRONTINO

By:  _____/s/  Brian C. Frontino_____
Brian C. Frontino