1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 083013)
STEPHEN J. NEWMAN (State Bar No. 181570)
BRIAN C. FRONTINO (State Bar No. 222032)
2029 Century Park East
Los Angeles, CA  90067-3086
Telephone:  310-556-5800
Facsimile:  310-556-5959
lacalendar@stroock.com

Attorneys for Defendant
  TRANSUNION LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NOEMIA CARVALHO, on behalf of herself and other similarly situated people,<br><br>   Plaintiff,<br><br>  vs.<br><br>CREDIT CONSULTING SERVICES, INC., dba CCS, EQUIFAX CREDIT INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and DOES 1-50, inclusive,<br><br>   Defendants. | Case No. 5:08-cv-01317-JF-HRL<br><br>[Assigned to the Honorable Jeremy Fogel]<br><br>**DECLARATION OF BRIAN C. FRONTINO IN SUPPORT OF MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT**<br><br>**[F.R.C.P. 56(b), (d)]**<br><br>Date:  September 26, 2008<br>Time:  9:00 a.m.<br>Courtroom: 3 |

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

1

### DECLARATION OF BRIAN C. FRONTINO

2    I, Brian C. Frontino, hereby declare as follows:

3    1.    I am admitted to practice before this Court and am an associate of Stroock &

4 Stroock & Lavan LLP ("Stroock"), counsel for defendant TransUnion LLC ("TransUnion") in this

5 action.  I submit this Declaration in support of TransUnion's Motion for Summary Judgment or, in

6 the Alternative, Summary Adjudication (the "Motion").  The facts set forth herein are true of my

7 own personal knowledge, except where based upon my review of the pleadings and other papers

8 produced in this action.  If called as a witness, I could and would competently testify thereto.

9    2.    On February 6, 2008, I attended part one of the deposition of plaintiff Noemia

10 Carvalho ("Plaintiff").  Copies of cited excerpts from Volume One of Plaintiff's deposition are

11 attached hereto as Exhibit A.

12    3.    On March 4, 2008, I took and attended part two of Plaintiff's deposition.  Copies of

13 cited excerpts from Volume Two of Plaintiff's deposition are attached hereto as Exhibit B.

14    4.    A copy of Exhibit 3 from the Deposition of Noemia Carvalho taken on February 6,

15 2008 is attached hereto as Exhibit C.

16    5.    A copy of Exhibit 8 from the Deposition of Noemia Carvalho taken on February 6,

17 2008 is attached hereto as Exhibit D.

18    6.    A copy of Exhibit 10 from the Deposition of Noemia Carvalho taken on February 6,

19 2008 is attached hereto as Exhibit E.

20    7.    A copy of Exhibit 11 from the Deposition of Noemia Carvalho taken on February 6,

21 2008 is attached hereto as Exhibit F.

22    8.    A copy of Exhibit 15 from the Deposition of Noemia Carvalho taken on February 6,

23 2008 is attached hereto as Exhibit G.

24    9.    A copy of Exhibit 18 from the Deposition of Noemia Carvalho taken on February 6,

25 2008 is attached hereto as Exhibit H.

26    10.    Copies of the October 5, 2007 subpoena issued to Bayside (the "Bayside

27 Subpoena"), the October 15, 2007 subpoena issued to Blue Cross (the "Blue Cross Subpoena") and

28

- 1 -

1  the June 25, 2008 subpoena issued to Highmark Blue Cross Blue Shield of Pennsylvania

2  ("Highmark") (the "Highmark Subpoena") are attached hereto as Exhibits I, J and K, respectively.

3      11.    Copies of documents produced by Bayside in response to the Bayside Subpoena are

4  attached hereto as Exhibit L.

5      12.    Copies of documents produced by Blue Cross in response to the Blue Cross

6  Subpoena are attached hereto as Exhibit M.

7      13.    Copies of documents produced by Highmark in response to the Highmark Subpoena

8  are attached hereto as Exhibit N.

9      14.    A copy of a letter from Sharon Lanergan of Blue Cross to my colleague Janet

10  Hensch, dated May 15, 2008, is attached hereto as Exhibit O.

11      15.    My colleague Janet Hensch prepared and sent three letters, and I prepared and sent

12  two others, to Blue Cross in order to follow up on the Blue Cross Subpoena.  Ms. Hensch also

13  engaged in multiple phone conversations with Blue Cross, including one during which she was

14  placed on hold for several hours.  Ms. Hensch also left several voice mail messages for Blue Cross

15  employees.  Ultimately, it was Blue Cross, not Plaintiff, who directed us to contact Highmark.

16  (See Ex. O.)  After subpoenaing Highmark, I discussed the Highmark Subpoena with Highmark

17  employee Rene Halligan, and sent Ms. Halligan two follow up letters regarding the Highmark

18  Subpoena.  My colleague Darius Zolnor also communicated with Ms. Halligan regarding the

19  Highmark Subpoena.  All told, my colleagues and I have sent seven follow-up letters and spent

20  numerous hours on the telephone with the insurers, all in an effort to confirm Plaintiff's allegation

21  that she was insured for the services she received at Bayside.

22      16.    A copy of the letter from Plaintiff's counsel to me, dated May 29, 2007, is attached

23  hereto as Exhibit P.

24      I declare under penalty of the laws of the United States of America that the foregoing is true

25  and correct.  Executed this 22nd day of August 2008, at Los Angeles, California.

26

27              /s/ Brian C. Frontino
                  Brian C. Frontino

28

NOTICE OF MOTION AND MOTION OF DEFENDANT TRANSUNION LLC FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

(Case No. 5:08-cv-01317-JF-HRL)

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY

NOEMIA CARVALHO, on behalf of
herself and other similar
people,

                Plaintiff,

vs.                                    No. M90093

CREDIT CONSULTING SERVICES, INC.,
dba CCS, et al.,

                Defendants.

# CERTIFIED COPY

---

DEPOSITION OF NOEMIA CARVALHO

San Francisco, California

Wednesday, February 6, 2008

Volume 1

REPORTED BY:
LYNNE LEDANOIS
CSR No. 6811

Job No. 81620

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                       COUNTY OF MONTEREY

3

4    NOEMIA CARVALHO, on behalf of
     herself and other similar
5    people,

6                              Plaintiff,

7    vs.                                   No. M90093

8    CREDIT CONSULTING SERVICES, INC.,
     dba CCS, et al.,
9

10                             Defendants.

11

12    _____

13

14        Deposition of NOEMIA CARVALHO, taken on behalf of

15   Defendant, at 555 California Street, 25th Floor, San

16   Francisco, California, beginning at 9:06 a.m., and

17   ending at 4:05 p.m. on Wednesday, February 6, 2008,

18   before LYNNE LEDANOIS, CSR 6811.

19

20

21

22

23

24

25

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

NOEMIA CARVALHO                                    02/06/08

| | |
|---|---|
| 09:42:12 1 | else's mistakes, for someone that denied to even look at |
| 09:42:16 2 | my letters that I went sending to them.  So I said I |
| 09:42:19 3 | rather to have my name bad in credit in this country, |
| 09:42:22 4 | but I will not pay this $100. |
| 09:42:25 5 | Q    So you made the decision -- the conscious |
| 09:42:29 6 | decision not to pay the bill for $118 based on |
| 09:42:33 7 | principle; is that correct? |
| 09:42:34 8 | A    Basic principles, that's correct. |
| 09:42:36 9 | Q    Yet, you knew that by not doing so, you could |
| 09:42:41 10 | damage your credit report; is that correct? |
| 09:42:43 11 | A    Correct.  I damage my name because of this. |
| 09:42:52 12 | Q    Did you review any documents in preparation for |
| 09:42:54 13 | your deposition today? |
| 09:42:59 14 | A    Not really.  I just -- I just know this case so |
| 09:43:09 15 | much already that I don't know how far I can go.  I've |
| 09:43:12 16 | been dealing with this since it started, since 2001. |
| 09:43:20 17 | Q    I'm going to ask you a question.  I'm going to |
| 09:43:22 18 | ask you whether you met with your attorney, but I don't |
| 09:43:24 19 | want you to tell me anything that the two of you may |
| 09:43:27 20 | have said. |
| 09:43:27 21 | A    No, my lawyer is just direct me about what |
| 09:43:30 22 | things that I -- really, really should take place. |
| 09:43:37 23 | MR. BOCHNER:  Let her ask a question.  I don't |
| 09:43:39 24 | want -- our conversations are totally privileged, so you |
| 09:43:42 25 | should not talk to her about what we said to each other. |

32

| | | |
|---|---|---|
| 09:13:08 | 1 | (Defendant's Exhibit 3 was marked for |
| 09:13:08 | 2 | identification by the Court Reporter.) |
| 09:48:10 | 3 | BY MS. JOHNSTON: |
| 09:48:11 | 4 | Q    Do you recognize this document, Ms. Carvalho? |
| 09:48:12 | 5 | A    Yes. |
| 09:48:13 | 6 | Q    What is it? |
| 09:48:14 | 7 | A    This is from Bayside Medical Group when I went |
| 09:48:16 | 8 | there to see a doctor. |
| 09:48:18 | 9 | Q    Was this the registration form that you filled |
| 09:48:21 | 10 | out when you went to Bayside Medical Group on or about |
| 09:48:26 | 11 | October 19th, 2001? |
| 09:48:27 | 12 | A    That's correct. |
| 09:48:29 | 13 | Q    At the bottom it says, signature of patient. |
| 09:48:32 | 14 | Is that your signature? |
| 09:48:34 | 15 | A    That's correct. |
| 09:48:38 | 16 | Q    Did you read this document before you signed |
| 09:48:40 | 17 | it? |
| 09:48:40 | 18 | A    I read. |
| 09:48:47 | 19 | Q    Did you receive some type of service from |
| 09:48:50 | 20 | Bayside Medical Group on or about this day, October |
| 09:48:52 | 21 | 19th, 2001? |
| 09:48:54 | 22 | A    Yes, I saw doctor. |
| 09:48:56 | 23 | Q    And were you charged $118 for the service that |
| 09:49:01 | 24 | Bayside Medical Group provided you? |
| 09:49:04 | 25 | A    I think the $118 is -- this was not the right |

35

NOEMIA CARVALHO                                           02/06/08

| 09:56:48 | 1 | Why did you not fill out any information in |

09:56:48  1          Why did you not fill out any information in
09:56:50  2    that box?
09:56:52  3          A    I'm not sure, but I think the secretary said --
09:56:58  4    she made a copy of my Blue Cross, so she said -- I'm not
09:57:04  5    sure, but I -- she made a copy of my Blue Cross card.
09:57:08  6    So I think that was enough for them to have, because
09:57:13  7    they did not ask me to fill out this.
09:57:15  8          Q    So at the time, you provided a copy of your
09:57:17  9    Blue Cross card to Bayside to make a photocopy of; is
09:57:21  10   that correct?
09:57:22  11         A    I gave the original and they made a copy, and
09:57:25  12   they have it in their records.
09:57:26  13         Q    At the very bottom of this document it says,
09:57:28  14   Bayside Medical Group, Inc. will bill your insurance as
09:57:31  15   a courtesy to you.  If your insurance does not pay the
09:57:35  16   claim within 90 days of the date of service, the balance
09:57:38  17   of your account will be your responsibility.
09:57:40  18         Do you see that?
09:57:41  19         A    Yes.
09:57:42  20         Q    Did you understand that at the time that you
09:57:43  21   read it?
09:57:44  22         A    Yes.
09:57:44  23         MR. BOCHNER:  Calls for a legal conclusion.
09:57:47  24         THE WITNESS:  I understood.
09:57:48  25   BY MS. JOHNSTON:

40

NOEMIA CARVALHO

02/06/08

| | |
|---|---|
| 09:57:48 | 1 |
| 09:57:50 | 2 |
| 09:57:53 | 3 |
| 09:57:57 | 4 |
| 09:57:58 | 5 |
| 09:58:00 | 6 |
| 09:58:02 | 7 |
| 09:58:08 | 8 |
| 09:58:08 | 9 |
| 09:58:10 | 10 |
| 09:58:13 | 11 |
| 09:58:18 | 12 |
| 09:58:21 | 13 |
| 09:58:23 | 14 |
| 09:58:25 | 15 |
| 09:58:27 | 16 |
| 09:58:29 | 17 |
| 09:58:33 | 18 |
| 09:58:36 | 19 |
| 09:58:37 | 20 |
| 09:58:38 | 21 |
| 09:58:40 | 22 |
| 09:58:41 | 23 |
| 09:58:45 | 24 |
| 09:58:45 | 25 |

Q    So you understood that if your insurance did
not pay for the services that were being provided by
Bayside Medical Group, you would be responsible to pay
for them?

MR. BOCHNER:  Calls for a legal conclusion.

THE WITNESS:  I understood, but the only
problem is that they sent my bill to the wrong place.

BY MS. JOHNSTON:

Q    And in the second paragraph it says, Assignment
and Release.  I hereby authorize my insurance company to
pay benefits directly to Bayside Medical Group, and I am
financially responsible for noncovered services.

Did you read that at the time?

A    Yes.  But I was covered.

Q    And you understood that to the extent that your
insurance company did not pay for the bill for the
services provided to you by Bayside Medical Group, that
you would be financially responsible to pay the bill; is
that correct?

MR. BOCHNER:  Calls for a legal conclusion.

Go ahead and answer.

THE WITNESS:  As long as they could send my
bill to Blue Cross, we did not have this problem.

BY MS. JOHNSTON:

Q    I don't think you quite answered my question.

41

NOEMIA CARVALHO                                                    02/06/08

| | |
|---|---|
| 09:58:48 | 1 |

        But you understood --

09:58:49  2    A    Yes.

09:58:49  3    Q    -- at this time that if your insurance company

09:58:51  4  did not pay, it was your responsibility to pay; correct?

09:58:54  5        MR. BOCHNER:  Asked and answered, legal

09:58:56  6  conclusion.

09:58:58  7        THE WITNESS:  I understood this.

09:58:59  8  BY MS. JOHNSTON:

09:59:04  9    Q    Had you been to Bayside Medical Group before

09:59:07 10  October 19th?

09:59:08 11    A    No.  It was the first time.

09:59:11 12    Q    How did you decide to go there?  What made you

09:59:14 13  decide?

09:59:14 14    A    I check the doctors that was belong to Blue

09:59:17 15  Cross, so I chose that one by the book.  I did have no

09:59:23 16  referral or anything.

09:59:25 17    Q    So you believed that Bayside Medical Group was

09:59:28 18  one of the medical providers that was identified as

09:59:31 19  being covered by Blue Cross; is that correct?

09:59:33 20    A    It was, m-hm.

09:59:35 21    Q    This is a slightly different question.

09:59:42 22        Do you know whether the specific services that

09:59:45 23  were provided to you on that date were covered under

09:59:47 24  your Blue Cross insurance policy?

09:59:52 25    A    The service -- I had premium insurance, so I

                                                                        42

NOEMIA CARVALHO                                      02/06/08

10:13:41  1     Q    So Dr.~Hart was the doctor that you saw on

10:13:43  2 October 19th?

10:13:44  3     A    Yes.

10:13:45  4     Q    And it was identified as an office visit, new

10:13:48  5 patient; is that correct?

10:13:52  6     A    That's correct.

10:13:52  7     Q    And the amount that was charged was $118?

10:13:58  8     A    M-hm.  Yes.

10:14:00  9     Q    And there is a notation that says, Insurance

10:14:02 10 payment of zero.

10:14:07 11        Do you see that?

10:14:13 12     A    Yes.

10:14:14 13     Q    And then a notation, Not eligible at time of

10:14:17 14 service.  Please call your insurance.

10:14:20 15        Do you see that?

10:14:21 16     A    Yes.

10:14:23 17     Q    At that time -- at the time that you received

10:14:25 18 this bill, did you call your insurance to discuss it?

10:14:34 19     A    Let me see.

10:14:39 20        MR. BOCHNER:  That was six years ago,

10:14:41 21 approximately, so I don't want you to guess.

10:14:43 22        THE WITNESS:  I don't know if I made that call,

10:14:45 23 but I know that I was dealing with Blue Cross a lot.  I

10:14:48 24 don't remember that I made the call.

10:14:49 25 BY MS. JOHNSTON:

51

NOEMIA CARVALHO

02/06/08

| | | |
|---|---|---|
| 10:14:50 | 1 | Q    Do you recall ever sending this bill to Blue |
| 10:14:51 | 2 | Cross for them to pay? |
| 10:14:54 | 3 | A    I did not send this to Blue Cross. |
| 10:14:56 | 4 | Q    You did not? |
| 10:14:58 | 5 | A    I don't remember, no.  I sent it back to the |
| 10:15:07 | 6 | office.  I sent this back to Bayside.  And I think I |
| 10:15:08 | 7 | wrote a little note or something, I don't know, for them |
| 10:15:11 | 8 | to send the bill to Blue Cross. |
| 10:15:14 | 9 | Q    I just want to make sure I understand what your |
| 10:15:16 | 10 | testimony is, just to make it clear. |
| 10:15:18 | 11 |      So do you know one way or another whether you |
| 10:15:23 | 12 | sent a copy of this bill to Blue Cross? |
| 10:15:25 | 13 | A    I don't think I sent. |
| 10:15:27 | 14 | Q    You don't think you did? |
| 10:15:28 | 15 | A    No. |
| 10:15:28 | 16 | Q    But you believe that you sent this back to |
| 10:15:33 | 17 | Bayside Medical Group? |
| 10:15:34 | 18 | A    Yes. |
| 10:15:35 | 19 | Q    And down on the bottom there's some |
| 10:15:37 | 20 | handwriting. |
| 10:15:38 | 21 | A    Yes. |
| 10:15:38 | 22 | Q    Is that yours? |
| 10:15:39 | 23 | A    Yes. |
| 10:15:40 | 24 | Q    And it says, Sent back on 2/13/02? |
| 10:15:43 | 25 | A    Yes.  Correct. |

52

NOEMIA CARVALHO                                    02/06/08

| 10:15:44 | 1 |
| 10:15:47 | 2 |
| 10:15:49 | 3 |
| 10:15:51 | 4 |
| 10:15:53 | 5 |
| 10:15:56 | 6 |
| 10:15:57 | 7 |
|          | 8 |
| 10:26:20 | 9 |
| 10:26:24 | 10 |
| 10:26:36 | 11 |
| 10:26:38 | 12 |
| 09:13:08 | 13 |
| 09:13:08 | 14 |
| 10:27:36 | 15 |
| 10:27:36 | 16 |
| 10:27:48 | 17 |
| 10:27:50 | 18 |
| 10:28:02 | 19 |
| 10:28:03 | 20 |
| 10:28:05 | 21 |
| 10:28:07 | 22 |
| 10:28:11 | 23 |
| 10:28:12 | 24 |
| 10:28:14 | 25 |

1    Q    Is that your notation indicating that you sent

2  this back to Bayside on or about that time?

3    A    Yes.

4         MS. JOHNSTON:  We've been going for a little

5  bit over than hour.  Let's take a short break.

6         VIDEOGRAPHER:  Going off the record.  The time

7  is 10:15.

8              (Recess Taken.)

9         VIDEOGRAPHER:  Back on the record.  The time is

10  10:25.  Please continue.

11         MS. JOHNSTON:  I would like to mark the next

12  exhibit, please.

13         (Defendant's Exhibit 9 was marked for

14         identification by the Court Reporter.)

15  BY MS. JOHNSTON:

16    Q    Do you recognize this document, Ms. Carvalho?

17    A    I think this document was when I contact

18  Jocel -- I have her name somewhere -- and she sent those

19  documents to me.

20    Q    And the person that you're referring to, is she

21  at Blue Cross?

22    A    Yes.  I think she is -- somewhere you have her

23  name there.

24    Q    Do you know when you contacted -- first

25  contacted Blue Cross in connection with your Bayside

53

NOEMIA CARVALHO                                    02/06/08

| | |
|---|---|
| 10:32:49 1 | Bayside Medical Group document, why did you not send |
| 10:32:54 2 | this to Blue Cross? |
| 10:32:58 3 | A   This is the way -- I think I faxed all these |
| 10:33:01 4 | papers to her, and I was faxing these papers to Bayside. |
| 10:33:11 5 | I faxed a lot, as much as I could, to everyone. |
| 10:33:11 6 | Q   I just want to make sure that we have a clear |
| 10:33:14 7 | record, because I thought that you had testified |
| 10:33:17 8 | previously when we were talking about this exhibit that |
| 10:33:19 9 | you did not recall sending it to anyone other than back |
| 10:33:22 10 | to Bayside Medical Group.  So -- |
| 10:33:25 11 | A   Here's a fax number on top.  You see?  29 -- to |
| 10:33:32 12 | this fax.  September 9, 2004, from Waste Management to |
| 10:33:37 13 | this number there, 974.  It has a number that I faxed |
| 10:33:46 14 | this.  So I know that I faxed this paper to someone. |
| 10:33:49 15 | Q   You just don't recall who? |
| 10:33:51 16 | A   I don't recall now. |
| 10:34:02 17 | Q   Do you know whether the fax that you were just |
| 10:34:04 18 | referring to could have been to Mr. Bochner? |
| 10:34:07 19 | A   I don't remember.  I know that I faxed a lot of |
| 10:34:10 20 | paper -- this paper to all over the United States. |
| 10:35:10 21 | (Defendant's Exhibit 10 was marked for |
| 10:35:10 22 | identification by the Court Reporter.) |
| 23 | BY MS. JOHNSTON: |
| 10:35:11 24 | Q   Do you recognize this document? |
| 10:35:12 25 | A   Yes. |

57

**NOEMIA CARVALHO**                                    02/06/08

| | |
|---|---|
| 10:35:13 | 1 |
| 10:35:13 | 2 |
| 10:35:16 | 3 |
| 10:35:19 | 4 |
| 10:35:22 | 5 |
| 10:35:23 | 6 |
| 10:35:23 | 7 |
| 10:35:26 | 8 |
| 10:35:30 | 9 |
| 10:35:32 | 10 |
| 10:35:34 | 11 |
| 10:35:37 | 12 |
| 10:35:43 | 13 |
| 10:35:45 | 14 |
| 10:35:46 | 15 |
| 10:35:48 | 16 |
| 10:35:50 | 17 |
| 10:35:54 | 18 |
| 10:35:59 | 19 |
| 10:36:03 | 20 |
| 10:36:07 | 21 |
| 10:36:07 | 22 |
| 10:36:08 | 23 |
| 10:36:10 | 24 |
| 10:36:13 | 25 |

Q    What is it?

A    It's a final notice for me to pay this bill or they're going to send me to collection.

Q    It has a date at the top of March 6th, 2003; is that correct?

A    Yes.

Q    And it says that since we have not received payment in full for your account, this is our final notice regarding your past-due balance.

A    M-hm.

Q    It's true that as of March 6th, 2003, you had not paid the $118 charge that you incurred at Bayside Medical Group; correct?

A    That's correct.

Q    In the second paragraph it says, If payment in full is not received in our office within the next seven days, we have no choice but to turn your account over to a collection agency.  If this action is taken, medical services may not be available through our offices.  Such action may also affect your credit rating.  Is that correct?

A    That is correct.

Q    Did you pay this bill within the seven-day notice period requested in this letter?

A    I did not pay.

                                                              58

NOEMIA CARVALHO                                02/06/08

10:36:16  1         Q    And you knew that by not doing so, it could
10:36:19  2    affect your credit rating; is that correct?
10:36:21  3         A    That's correct.
10:36:22  4         Q    Why did you not pay the bill at this time,
10:36:23  5    then, ma'am?
10:36:25  6         A    Because I was disputing that I should not pay
10:36:28  7    this bill because I was covered by Blue Cross.  I was in
10:36:31  8    the same, same situation as the beginning.  I was
10:36:36  9    assured.
10:36:37  10         MR. BOCHNER:  And it's asked and answered
10:36:38  11    already, too, so...
09:13:08  12              (Defendant's Exhibit 11 was marked for
09:13:08  13              identification by the Court Reporter.)
10:37:31  14    BY MS. JOHNSTON:
10:37:31  15         Q    Ms. Carvalho, do you recognize this document?
10:37:33  16         A    Yes.
10:37:34  17         Q    What is it?
10:37:34  18         A    It's from the Credit Consulting Services, from
10:37:37  19    the collector, debt collector.
10:37:44  20         Q    And in the upper right-hand corner there is a
10:37:44  21    re line that says, Bayside Medical Group, Inc.
10:37:46  22         Do you see that, ma'am?
10:37:47  23         A    Yes.
10:37:47  24         Q    With an account number and an amount due of
10:37:50  25    $118.

NOEMIA CARVALHO                                            02/06/08

| | | |
|---|---|---|
| 10:37:51 | 1 | Do you see that? |
| 10:37:52 | 2 | A    Yes. |
| 10:37:53 | 3 | Q    Does this refer to the treatment that you |
| 10:37:57 | 4 | received at Bayside Medical Group in -- on October 19, |
| 10:38:02 | 5 | 2001 that we've been talking about? |
| 10:38:04 | 6 | A    That's correct. |
| 10:38:06 | 7 | Q    And this is from Credit Consulting Services, |
| 10:38:07 | 8 | Inc.? |
| 10:38:11 | 9 | A    Yes. |
| 10:38:12 | 10 | Q    You received this -- or it was -- it's dated |
| 10:38:15 | 11 | August 28, 2003; is that correct? |
| 10:38:17 | 12 | A    3 or 2? |
| 10:38:19 | 13 | MR. BOCHNER:  I can't read it either. |
| 10:38:21 | 14 | THE WITNESS:  It's 2002?  I don't know.  I |
| 10:38:24 | 15 | think it's 3. |
| 10:38:28 | 16 | BY MS. JOHNSTON: |
| 10:38:29 | 17 | Q    It's a little bit hard to read.  Unfortunately, |
| 10:38:31 | 18 | this is the cleanest copy that we have of this. |
| 10:38:34 | 19 | A    I think it's 3. |
| 10:38:36 | 20 | Q    And it has -- it says, Collection Notice, |
| 10:38:38 | 21 | Important.  The above past-due account has been placed |
| 10:38:42 | 22 | with us for collection.  And that past-due account is |
| 10:38:47 | 23 | referenced to the Bayside Medical Group account; |
| 10:38:49 | 24 | correct? |
| 10:38:50 | 25 | A    Right. |

60

NOEMIA CARVALHO    02/06/08

| | |
|---|---|
| 10:38:50 | 1 |
| 10:38:53 | 2 |
| 10:38:59 | 3 |
| 10:39:01 | 4 |
| 10:39:02 | 5 |
| 10:39:05 | 6 |
| 10:39:07 | 7 |
| 10:39:12 | 8 |
| 10:39:13 | 9 |
| 10:39:16 | 10 |
| 10:39:20 | 11 |
| 10:39:22 | 12 |
| 10:39:23 | 13 |
| 10:39:23 | 14 |
| 10:39:29 | 15 |
| 10:39:33 | 16 |
| 10:39:37 | 17 |
| 10:39:39 | 18 |
| 10:39:40 | 19 |
| 10:39:43 | 20 |
| 10:39:44 | 21 |
| 10:39:48 | 22 |
| 10:39:48 | 23 |
| 10:39:48 | 24 |
| 10:39:50 | 25 |

Q    It says, It is the policy of this agency to report all eligible accounts to Experian, Equifax and TransUnion Credit Reporting Services.

Do you see that, ma'am?

A    Yes.

Q    After you received this letter from Credit Consulting Services, did you submit payment of the bill from Bayside Medical Group?

A    No.  I never paid this bill.  This is the only bill that I never paid in this country.

MR. BOCHNER:  Asked and answered.  She's never paid this bill.

BY MS. JOHNSTON:

Q    And you knew that by failing to do so, that Credit Consulting Services was going to report that fact to Experian, Equifax and TransUnion Credit Reporting Services; correct?

MR. BOCHNER:  That misstates the document.  The document says it is the policy of the agency.  That does not mean they will actually do it.

Go ahead and answer it if you can.

THE WITNESS:  Yes.

BY MS. JOHNSTON:

Q    At the very least, you knew that it was a possibility that this could be reported -- your failure

61

NOEMIA CARVALHO                                    02/06/08

10:42:19  1      A    Yes.

10:42:19  2      Q    Can you tell me what it is, please?

10:42:21  3      A    This was a letter that I sent to Blue Cross and

10:42:27  4  I attached -- I think I attached this letter here.

10:42:35  5      Q    When you say "this letter here," you're

10:42:37  6  referring to Exhibit 11?

10:42:38  7      A    This -- m-hm.  And I contacted the Bayside

10:42:48  8  Medical Group office.  I spoke with Shannon.  Shannon,

10:42:53  9  she spoke with me saying that she received a deny letter

10:42:57 10  from Blue Cross, and I request a copy of the letter that

10:43:00 11  she received.  She was not willing to send a copy to me.

10:43:07 12  So I sent this letter to Blue Cross in Los Angeles.

10:43:12 13      Q    And did you draft this letter yourself?

10:43:16 14      A    I draft this letter with one of my coworkers.

10:43:20 15      Q    And is this a coworker that we were discussing

10:43:22 16  before, Ginger someone?

10:43:24 17      A    No, it was another one.  She's not work with

10:43:29 18  Waste Management.  It was another coworker that we were

10:43:32 19  working together in collection.  I brought all the

10:43:35 20  documents, I put everything together, and we draft a

10:43:37 21  letter.

10:43:46 22      Q    Now, you referenced here this conversation that

10:43:48 23  you had with Shannon at Bayside Medical Group.

10:43:52 24           Can you tell me everything you recall about

10:43:53 25  that conversation?

63

NOEMIA CARVALHO

02/06/08

| | |
|---|---|
| 10:44:10 | 1 |

         A    I spoke the basic disputing, saying that I

received the letter from the Credit Consulting Services

and that I know that I was insured by Blue Cross.  And

that she said that she received a letter from Blue Cross

denying my -- denying my bill.  So I request the denial

letter from her.  She said she could not send to me.

         So I sent this letter to Blue Cross and saying

to Blue Cross to request Bayside to see if they could

send the denial letter to them.

         So I don't know if Blue Cross called the office

and requested denied letter.  I really don't know.  But

I sent this to Blue Cross and to all the other credit --

Better Business Bureau.

    Q    When did you have this conversation with

Shannon that you were discussing?

    A    Let me see if I wrote the date here.

         August 22nd -- in August -- on the same date

that I think I wrote this letter, August 22nd, 2003.  I

think I was talking with her and decided to write the

letter, with Shannon, on August 22nd, I think.  After I

speak with Shannon from Bayside Group on August 22nd of

2003.  The same day that I wrote this letter was the

date that I spoke with her.

    Q    And it says, We discovered the bill was being

sent to the wrong address.

The line timestamps in the left margin, top to bottom, are:

10:44:10 1
10:44:15 2
10:44:20 3
10:44:26 4
10:44:28 5
10:44:37 6
10:44:40 7
10:44:46 8
10:44:50 9
10:44:52 10
10:44:54 11
10:44:58 12
10:45:03 13
10:45:05 14
10:45:06 15
10:45:08 16
10:45:21 17
10:45:24 18
10:45:29 19
10:45:33 20
10:45:39 21
10:45:41 22
10:45:44 23
10:45:45 24
10:45:47 25

64

NOEMIA CARVALHO

| | |
|---|---|
| 10:45:49 1 | What do you recall about that? |
| 10:45:56 2 | A    She -- we discovered that the bill was sent to |
| 10:46:00 3 | Blue Shield instead.  So I said that I was not insured |
| 10:46:04 4 | by Blue Shield, so you sent a bill to the wrong |
| 10:46:06 5 | location. |
| 10:46:07 6 | And then she said to me over the phone that |
| 10:46:09 7 | Blue Cross denied my claim also.  So I said, but I'm |
| 10:46:13 8 | insured by Blue Cross.  How Blue Cross can deny me? |
| 10:46:17 9 | Q    So when it has this reference to the wrong |
| 10:46:20 10 | address, it was actually sent to the wrong insurer? |
| 10:46:25 11 | A    Right. |
| 10:46:25 12 | Q    So it was not that it was sent to Blue Cross at |
| 10:46:28 13 | an incorrect address; it was sent to Blue Shield? |
| 10:46:32 14 | A    Blue Shield, yes. |
| 10:46:36 15 | Q    Did Shannon tell you specifically about the |
| 10:46:40 16 | denial of claim letter that Bayside Medical had received |
| 10:46:43 17 | from Blue Cross? |
| 10:46:44 18 | A    No.  She just said, oh, I received a denied |
| 10:46:48 19 | letter from Blue Cross also. |
| 10:46:50 20 | And then I said to her, Can you fax the letter |
| 10:46:52 21 | that you received to me?  And she said, I cannot send |
| 10:46:55 22 | any paper from Blue Cross to you.  I said -- I think I |
| 10:46:58 23 | remember that.  I said, Can you read the letter to me? |
| 10:47:00 24 | And she said, I cannot read the letter also.  I said, |
| 10:47:03 25 | How do I know that Blue Cross sent a denial letter to |

65

**NOEMIA CARVALHO**

02/06/08

| | |
|---|---|
| 11:31:53 | 1 |
| 11:31:56 | 2 |
| 11:32:04 | 3 |
| 11:32:08 | 4 |
| 11:32:11 | 5 |
| 11:32:13 | 6 |
| 11:32:15 | 7 |
| 11:32:16 | 8 |
| 11:32:17 | 9 |
| 11:32:20 | 10 |
| 11:32:25 | 11 |
| 11:32:30 | 12 |
| 11:32:34 | 13 |
| 09:13:08 | 14 |
| 09:13:08 | 15 |
| 11:34:09 | 16 |
| 11:34:10 | 17 |
| 11:34:12 | 18 |
| 11:34:12 | 19 |
| 11:34:14 | 20 |
| 11:34:17 | 21 |
| 11:34:19 | 22 |
| 11:34:21 | 23 |
| 11:34:25 | 24 |
| 11:34:26 | 25 |

there was contact between you and Blue Cross between the

date of August 22, 2003 and September 5th, 2003.  If you

can't remember that two-week period, then you have to

say you don't remember.

     THE WITNESS:  I really don't remember, but I

know that I spoke with this person.

BY MS. JOHNSTON:

    Q  On the phone at some point?

    A  Yes.

    Q  And I believe you testified that in response to

receiving Exhibit 14, you sent a copy of the card with

your birthdate and full name; correct?

    A  Yes.

     (Defendant's Exhibit 15 was marked for

     identification by the Court Reporter.)

BY MS. JOHNSTON:

    Q  Do you recognize this document, Ms. Carvalho?

    A  Yes.

    Q  Can you tell me what it is?

    A  It was a final remind for me to pay this bill

from CCS.

    Q  And at the top on the upper left-hand corner,

it's dated September 15, 2003.

    A  Yes.

    Q  Do you recall receiving a copy of this letter

92

**NOEMIA CARVALHO**                                    02/06/08

| | |
|---|---|
| 11:34:29 | 1 |
| 11:34:30 | 2 |
| 11:34:33 | 3 |
| 11:34:37 | 4 |
| 11:34:40 | 5 |
| 11:34:42 | 6 |
| 11:34:42 | 7 |
| 11:34:45 | 8 |
| 11:34:48 | 9 |
| 11:34:51 | 10 |
| 11:34:56 | 11 |
| 11:35:02 | 12 |
| 11:35:05 | 13 |
| 11:35:08 | 14 |
| 11:35:15 | 15 |
| 11:35:18 | 16 |
| 11:35:21 | 17 |
| 11:35:23 | 18 |
| 11:35:26 | 19 |
| 11:35:27 | 20 |
| 11:35:31 | 21 |
| 11:35:31 | 22 |
| 11:35:34 | 23 |
| 11:35:39 | 24 |
| 11:35:45 | 25 |

on or about that time?

   A   Yes.

   Q   And going down towards the -- further down on
left-hand side, it refers to the creditor as Bayside
Medical Group.

       Do you see that?

   A   Yes.

   Q   And going down to about the middle of the page,
it says, Protect your credit.  This is just a reminder
if payment in full reaches this office by 10, something,
2003, then this collection account will not be reported
on your Experian, Equifax and TransUnion credit records.
Protect your payment -- excuse me -- protect your
credit.  Send payment in full.

       Did you pay the Bayside Medical bill after
receiving this letter on or around September 15th, 2003?

       MR. BOCHNER:  The question has been asked and
answered several times already.  She said she has not
paid this bill.

       THE WITNESS:  I did not pay.
BY MS. JOHNSTON:

   Q   And you did not pay knowing that your -- that
CCS would report the fact your failure to pay to
Experian, Equifax and TransUnion credit records?

       MR. BOCHNER:  Misstates the document.

93

NOEMIA CARVALHO                                    02/06/08

| | | |
|---|---|---|
| 11:39:52 | 1 | later. |
| 11:39:54 | 2 | MR. BOCHNER:  Okay.  Are we passing on 16 as |
| 11:39:54 | 3 | well? |
| 11:40:25 | 4 | MS. JOHNSTON:  Yes. |
| 11:40:24 | 5 | This is going to 18. |
| 09:13:08 | 6 | (Defendant's Exhibit 18 was marked for |
| 09:13:08 | 7 | identification by the Court Reporter.) |
| 11:41:12 | 8 | BY MS. JOHNSTON: |
| 11:41:13 | 9 | Q    Do you recognize this document, Ms. Carvalho? |
| 11:41:15 | 10 | A    Yes. |
| 11:41:16 | 11 | Q    Can you tell me what it is? |
| 11:41:17 | 12 | A    This is from the CCS, a letter letting me know |
| 11:41:24 | 13 | that -- it's a warning letter. |
| 11:41:28 | 14 | Q    And at the top, the upper left-hand corner, it |
| 11:41:32 | 15 | has a date of October 31, 2003. |
| 11:41:35 | 16 | Do you recall receiving this document on or |
| 11:41:36 | 17 | around that time? |
| 11:41:38 | 18 | A    That's correct. |
| 11:41:39 | 19 | Q    And it has a heading, Warning:  You have failed |
| 11:41:43 | 20 | to send us your payment.  You have ignored our previous |
| 11:41:46 | 21 | demands.  Unless you respond to this notice immediately, |
| 11:41:49 | 22 | expect the results of your own neglect. |
| 11:41:51 | 23 | Do you see that? |
| 11:41:52 | 24 | A    Yes. |
| 11:41:56 | 25 | Q    At this time, as of October 31, 2003, you had |

96

NOEMIA CARVALHO                                              02/06/08

| | |
|---|---|
| 01:26:35 1 | BY MS. JOHNSTON: |
| 01:26:36 2 | Q   Ms. Carvalho, going back to Exhibit 19 in this |
| 01:26:39 3 | reference to the collection account, it does accurately |
| 01:26:43 4 | reflect the amount of $118 that was due to Bayside |
| 01:26:47 5 | Medical; correct? |
| 01:26:48 6 | A   Yes, correct. |
| 01:26:49 7 | Q   Can you point to anything in that particular |
| 01:26:51 8 | entry that you believe is not correct or is inaccurate? |
| 01:26:57 9 | A   All the data that shows in my credit report is |
| 01:26:59 10 | correct, but it's not right.  It's correct but not right |
| 01:27:06 11 | to showing on my credit. |
| 01:27:08 12 | Q   And that's because you believe that the bill |
| 01:27:10 13 | should have been paid by Blue Cross; correct? |
| 01:27:12 14 | A   That's correct. |
| 01:27:13 15 | (Defendant's Exhibit 23 was marked for |
| 01:27:13 16 | identification by the Court Reporter.) |
| 01:28:24 17 | MR. BOCHNER:  Did you want her to review this |
| 01:28:26 18 | document she placed in front of her? |
| 01:28:28 19 | MS. JOHNSTON:  I'm going to ask her questions |
| 01:28:31 20 | about it.  If she would like to review it beforehand, |
| 01:28:34 21 | that's her right. |
| 01:28:36 22 | MR. BOCHNER:  Object.  I don't think she can |
| 01:28:36 23 | read the entire -- I'll object that it's -- |
| 01:28:37 24 | THE WITNESS:  I received. |
| 01:28:38 25 | BY MS. JOHNSTON: |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

01:28:38  1          Q    Ms. Carvalho, do you recognize this document?

01:28:40  2          A    Yes.

01:28:40  3          Q    And can you tell me what it is, please?

01:28:44  4          A    It's a copy of my credit report from Experian.

01:28:48  5          Q    And did you receive it on or around October 13,

01:28:52  6    2004?

01:28:53  7          A    That's correct.

01:28:54  8          Q    Did you review it when you received it?

01:28:59  9          A    I went through, but not in deep detail.  But I

01:29:05  10   checked everything that was showing, and I saw that $118

01:29:13  11   is still showing on my credit.

01:29:17  12         Q    If I could ask you to take a look at page 4 of

01:29:19  13   the report, and it has the Credit Consulting Services

01:29:25  14   entry.

01:29:28  15              Is there anything that you believe in this

01:29:30  16   entry which is inaccurate or not correct?

01:29:36  17              MR. BOCHNER:  Vague and ambiguous as to

01:29:36  18   "accurate" or "incorrect."

01:29:41  19              THE WITNESS:  This is what's showing on all

01:29:44  20   credit reports.  No matter how many times I'm going to

01:29:46  21   download from the Internet or asking for me to send,

01:29:49  22   this is the information that I get.

01:29:52  23   BY MS. JOHNSTON:

01:29:52  24         Q    I appreciate that.

01:29:53  25         A    It's correct.  This is what I see.

NOEMIA CARVALHO                                    02/06/08

| | |
|---|---|
| 01:58:24 | 1 |
| 01:58:25 | 2 |
| 01:58:27 | 3 |
| 01:58:30 | 4 |
| 01:58:33 | 5 |
| 01:58:38 | 6 |
| 01:58:41 | 7 |
| 01:58:44 | 8 |
| 01:58:46 | 9 |
| 01:58:51 | 10 |
| 01:58:53 | 11 |
| 01:58:56 | 12 |
| 01:58:58 | 13 |
| 01:58:58 | 14 |
| 01:59:00 | 15 |
| 01:59:04 | 16 |
| 01:59:08 | 17 |
| 01:59:08 | 18 |
| 01:59:25 | 19 |
| 01:59:27 | 20 |
| 01:59:30 | 21 |
| 01:59:32 | 22 |
| 01:59:32 | 23 |
| 01:59:33 | 24 |
| 01:59:37 | 25 |

your behalf?

A    I authorized my attorney to do whatever he thinks that was necessary to be done for this case. This I did.  I authorized him to do whatever he was thinking that was fair and honest to do for this case. I signed -- I let him do all the paperwork and whatever he was thinking that was good for this case to be resolved.

Q    And I'm just trying to confirm that what was asked was done by my client.

MR. BOCHNER:  I'm objecting that the documents speak for themselves.

BY MS. JOHNSTON:

Q    In connection with the entry for Credit Consulting Services that appears on page 4, is there anything that appears to be inaccurate about that entry?

MR. BOCHNER:  Vague and ambiguous as to "inaccurate."

THE WITNESS:  Do you ask me if the credit report that Experian sent to me shows anything that is wrong or right?

BY MS. JOHNSTON:

Q    I'm just referring to the entry for Credit Consulting Services on page 4.  I just want to know whether you believe that there's anything in that entry

148

| | |
|---|---|
| 01:59:39 | 1 |
| 01:59:42 | 2 |
| 01:59:43 | 3 |
| 01:59:55 | 4 |
| 01:59:57 | 5 |
| 01:59:59 | 6 |
| 02:00:04 | 7 |
| 02:00:09 | 8 |
| 02:00:15 | 9 |
| 02:00:15 | 10 |
| 02:00:15 | 11 |
| 02:00:16 | 12 |
| 02:00:18 | 13 |
| 02:00:19 | 14 |
| 02:00:19 | 15 |
| 02:00:21 | 16 |
| 02:00:25 | 17 |
| 02:00:26 | 18 |
| 02:00:26 | 19 |
| 02:00:29 | 20 |
| 02:00:39 | 21 |
| 02:00:43 | 22 |
| 02:00:46 | 23 |
| 02:00:48 | 24 |
| 02:00:57 | 25 |

that is not accurate.

MR. BOCHNER:  I'll object again.  Vague and ambiguous as to "accurate."

THE WITNESS:  I really don't know why you're asking this question to me.  I don't know.  Because, for me, this is clear that this is the credit report that I have.  I don't have nothing else that I can modify that. So you are asking me is something wrong in this credit report?

BY MS. JOHNSTON:

Q    Yes.

MR. BOCHNER:  In the whole credit report or just this entry?

BY MS. JOHNSTON:

Q    In this particular entry.

A    I don't think there's anything wrong in this entry.

Q    Thank you.

A    I don't think there's nothing wrong.  Not for me.  What am I going to do?  For me, it's the way it is. They already damaged my name for seven years.  I don't have nothing to lose anymore.

Q    Ms. Carvalho, if I could have you turn to page 15 of Exhibit Number 27, and it's in the section entitled, Request For Your Credit History and Requests

02:10:37  1    be produced.

02:10:38  2            THE WITNESS:  Yes, I will check if I transfer

02:10:42  3    to my e-mail.

02:10:43  4    BY MS. JOHNSTON:

02:10:49  5        Q    Thank you.  When you were collecting documents

02:10:53  6    to provide to your attorney, did you go through any

02:10:56  7    electronic files, e-mails or other documents that you

02:11:03  8    might have on your computer, whether they were at work

02:11:03  9    or at home?

02:11:05  10       A    No.

02:11:22  11       Q    I know you were talking about the fact that you

02:11:24  12   asked Ying to write a letter.

02:11:28  13           My original question was a little bit

02:11:30  14   different, and that is:  Did you ever ask her at any

02:11:33  15   time to provide you with copies of her files, so, for

02:11:37  16   instance, any of the mortgage applications that were

02:11:40  17   submitted on your behalf or any other documents that she

02:11:43  18   might have that relate to you?

02:11:44  19       A    No, I never asked her any information.  I was

02:11:50  20   just trusting what she was saying to me.

02:11:53  21       Q    If I could have you take a look at Exhibit

02:11:55  22   Number 28, I would like to ask you a few questions about

02:11:57  23   that.

02:12:24  24       A    Okay.

02:12:25  25       Q    Ms. Carvalho, before today, have you seen this

156

02:12:27  1    letter?

02:12:28  2        A    No.

02:12:28  3        Q    Down at the bottom there is a signature.    Is

02:12:30  4    that your signature?

02:12:31  5        A    No.    I authorized my lawyer to do that.

02:12:34  6        Q    If I could direct your attention to the first

02:12:36  7    paragraph -- actually, let me start even above that.

02:12:41  8             It's a letter that appears to have been sent on

02:12:43  9    or about June 3rd, 2005 to Equifax, Experian and

02:12:48  10   TransUnion, and it refers to accounts disputed, Credit

02:12:52  11   Consulting Services account number 1384329.

02:12:57  12             Is that the Bayside Medical Group bill?

02:13:03  13       A    No.    This is the CCS account.

02:13:06  14       Q    And the CCS account refers to the unpaid

02:13:08  15   Bayside Medical Group bill; correct?

02:13:11  16       A    Yes.

02:13:12  17       Q    In the first paragraph it says, I have learned

02:13:14  18   that the above-referenced bill may have been paid if

02:13:18  19   Credit Consulting Services' assigner, Bayside Medical

02:13:21  20   Group, had timely and properly submitted my bill to Blue

02:13:26  21   Shield.

02:13:28  22             Do you have any knowledge one way or another

02:13:32  23   about what is meant by that sentence?

02:13:46  24       A    I mean, what is written here?

02:13:48  25       Q    Yes.

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4     before me at the time and place herein set forth; that

5     any witnesses in the foregoing proceedings, prior to

6     testifying, were duly sworn; that a record of the

7     proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction;

9     that the foregoing transcript is a true record of the

10    testimony given.

11         Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:  ___FEB 1 3 2008_____

22

23              _____

                LYNNE MARIE LEDANOIS
24              CSR No. 6811

25

EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY

NOEMIA CARVALHO, on behalf of
herself and other similar
people,

                 Plaintiff,

vs.                    No. M90093

CREDIT CONSULTING SERVICES, INC.,
dba CCS, et al.,

                 Defendants.

**CERTIFIED COPY**

---

DEPOSITION OF NOEMIA CARVALHO

San Francisco, California

Tuesday, March 4, 2008

Volume 2

REPORTED BY:
LYNNE LEDANOIS
CSR No. 6811

Job No. 83261

1              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                          COUNTY OF MONTEREY

3

4    NOEMIA CARVALHO, on behalf of
     herself and other similar
5    people,

6                          Plaintiff,

7    vs.                                    No. M90093

8    CREDIT CONSULTING SERVICES, INC.,
     dba CCS, et al.,
9
                           Defendants.
10

11

12   _____

13

14         Deposition of NOEMIA CARVALHO, taken on behalf of

15   Defendant, at 555 California Street, 25th Floor, San

16   Francisco, California, beginning at 10:01 a.m. and

17   ending at 4:20 p.m. on Tuesday, March 4, 2008, before

18   LYNNE LEDANOIS, CSR 6811.

19

20

21

22

23

24

25

                                                              218

1    mortgage, and I said, yes, you can give copies to them.

2    It's not a problem.

3        Q    What is your understanding of the role of a

4    credit reporting agency like my client, TransUnion?  Do

5    you understand what their role is in society?

6        A    No.

7            MR. BOCHNER:  Object, asks for a legal

8    conclusion, calls for speculation.

9            THE WITNESS:  No, I don't have no

10   understanding.

11   BY MR. FRONTINO:

12       Q    You don't know what they do?

13       A    I know what they do, but I don't know how they

14   work.  I don't know the procedures that they follow.

15       Q    I understand that.  But do you know what their

16   role is in society at large, just what do they do?

17           MR. BOCHNER:  Calls for speculation.

18           THE WITNESS:  Well, they have records of

19   everyone that shows if they are paying or not paying and

20   giving records of people if they are requested for to

21   review financial situations of individuals, I think.

22   BY MR. FRONTINO:

23       Q    Okay.  And so your credit report with

24   TransUnion indicated that you had a collection account;

25   isn't that right?

NOEMIA CARVALHO
VOLUME 2

03/04/08

1    Q    You didn't like the doctor?

2    A    At all.  He saw me for five minutes.

3    Q    What were you seeing him for?

4         MR. BOCHNER:  I think that's invasive of her

5    privacy, but I'll let you go ahead and do it.  I just

6    don't want to get too far in depth on this because I

7    don't think it's relevant.

8         But go ahead.

9         THE WITNESS:  I went there because I was having

10   problems in my knee and I was having lot of pain in my

11   knee.  And he could not resolve my problem.

12   BY MR. FRONTINO:

13   Q    What did he tell you was wrong?  Nothing?

14   A    He checked and he gave me painkiller.

15   Q    He gave you a painkiller?

16   A    Yes, and sent me home.

17   Q    Did he give you a prescription?

18   A    It was a -- the painkiller that everybody

19   takes.  I forget the name.

20   Q    My question was, did he write out a

21   prescription and say, here, go fill this?

22   A    Yes.  M-hm.

23   Q    And this was Dr. Hart; is that right?

24   A    I think so.

25   Q    Did you get the prescription filled?

NOEMIA CARVALHO
VOLUME 2

03/04/08

1          A    Yes.

2                (Defendant's Exhibit 68 was marked for

3                identification by the Court Reporter.)

4     BY MR. FRONTINO:

5          Q    We will mark as Exhibit 68 a letter dated March

6     28th, 2006 from TransUnion to -- addressed to you.

7                Do you remember receiving this letter?

8          A    Yes.

9          Q    Did you read it when you received it?

10         A    I read.

11               (Defendant's Exhibit 69 was marked for

12               identification by the Court Reporter.)

13    BY MR. FRONTINO:

14         Q    I'm marking as Exhibit 69 another March 28,

15    2006 letter from TransUnion addressed to you.

16               Did you receive this letter from TransUnion?

17         A    Yes.

18         Q    Did you read it when you received it?

19         A    Yes.

20         Q    Did you use the information contained in this

21    letter to contact any of these creditors?

22         A    No.

23         Q    As to all of these interactions that you or

24    your attorney had with TransUnion -- this is a question

25    that the other two attorneys have asked you, but I need

419

**NOEMIA CARVALHO**
**VOLUME 2**

03/04/08

```
 1   to ask you for TransUnion -- do you believe that
 2   TransUnion was purposefully trying to hurt you?
 3        A    No.
 4             MR. BOCHNER:  Asks for a legal conclusion, and
 5   I will incorporate the objections I made earlier to the
 6   same series of questions.
 7   BY MR. FRONTINO:
 8        Q    Go ahead.
 9        A    No.
10        Q    Other than the issues we have discussed with
11   Wise Investments and the trouble you thought you were
12   having getting a good interest rate on your mortgage,
13   did you receive any other denials of credit after the
14   CCS entry appeared on your TransUnion credit report?
15        A    No.
16        Q    Do you believe you obtained credit at a higher
17   interest rate on anything else because of the CCS
18   collection account?
19             MR. BOCHNER:  Calls for speculation.
20             THE WITNESS:  If I have to buy something like a
21   car or something, I believe that the interest rates are
22   going to be higher.
23   BY MR. FRONTINO:
24        Q    Has that happened?
25        A    No, because I was not looking to buy a car.
```

420

1           I, the undersigned, a Certified Shorthand

2 Reporter of the State of California, do hereby certify:

3           That the foregoing proceedings were taken

4 before me at the time and place herein set forth; that

5 any witnesses in the foregoing proceedings, prior to

6 testifying, were duly sworn; that a record of the

7 proceedings was made by me using machine shorthand

8 which was thereafter transcribed under my direction;

9 that the foregoing transcript is a true record of the

10 testimony given.

11           Further, that if the foregoing pertains to

12 the original transcript of a deposition in a Federal

13 Case, before completion of the proceedings, review of

14 the transcript [  ] was [  ] was not requested.

15           I further certify I am neither financially

16 interested in the action nor a relative or employee

17 of any attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19 subscribed my name.

20

21 Dated: _____MAR 2 1 2008_____

22

23                                                                 
LYNNE MARIE LEDANOIS

24                         CSR No. 6811

25

EXHIBIT C

Sep-24-04 01:08P Bayside Medical Group          9255872509              P.02

# Bayside Medical Group, Inc.

Teen and Family Practice Registration

## Patient information

Referred by: X Dr. _____
☐ Insurance Directory  ☐ Yellow Pages  ☐ Location/Signs  ☐ Other  ☐ Friend/Family

First Name **NOEMIA**      Last Name **CARVALHO**

Cellular Phone ( )

Emergency Contact **JUANIA AMBROZ NO**
Emergency Phone

Pager ( )

DOB **59**      SS# **1135**

Sex (F) M

Employer **WASTE MGTm**      Address

E-mail address

Work Phone      City (

Occupation **Cust. serv. Rep.**

## Guarantor information (if different than patient)

| Guarantor's Name | Address | | City | State | Zip |
|---|---|---|---|---|---|
| Guarantor's Phone ( ) | Guarantor's DOB | | Guarantor SS# | | |
| Guarantor's employer | Address | | | | |
| Work Phone ( ) | Guarantor's occupation | | City | State | Zip |
| | | | Relationship to patient | | |

## Insurance information

| Effective date of coverage | | | | | |
|---|---|---|---|---|---|
| Insurance company | Address | Expiration date | | | |
| | | City | State | Zip | |
| Phone ( ) | Group number | Policy/ID number | | | |
| Office visit copay | Deductible | PCP | IPA (Medical Group) | | |
| Insured's relationship to patient | | | | | |
| Insured's name | Address | | City | State | Zip |

(Please ask for an Additional Insurance Information Form if you have more than one active insurance plan.)

Bayside Medical Group, Inc., will bill your insurance as a courtesy to you. If your insurance does not pay the claim within 90 days of the date of service, the balance of your account will be your responsibility. We will bill secondary insurances for co-insurance balances once. If a secondary insurance does not pay the claim within 30 days, the balance of your account will be your responsibility. All copayments, deductibles, and share of costs are due in full at the time of service. A billing fee will be assessed if copayments, deductibles and share of costs are not paid at time of service. A fee of $20 will be made to your account for all checks returned from the bank.

Assignment and Release: I hereby authorize my insurance company to pay benefits directly to Bayside Medical Group, Inc., and I am financially responsible for non-covered services. I authorize Bayside Medical Group, Inc., to release any information to my insurance company required to process this claim.

Signature of patient **Noemia Alves Carvalho**      Date **10-19-01**



EXHIBIT
2/6/08
3
Carvalho

2

REDACTED

EXHIBIT D

2065    115

# BAYSIDE MEDICAL GROUP, INC.

Bayside Pediatrics, A Medical Corporation
Bayside Family Practice Medical Associates, Inc.
Bayside Travel Medical Group, Inc.

| PATIENT NAME | BALANCE DUE |
|---|---|
| NOEMIA CARVALHO | |

| BILL DATE | ACCOUNT NO. | AMOUNT PAID |
|---|---|---|
| 01/15/02 | 0076 | |

**RESPONSIBLE PARTY NAME / ADDRESS**

—— NOEMIA CARVALHO
——

I||liil₁ll₁₁ll₁₁ll₁₁l₁₁l₁₁l₁₁₁ll₁₁l₁₁l₁ll₁₁l

THIS IS A STATEMENT OF SERVICES RENDERED BY
CLINICIANS WHO ARE MEMBERS OF:

BAYSIDE MEDICAL GROUP INC
942854917bmgi
5720 STONERIDGE MALL #240
PLEASANTON CA 94588

DETACH TOP PORTION AND RETURN WITH YOUR PAYMENT IN THE ENVELOPE PROVIDED. RETAIN BOTTOM PORTION FOR YOUR RECORDS.

FOR CREDIT CARD PAYMENTS, PLEASE SEE REVERSE SIDE. PLEASE WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.



| DATE OF SERVICE | CLINICIAN NAME / DESCRIPTION OF SERVICE | INSURANCE ACTION | PATIENT RESPONSIBILITY |
|---|---|---|---|
| 10/19/01 12/26/01 | S HART     OFFICE VISIT, NEW PT | 118.00 | |
| | INSURANCE PAYMENT | .00 | |
| | NOT ELIGIBLE AT TIME OF SRVC | | |
| | PLEASE CALL YOUR INSURANCE | | |
| | < AMOUNT DUE > | | 118.00 |

*Sent back on 2-13-02*

| DATE | PATIENT NAME | ACCOUNT NO. | PAY THIS AMOUNT |
|---|---|---|---|
| 01/15/02 | NOEMIA CARVALHO | 0076 | → 118.00 |

↑ PAYMENTS RECEIVED ON OR AFTER THIS DATE WILL APPEAR ON YOUR NEXT STATEMENT

FOR BILLING INQUIRIES PLEASE CALL: (925) 587-2500

MAKE CHECKS PAYABLE TO:
BAYSIDE MEDICAL GROUP, INC.

**IMPORTANT MESSAGE REGARDING YOUR ACCOUNT**

PAYMENT IS DUE 14 DAYS FROM THE STATEMENT DATE.

OUR BUSINESS OFFICE HAS A NEW PHONE # (925)587-2500!!!



EXHIBIT
2/6/08
8
Carvalho

Exp/Car 00008

REDACTED

EXHIBIT E

SEP-09-2004 16:04 FROM:WASTE MANAGEMENT    5106138756    TO:97403699    P.19/21
03237437203

BAYSIDE MEDICAL GROUP, INC.
5720 Stoneridge Mall Road, Suite 240
Pleasanton, CA 94588
Telephone (925)587-2500. Facsimile (925)587-2509.


03/06/03


NOEMIA CARVALHO



RE: NOEMIA CARVALHO (90076)
Balance: $118.00

Since we have not received payment in full for your account,
this is our FINAL notice regarding your past due balance.
We have extended your medical credit beyond our grace
period.

If payment in full is not received in our office within the
next seven (7) days, we have no choice but to turn your
account over to a collection agency. If this action is
taken, medical services may not be available through our
offices. Such action may also effect your credit rating.

A return envelope is enclosed for your payment. Payment in
full received within seven days will prevent your account
from being forwarded to collections and will prevent your
dismissal from the practice.

CAROLINE, EXT. 22


-------------------------------------------------
CREDIT CARD PAYMENT:
  [ ]Visa   [ ]MasterCard    Amount paid $_____

Account number _____ Exp Date_____

Name on card (please print) _____

Authorized signature____ _____ Date_____



EXHIBIT F

SEP-09-2004 16:03 FROM:WASTE MANAGEMENT    5106138756    TO:97403699    P.14/21



03237437203

# CREDIT CONSULTING SERVICES, INC.

P.O. Box 5879 • 201 John Street, Suite E • Salinas, CA 93915
831-424-0606 • 831-375-9836 • Outside 831: 1-800-679-6888

fax-831-753-26 42. Claudia.

August 8, 2002

Noemia Carvalho

RE: BAYSIDE MEDICAL GROUP, INC.

ACCOUNT NO    : ▦4329
AMOUNT        : $118.00
INTEREST      : $21.27
BALANCE DUE   : $139.27

## COLLECTION NOTICE – IMPORTANT

The above past due account has been placed with us for collection. Your payment, or any questions you may have, should be directed to this office to ensure proper credit to your account.

If paid in full to this office, all collection activity will be stopped.

It is the policy of this agency to report all eligible accounts to Experian, Equifax, and Trans Union Credit Reporting Services.

Very Truly Yours,

Rochell Michaels

CREDIT CONSULTING SERVICES, INC.

** SEE REVERSE SIDE FOR IMPORTANT INFORMATION **

*This is an attempt to collect a debt. Any information obtained will be used for that purpose.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In order to credit your account properly,
you must return this bottom portion with your payment

P.O. BOX 5879
SALINAS, CA 93915-5879

Address Service Requested

1 NTC

Please charge to the following credit card

☐ Visa    ☐ MasterCard

Card #: _____

Cardholder Name: _____

Exp Date: ___/___/___    Pmt Amt $_____

Signature: _____

Noemia Carvalho    ▦4329

CCS, Inc.
P.O. Box 5879
Salinas, CA 93915-5879

1NTC 000059 1 22HP 040000 2-GRE

EXHIBIT
2/1/08
11
Carvalho

14

REDACTED

EXHIBIT G

58



# CREDIT CONSULTING SERVICES, INC.

P.O. Box 5879 • 201 John Street, Suite E • Salinas, CA 93915

831-424-0606 • 831-375-9836 • Outside 831: 1-800-679-6888

SEPTEMBER 15, 2003

NOEMIA CARVALHO                    4329

CREDITOR: BAYSIDE MEDICAL GROUP, INC.

AMOUNT   : $  118.00
INTEREST : $   22.50
TOTAL    : $  140.50

TO USE VISA/MASTERCARD, PLEASE SEE REVERSE SIDE.

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR REMITTANCE.

PROTECT YOUR CREDIT

THIS IS JUST A REMINDER. IF PAYMENT IN FULL REACHES THIS OFFICE

BY 10-8-03, THEN THIS COLLECTION ACCOUNT WILL NOT BE REPORTED ON

YOUR EXPERIAN, EQUIFAX, AND TRANSUNION CREDIT RECORDS. PROTECT

YOUR CREDIT, SEND PAYMENT IN FULL.

VERY TRULY YOURS,

ROCHELL MICHAELS

CREDIT CONSULTING SERVICES, INC.
A PROFESSIONAL COLLECTION AGENCY

EXHIBIT ___
2/6/08
15.
Carvalho

REDACTED

Exp/Car 00011

This is an attempt to collect a debt. Any information obtained will be used for that purpose.
Esta notificación es con la intención de cobrar una dueda. Cualquier información que obtengamos será usada con ese propósito.

EXHIBIT H

SEP-09-2004 16:01 FROM:WASTE MANAGEMENT    5106138756    TO:97403699    P.8/21



# CREDIT CONSULTING SERVICES, INC.

P.O. Box 5879 • 201 John Street, Suite E • Salinas, CA 93915
831-424-0606 • 831-375-9836 • Outside 831: 1-800-679-6885

October 31, 2003

Noemia Carvalho

RE: BAYSIDE MEDICAL GROUP, INC.

ACCOUNT NO    ___4329
AMOUNT       . $118.00
INTEREST     : $23.99
BALANCE DUE  : $141.99

### WARNING

YOU HAVE FAILED TO SEND US YOUR PAYMENT

YOU HAVE IGNORED OUR PREVIOUS DEMANDS.

UNLESS YOU RESPOND TO THIS NOTICE IMMEDIATELY, EXPECT THE RESULTS OF YOUR OWN NEGLECT.

*To: Rochell or claudia.*
*Blue Cross of California*
*is responsible to pay this*
*bill.*

PAYMENT MUST BE MADE TO THIS OFFICE WITHOUT FURTHER NOTICE.

*Noemia Carvalho*

VERY TRULY YOURS,

Rochell Michaels

CREDIT CONSULTING SERVICES, INC.

*THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

This communication is from a collection agency.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - In order to credit your account properly, - - - - - - - - - - - - - -
you must return this bottom portion with your payment - - - - -

P.O. BOX 5879
SALINAS, CA 93915-5879

Address Service Requested

04ZF

Please charge to the following credit card

☐ Visa   ☐ MasterCard

Card #: _ _ _ _ _ _ _ _ _ _ _ _
Cardholder Name: _____
Exp Date: ___ / ___ / ___   Pmt Amt $ _____
Signature: _____

Noemia Carvalho

___4329

CCS, Inc.
P.O. Box 5879
Salinas, CA 93915-5879

EXHIBIT inc
2/6/08
18
Carvalho

16

04ZF 000051P 1 0.5 000047 305 049009 Z-NOCRE

REDACTED

EXHIBIT I

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Darius K.C. Zolnor, Esq.            248686
Stroock & Stroock & Lavan LLP
2029 Century Park East, Suite 1600
Los Angeles, California 90067
TELEPHONE NO.: 310-556-5800    FAX NO. (Optional): 310-556-5959
E-MAIL ADDRESS (Optional):    dzolnor@stroock.com
ATTORNEY FOR (Name): Defendant TransUnion LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS:
CITY AND ZIP CODE: Monterey, California 93940
BRANCH NAME: Monterey Devision

PLAINTIFF/PETITIONER: Noemia Carvalho

DEFENDANT/RESPONDENT: Credit Consulting Services, Inc., et al.

| **DEPOSITION SUBPOENA**<br>**FOR PRODUCTION OF BUSINESS RECORDS** | CASE NUMBER:<br>M80093 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*
Custodian of Records, Bayside Medical Group, 5720 Stoneridge Mall Road, Suite 240, Pleasanton, California 94588; (925)463-1234

1.    **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

To *(name of deposition officer):* Nationwide Legal, Inc.
On *(date):* October 26, 2007                  At *(time):* 10:00 a.m.
Location *(address):* 316 W. 2nd Street, Suite 705, Los Angeles, California 90012

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☒ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2.    *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3.    **The records to be produced are described as follows:**
All records within your possession, custody or control relating to Noemia Carvalho, born April 2, 1959.
☐ Continued on Attachment 3.

4.    **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued: October 5, 2007

Darius K.C. Zolnor, Esq.                          ▶         _____
(TYPE OR PRINT NAME)                                                    (SIGNATURE OF PERSON ISSUING SUBPOENA)

                                                                          Attorney for Defendant, TransUnion LLC
(Proof of service on reverse)                                                        (TITLE)

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. January 1, 2007]
Martin Dean's
ESSENTIAL FORMS™

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

Page 1 of 2

Code of Civil Procedure, §§ 2020.410-2020.440;
Civil Code, § 15(a)(e);
Government Code § 68097.1
www.courtinfo.ca.gov

| | SUBP-010 |
|---|---|

PLAINTIFF/PETITIONER: Noemia Carralno

DEFENDANT/RESPONDENT: Credit Consulting Services, Inc., et al.

CASE NUMBER: M80093

## PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS

1.  I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

    a.  Person served *(name)*:

    b.  Address where served:

    c.  Date of delivery:

    d.  Time of delivery:

    e.  (1) ☐ Witness fees were paid.
        Amount: ............................ $ _____
        (2) ☐ Copying fees were paid.
        Amount: ............................ $ _____

    f.  Fee for service: ...................... $ _____

2.  I received this subpoena for service on *(date)*:

3.  Person serving:
    a.  ☐ Not a registered California process server.
    b.  ☐ California sheriff or marshal.
    c.  ☐ Registered California process server.
    d.  ☐ Employee or independent contractor of a registered California process server.
    e.  ☐ Exempt from registration under Business and Professions Code section 22350(b).
    f.  ☐ Registered professional photocopier.
    g.  ☐ Exempt from registration under Business and Professions Code section 22451.
    h.  Name, address, telephone number, and, if applicable, county of registration and number:

**I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

**(For California sheriff or marshal use only)**
**I certify** that the foregoing is true and correct.

Date:

▶ _____
(SIGNATURE)

*Martin Dean's*
**ESSENTIAL FORMS™**

**PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:<br>Darius K.C. Zolnor, Esq. (SBN 248686)<br>STROOCK STROOCK  & LAVAN LLP<br>2029 Century Park East, 18th Floor<br>Los Angeles, CA 90067 | TELEPHONE NO.:<br>(310) 556-5800 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name)*:  Defendant TransUnion LLC | Ref. No. or File No.<br>22657 fv | |

| Insert name of court and name of judicial and branch court, if any:<br>Monterey County Superior Court of The State of California,<br>Monterey Division |
|---|

| SHORT TITLE OF CASE:<br>Noemia Carvalho  vs.  Credit Consulting Services, Inc., et al. |
|---|

| PROOF OF SERVICE | HEARING DATE:<br>October 26, 2207 | TIME:<br>10:00 a.m. | DEPT./DIV.: | CASE NUMBER:<br>M80093 |
|---|---|---|---|---|

At time of service I was at least 18 years old & not a party to the action

I served the following documents:  Deposition Subpoena for Production of Business Records

Name of party served: Custodian of Records, Bayside Medical Group

Person with whom left: L. Ramirez, M.D.

Title or relationship: Person in Charge

Address: 5720 Stoneridge Mall Road, Suite 240, Pleasanton, CA 94588

[ ] Residence     [X] Business     [  ] Other

Date/Time of delivery: October 5, 2007 at 1:15 p.m.

Manner of service:

[X] The Subpoena was served by delivering a true copy thereof

Witness fees and mileage fees were paid in the sum of $ 15.00

**Process Server: Sergio Ramos**
**Nationwide Legal Services, Inc.**
316 W. 2nd Street, Suite 705
Los Angeles, California 90012
(213) 625-9100

**[X] Registered California**
**Process Server**
Registration Number: 675
County: San Francisco

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: October 22, 2007          Signature: _____

Proof of Service complies with CRC 982(a)(23) as required by CCP 417.10

**PROOF OF SERVICE**

EXHIBIT J

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Brian C. Frontino, Esq.    222032<br>Strook & Strook & Lavan LLP<br>2029 Century Park East, Suite 1600<br>Los Angeles, California 90067<br>TELEPHONE NO.: 310-556-5800    FAX NO. (Optional): 310-556-5959<br>E-MAIL ADDRESS (Optional):    dzolnor@stroock.com<br>ATTORNEY FOR (Name):  Defendant TransUnion LLC | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Monterey

STREET ADDRESS: 1200 Aguajito Road

MAILING ADDRESS:

CITY AND ZIP CODE: Monterey, California 93940

BRANCH NAME: Monterey Devision

PLAINTIFF/PETITIONER:  Noemia Carvalho

DEFENDANT/RESPONDENT: Credit Consulting Services, Inc., et al.

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>M80093 |
|---|---|

**THE PEOPLE OF THE STATE OF CALIFORNIA, TO** *(name, address, and telephone number of deponent, if known):*

Custodian of Records, Blue Cross of California, Large Group, 21555 Oxnard St., Woodland Hills, California 91365

1.  **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

| To *(name of deposition officer):*  Nationwide Legal, Inc. | |
|---|---|
| On *(date):*  November 9, 2007 | At *(time):*  10:00 a.m. |
| Location *(address):*  316 W. 2nd Street, Suite 705, Los Angeles, California 90012 | |

**Do not release the requested records to the deposition officer prior to the date and time stated above.**

a. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

b. ☐ by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

c. ☒ by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2.  *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3.  **The records to be produced are described as follows:**

Please see Attachment 3.

☒ Continued on Attachment 3.

4.  IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

| **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.** |
|---|

Date issued:  October 15, 2007

Brian C. Frontino, Esq.
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Defendant, TransUnion LLC
(Proof of service on reverse)    (TITLE)

Form Adopted for Mandatory Use<br>
Judicial Council of California<br>
SUBP-010 [Rev. January 1, 2007]

**DEPOSITION SUBPOENA FOR PRODUCTION<br>OF BUSINESS RECORDS**

Page 1 of 2

Code of Civil Procedure, §§ 2020.410-2020.440;<br>
Civil Code, § 15(a)(e);<br>
Government Code § 68097.1<br>
www.courtinfo.ca.gov

Martin Dean's<br>
ESSENTIAL FORMS™

| | | |
|---|---|---|
| PLAINTIFF/PETITIONER: Noemia Cal_ ho | CAS   BER: | M80093 |
| DEFENDANT/RESPONDENT: Credit Consulting Services, Inc., et al. | | |

**SUBP-010**

### PROOF OF SERVICE OF DEPOSITION SUBPOENA FOR
### PRODUCTION OF BUSINESS RECORDS

1. I served this *Deposition Subpoena for Production of Business Records* by personally delivering a copy to the person served as follows:

   a. Person served *(name):*

   b. Address where served:

   c. Date of delivery:

   d. Time of delivery:

   e. (1) ☐ Witness fees were paid.
         Amount: ...................... $ _____
     (2) ☐ Copying fees were paid.
         Amount: ...................... $ _____

   f. Fee for service: ...................... $ _____

2. I received this subpoena for service on *(date):*

3. Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff or marshal.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.
   e. ☐ Exempt from registration under Business and Professions Code section 22350(b).
   f. ☐ Registered professional photocopier.
   g. ☐ Exempt from registration under Business and Professions Code section 22451.
   h. Name, address, telephone number, and, if applicable, county of registration and number:

**I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
       (SIGNATURE)

**(For California sheriff or marshal use only)**
**I certify** that the foregoing is true and correct.

Date:

▶ _____
       (SIGNATURE)

**PROOF OF SERVICE OF
DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

Martin Dean's
**ESSENTIAL FORMS™**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ATTACHMENT 3

# **ATTACHMENT 3**

## **DEFINITIONS**

The following definition shall apply to the list of documents or other tangible things to be produced:

1.      The terms "YOU" or "YOUR" as used herein refer to Blue Cross of California and, where appropriate, any representative, attorney, agent, or any other person or entity acting on behalf of the responding party.

2.      The term "CARVALHO" as used herein refers to plaintiff Noemia Carvalho, born April 2, 1959, and, where appropriate, any representative, attorney, agent, or any other person or entity acting on her behalf.

3.      The term "THIRD PARTY" as used herein means any natural person, partnership, association, firm, business organization, or government agency or body, as well as any divisions, subdivisions, bureaus, offices, or other units thereof.

4.      The term "COMMUNICATION" as used herein means the transmittal of information or requests for information in any form.

5.      The term "RELATING TO" as used herein means constituting, analyzing, concerning, supporting, reflecting, describing, discussing, summarizing, referring to, reporting on, commenting on, inquiring about, setting forth, explaining, considering, pertaining to, mentioning, regarding, or alluding to, in whole or in part.

6.      The term "DOCUMENT" herein shall include all forms of "writing" as defined by California Evidence Code § 250 and includes, but is not limited to, the following: COMMUNICATION, letters, memoranda, notes, reports, papers, files, books, records, contracts, agreements, telegrams, electronic mail, and other communications sent or received; printouts, diary entries and calendars; drafts, tables, compilations, tabulations, charts, graphs, recommendations, accounts, worksheets, logs, and work papers; minutes, notes, summaries, and other written records or recordings of or RELATING TO any conference, meeting, visit, interview, or telephone conversations; bills, statements, invoices, and other records of any obligation or expenditure; canceled checks, vouchers, receipts, and other records of payment; financial and statistical data,

-1-

50372079v1

1   analyses, surveys and schedules; audiotapes and videotapes and cassettes and transcripts thereof;

2   affidavits, transcripts of testimony, statements, interviews, and conversations; printed matter

3   (including published articles, speeches, newspaper clippings, press releases, and photographs);

4   microfilm and microfiche; disks, computer files, electronically stored data, film, tapes, and other

5   sources from which information can be obtained, including materials used in electronic data

6   processing.

7        7.     Terms used in the singular shall be deemed to include the plural and terms used in

8   the masculine shall be deemed to include the feminine, and vice versa.

9                     **CATEGORIES OF DOCUMENTS**

10       1.     Any and all DOCUMENTS in YOUR possession, custody or control RELATING

11   TO CARVALHO's enrollment under Blue Cross of California PPO insurance policy ID#

12   CBM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, GRP# CBM383.

13       2.     Any and all DOCUMENTS in YOUR possession, custody or control RELATING

14   TO the underwriting of Blue Cross of California PPO insurance policy ID# CBM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,

15   GRP# CBM383.

16       3.     Any and all DOCUMENTS in YOUR possession, custody or control RELATING

17   TO claims made by CARVALHO or on CARVALHO's behalf under Blue Cross of California PPO

18   insurance policy ID# CBM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, GRP# CBM383.

19       4.     Any and all documents RELATING TO any COMMUNICATIONS between YOU

20   and any THIRD PARTY RELATING TO CARVALHO's enrollment under Blue Cross of

21   California PPO insurance policy ID# CBM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, GRP# CBM383.

22       5.     Copies of any and all Blue Cross of California insurance policies under which

23   CARVALHO is or was enrolled.

24

25

26

27

28

EXHIBIT "A"

50372079v1

EXHIBIT K

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

WESTERN                   DISTRICT OF                   PENNSYLVANIA

NOEMIA CARVALHO, on behalf of herself
and other similarly situated people,
                                           **SUBPOENA IN A CIVIL CASE**
                    V.

CREDIT CONSULTING SERVICES, INC., dba
CCS, et al.
                                           Case Number:[1]  5:08-cv-01317-JF-HRL

                                                    (United States District Court
                                                     Northern District of California)

TO:  Custodian of Records, Highmark Blue Cross Blue Shield of
     Pennsylvania, 120 Fifth Avenue Place, Pittsburgh, PA
     15222; (412) 544-7000

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):
Please see Attachment "A".

| PLACE    American Expediting Company, 1501 Preble Avenue, #2, Pittsburgh, PA 15233 (412) 321-4546 | DATE AND TIME 7/10/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    Attorney for Defendant | DATE 6/25/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Brian C. Frontino, Stroock & Stroock & Lavan LLP, 2029 Century Park East, Los Angeles, CA 90067-3086
(310) 556-5800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT "A"

# **ATTACHMENT "A"**

## **DEFINITIONS**

The following definition shall apply to the list of documents or other tangible things to be produced:

1.     The terms "YOU" or "YOUR" as used herein refer to Highmark Blue Cross Blue Shield of Pennsylvania and, where appropriate, any representative, attorney, agent, or any other person or entity acting on behalf of the responding party.

2.     The term "CARVALHO" as used herein refers to plaintiff Noemia Carvalho, born April 2, 1959, and, where appropriate, any representative, attorney, agent, or any other person or entity acting on her behalf.

3.     The term "THIRD PARTY" as used herein means any natural person, partnership, association, firm, business organization, or government agency or body, as well as any divisions, subdivisions, bureaus, offices, or other units thereof.

4.     The term "COMMUNICATION" as used herein means the transmittal of information or requests for information in any form.

5.     The term "RELATING TO" as used herein means constituting, analyzing, concerning, supporting, reflecting, describing, discussing, summarizing, referring to, reporting on, commenting on, inquiring about, setting forth, explaining, considering, pertaining to, mentioning, regarding, or alluding to, in whole or in part.

6.     The term "DOCUMENT" herein shall have the broadest meaning permissible under Rule 45 of the Federal Rules of Civil Procedure, and includes, but is not limited to, the following: COMMUNICATIONS, letters, memoranda, notes, reports, papers, files, books, records, contracts, agreements, telegrams, electronic mail, and other communications sent or received; printouts, diary entries and calendars; drafts, tables, compilations, tabulations, charts, graphs, recommendations, accounts, worksheets, logs, and work papers; minutes, notes, summaries, and other written records or recordings of or RELATING TO any conference, meeting, visit, interview, or telephone conversations; bills, statements, invoices, and other records of any obligation or expenditure; canceled checks, vouchers, receipts, and other records of payment; financial and statistical data,

LA 51064841v1

1  analyses, surveys and schedules; audiotapes and videotapes and cassettes and transcripts thereof;

2  affidavits, transcripts of testimony, statements, interviews, and conversations; printed matter

3  (including published articles, speeches, newspaper clippings, press releases, and photographs);

4  microfilm and microfiche; disks, computer files, electronically stored data, film, tapes, and other

5  sources from which information can be obtained, including materials used in electronic data

6  processing.

7      7.      Terms used in the singular shall be deemed to include the plural and terms used in

8  the masculine shall be deemed to include the feminine, and vice versa.

9                    **CATEGORIES OF DOCUMENTS**

10     1.      Any and all insurance policies associated with CARVALHO that were in effect

11 during 2001 (and specifically on or about October 19, 2001) in YOUR possession, custody or

12 control.

13     2.      Any and all DOCUMENTS RELATING TO claims for coverage under any

14 insurance policy referenced in number 1, above, for services received by CARVALHO from

15 Bayside Medical Group in October 2001.

16     3.      Any and all documents RELATING TO any COMMUNICATIONS between YOU

17 and any THIRD PARTY RELATING TO CARVALHO's coverage or lack of coverage concerning

18 services received by CARVALHO from Bayside Medical Group in October 2001 under any

19 insurance policy referenced in number 1, above.

20

21

22

23

24

25

26

27

28

LA 51064841v1

EXHIBIT L

1 

**BAYSIDE MEDICAL GROUP, INC.**
11875 Dublin Blvd., Suite B125
Dublin, CA 94568

Bayside Pediatrics, A Medical Corporation    PAGE    1
Bayside Family Practice Medical Associates, Inc.
Bayside Travel Medical Group, Inc.

| PATIENT NAME | | BALANCE DUE |
|---|---|---|
| NOEMIA CARVALHO | | .00 |

| BILL DATE | ACCOUNT NO. | AMOUNT PAID |
|---|---|---|
| 11/12/07 | ⬛0076 | |

| RESPONSIBLE PARTY NAME/ADDRESS | STATEMENT OF SERVICES RENDERED BY CLINICIANS WHO ARE MEMBERS OF |
|---|---|
| NOEMIA CARVALHO | BAYSIDE MEDICAL GROUP INC<br>942854917<br>11875 DUBLIN BLVD,#B125<br>DUBLIN CA 94568 |

DETACH TOP PORTION AND RETURN WITH YOUR PAYMENT IN THE ENVELOPE PROVIDED. RETAIN BOTTOM PORTION FOR YOUR RECORDS.

FOR CREDIT CARD PAYMENTS, PLEASE SEE REVERSE SIDE. PLEASE WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK. 

| DATE OF SERVICE | CLINICIAN NAME | DESCRIPTION OF SERVICE | INSURANCE AMT | PATIENT RESPONSIBILITY |
|---|---|---|---|---|
| 10/19/01 | S HART | OFFICE VISIT, NEW PT | 118.00 | |
| 12/26/01 | | MISC PP INS PAYMENT | .00 | |
| | | NOT ELIGIBLE AT TIME OF SRVC | | |
| | | PLEASE CALL YOUR INSURANCE | | |
| 06/12/03 | | CCS COLLECTION AGENCY | 118.00- | |
| | | < AMOUNT DUE > | | .00 |
| 11/19/01 | S HART | MISSED APPOINTMENT | | 35.00 |
| 11/19/01 | | WAIVE 1ST MISSED APPT FEE | | 35.00- |
| | | CANCEL REQUIRES 24 HR NOTICE | | |
| | | < AMOUNT DUE > | | .00 |
| 10/05/07 | NURSE:PLEA | SPORTS/SCHOOL FORMS, ETC | | 15.00 |
| 10/05/07 | | PATIENT CHECK PAYMENT | | 15.00- |
| | | < AMOUNT DUE > | | .00 |

| DATE | PATIENT NAME | ACCOUNTING | PAY THIS AMOUNT ➡ | SEE ABOVE |
|---|---|---|---|---|
| 11/12/07 | NOEMIA CARVALHO | ⬛0076 | | |

BERK
A

PAYMENTS RECEIVED ON OR AFTER THIS DATE
WILL APPEAR ON YOUR NEXT STATEMENT

MAKE CHECKS PAYABLE TO:
BAYSIDE MEDICAL GROUP, INC.

FOR BILLING INQUIRIES PLEASE CALL: (925) 587-2500 BETWEEN THE HOURS OF 9:00AM - 5:00PM, MONDAY - FRIDAY

IMPORTANT MESSAGE REGARDING YOUR ACCOUNT

PAYMENT IS DUE 14 DAYS FROM THE STATEMENT DATE.

REDACTED

```
ACCOUNT#: 0076              INQUIRY              (BMG) 11/12/07
   ACCOUNT IS IN TICKLER QUEUE: DISMISS (PT DISMISSED. NO APPTS! DO NOT SEE PT)
CHARGE#: 557825    DATE: 10/19/2001 POST: 08/31/2001 CTRL GRP: 43111 REV CTR: 01
PATIENT NAME: NOEMIA CARVALHO           FORCE ALL:N  CLAIM DELAY.:
PROVIDER....: SH            STEPHEN HART, MD          ADMIT.......:
PROCEDURE/MO: 99203         OFFICE VISIT, NEW PT      DISCHARGE...:
PRI DIAG/MO.: 7295          PAIN IN LIMB              THRU........:
SEC DIAG/MO.:
PLACE OF SVC: BERK          BERKELEY                  INJURY DATE.:
UNITS.......: 1.00          BILLING AREA....:         LMP DATE....:
CHARGE AMT..: 118.00        CLAIM GROUP.....: E       FROM DATE...:
PRI INS.....: 0047/IB       COURTESY........:         TO DATE.....:
SEC INS.....:      /PS      TYPE,AC,IS,M/Y..:
TER INS.....:      /PS      INS SET #/HIST#.: 1/1
CURRENT INS.:      /PS      INS SET NAME....: PVT INS
AMOUNT DUE..: 0.00          INS SET EFF DATE: 00/00/0000
AGE BASE DT.: 06/12/2003    INS SET EXP DATE: 00/00/0000
CUR CLAIM...: 08/27/2003    REFER PHYS......:          INFO 1:
                                                      INFO 2:
STD CHARGE..: 118.00
ALLOWED AMT.: 0.00
STD:118.00      ALW:0.00        BEN:2 CS:N RVU:2.43 PRELN#:0
                                                      F9=SWITCH


PRACTICE:bmg OPERATOR:UMART 11/12/07 10:43:30
```

REDACTED

EXHIBIT M



# CORPORATE LEGAL DEPARTMENT

## FAX COVER SHEET

**NO. OF PAGES (excluding this cover):**  13

**TO:**   Janet L. Hensch

**FAX:**   (310) 556-5959

**FROM:**   BLUE CROSS OF CALIFORNIA
CORPORATE LEGAL DEPARTMENT
(818) 234-2029  phone
(818) 234-4505  fax

**DATE:**   April 28, 2008

**MESSAGE:**   Please see attached

*The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and return the original message to us by mail.  Thank you!*



BC Life & Health
Insurance Company

*Legal Department*

April 28, 2008

Via Fax (310) 556-5959

Janet Hensch
Stroock, Stroock & Lavan, LLP
2029 Century Park East, Suite 1600
Los Angeles, CA 90067

Re:    Noemia Carvalho v Credit Counseling, Case No. M80093

Dear Ms. Hensch:

We were able to locate three old purged claims for Noemia Carvalho which I am faxing to you. I was also able to retrieve documentation regarding calls made for the policy and am providing these. I checked with several other areas and this was all anyone could locate regarding this old policy. Everything else has been purged off our systems entirely. We were unable to locate any claims related to Bayside Medical in our systems though there is a reference to them in one of the telephone notations. I have also enclosed screen prints of our systems showing no current information for Carvalho is found.

At this time, this appears to be all we are able to locate for Noemia Carvalho. Thank you for your cooperation and understanding in this matter.

Sincerely,

Sharon Lanergan
Sr. Records Clerk
(818) 234-2029

# DECLARATION OF CUSTODIAN OF RECORDS

Regarding _Noemia Carvalho_

DOB (or other ID) _____    Soc. Sec. # _____

I am duly authorized as Custodian of Records (or other qualified witness) for _Anthem Bluecross_
_Wellpoint_ _____ with authority to certify the records.

## CERTIFICATION OF RECORDS COPIES *(Custodian's Initials:* _SL_ )

Including this declaration, all documents, records and other things called for in the Subpoena Duces Tecum or Authorization which are in my custody have been photocopied (on microfilm) at my office, in my presence, under my direction and control.

To the best of my knowledge all records referred to above were prepared or compiled by the personnel of the above-named business, in the ordinary course of business, at or near the time of the acts, conditions, or events recorded.

No documents, records or other things have been withheld in order to avoid their being photocopied.

Certain records were omitted because _they are old policies/claims and have been purged_
_off our systems_

## CERTIFICATION OF NO RECORDS    *(Custodian's Initials:* _____ )

A thorough search of the business revealed no records described in the attached subpoena or authorization for the following reason(s):

- ☐ Patient never treated at this facility
- ☐ records were destroyed after:  ☐ 3  ☐ 5  ☐ 7  ☐ 10 years
- ☐ records were lost / misplaced
- ☐ records destroyed due to:  ☐ theft  ☐ fire  ☐ water
- ☐ records purged / nothing found
- ☐ storage facilities were searched and no records found
- ☐ patient has his / her records
- ☐ X-Rays are:  ☐ lost  ☐ destroyed  ☐ non-existant  ☐ not at this facility
- ☐ Billing:  ☐ misplaced/lost  ☐ not kept because this is a prepaid Health Plan
- ☐ this person has never been employed at our offices
- ☐ other - comments:

This certification is limited to the information supplied to me in the attached document:  records may exist under another name, another spelling, or other identifying data.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on _April 28, 2008_ at _Woodland Hills_, California.

Print Name _Sharon Lanergan_    Signed _Sharon Lanergan_

Witnessed _____

## CERTIFICATION OF PROFESSIONAL PHOTOCOPIER

I, the undersigned, declare:
The attached copy of records was transmitted or distributed to the authorized persons or entities.
I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ at _____

PRINT NAME _____    SIGNATURE _____

 **Anthem**

# *Purged Claims Report*

Purged: 2002-12-01
Mbr Id : XXXX41135          Acct#: 958571
DCN    : 00293201849        Mbr Cd: 20              Check #: 0035928741
Provider: WESTERN PATHOLOGY MED GRO                 Mbr Name: CARVALHO, NOEMIA              Sys Ind: D
Svc Dts: 2000-09-27-2000-09-27     Clm Type: PA     Processed: 2000-10-24                  Src Cd: OC
Charges: 35.00                              TT: 08  Medicare/Tax Id: 942851095             Item Code: 80
Action: P1000F             Non-Elig: 0.00           Dx: 6233      Ded: 0.00
NPI Nbr:                   Paid To: WESTERN PATHOLOGY MED GRO     Prvdr Write Off: 27.31       Paid: 7.69    Co-Ins: 0.00
Late Days:                 MCS Ind:                 Penalty Amt:
Other Int Amt:             Src Ind:                 Interest:                               Claim Pmt:
MBU Code:                  LPP Ind:                 Group Nbr:                              LPP Date:
                           Company Code:            Adjustment Reason:                      Funding Type:

Purged: 2002-12-01
Mbr Id : XXXX41135          Acct#: 958571
DCN    : 01039202578       Mbr Cd: 20              Check #: 0037245273
Provider: WOLSZTEJN BENJAMIN                        Mbr Name: CARVALHO, NOEMIA              Sys Ind: D
Svc Dts: 2000-10-04-2000-10-04     Clm Type: PA     Processed: 2001-02-13                  Src Cd: OC
Charges: 350.00                             TT: 05  Medicare/Tax Id: 942746754             Item Code: 80
Action: P1000F             Non-Elig: 0.00           Dx: 2180      Ded: 0.00
NPI Nbr:                   Paid To: WOLSZTEJN BENJAMIN            Prvdr Write Off: 178.13      Paid: 171.87   Co-Ins: 0.00
Late Days:                 MCS Ind:                 Penalty Amt:
Other Int Amt:             Src Ind:                 Interest:                               Claim Pmt:
MBU Code:                  LPP Ind:                 Group Nbr:                              LPP Date:
                           Company Code:            Adjustment Reason:                      Funding Type:

Purged: 2002-12-01
Mbr Id : XXXX41135          Acct#: 958571
DCN    : 01039202577       Mbr Cd: 20              Check #: 0037245273
Provider: WOLSZTEJN BENJAMIN                        Mbr Name: CARVALHO, NOEMIA              Sys Ind: D
Svc Dts: 2000-10-18-2000-10-18     Clm Type: PA     Processed: 2001-02-13                  Src Cd: OC
Charges: 65.00                              TT: 06  Medicare/Tax Id: 942746754             Item Code: 80
Action: P1000F             Non-Elig: 0.00           Dx: 2181      Ded: 0.00
NPI Nbr:                   Paid To: WOLSZTEJN BENJAMIN            Prvdr Write Off: 24.63       Paid: 40.37    Co-Ins: 0.00
Late Days:                 MCS Ind:                 Penalty Amt:
Other Int Amt:             Src Ind:                 Interest:                               Claim Pmt:
MBU Code:                  LPP Ind:                 Group Nbr:                              LPP Date:
                           Company Code:            Adjustment Reason:                      Funding Type:

Page: 1 Document Name: untitled

```
GNSIINQ
   AA44828   VTC03511        WELLPOINT GROUP SYSTEM              P 04/28/08 07:15:24      1
                               INQUIRY TRACKING                                  VERSION 001
    INQ NO:
    IINQ NO:   03266670517  ___  OPER ID: 2590
    ENTRY DT:  092303            CUST ID: ████ 135     USER ID: FYI0026   LIM LIB:
      HCID:                      DEPT DT: 092303        DOMAIN: 01 MEDICAL   MSO: N
                                   GROUP:              CLOSE DT: 100403     ERISA: N
    PAT NAME: _____                       CASE:            CONT:
    CUSTOMER: _____     _____           SVC DT: 092303      PROD: ___
    INQ NAME:  NOEMIA A. CARVALHO     ___               STATE: _            PMG: ___
    EMAIL ADDRESS: _____                  PHONE: _____  EXT: ___
    SOURCE:     S SUBSCRIBER              NTWK: _____              HRC: ___
    METHOD:     S MAILBACK/SYS GEN LET   MLH: 03262433054 SEND: _  TO: _____ SYS: _
    TYPE INQ:  CS CLAIMS STATUS / QUES   CLS: IN INQUIRY
    ANALYSIS:                            LANG: _                   USE LANG: _
    RSPNS MTHD: L LETTER                 ACT: CS REQUESTED CLAIM RESU
    PEND: ___                            CB: N  DATE: _____
    RTE: ___                          ATTACH: _  REPEAT CALL: _
    TAGGED DCNS
```

INQUIRY IS PURGED/CAN NOT BE REOPENED
   PF01=HELP    PF02=CTAPAY  PF03=RETURN  PF04=CLMHST  PF05=BENF    PF06=SINQ
   PF07=MBRMNU  PF08=TEXT    PF09=MEMBER  PF10=CLOSE   PF11=HIQMENUPF12=LIMLIB

REDACTED

Date: 4/28/2008 Time: 7:15:26 AM

```
GNSTINQ
   AA44828   VTC03511      WELLPOINT GROUP SYSTEM        P 04/28/08 07:15:30     1
                          TEXT INQUIRY SCREEN                         VERSION 001
IINQ NO: 03266670517    CUST ID: ████1135    HCID:
ROUTE: __  ATTACH: _   PEND: __  UPDATE: _                GROUP:
                                              RSPNS MTHD: _   ACT: __

   09/23/2003 AT 12:39:21 CREATED
   09/23/2003 AT 12:39:21 SENT TO COCR       BY: FYI0026
   09/23/2003 AT 20:51:56 SENT TO 88CR       BY: FYI0026
   10/04/2003 AT 10:00:15 UPDATED            BY: ZGC0046
   RCVD COPY OF CARD FOR DCN#03237437203,    BY: ZGSNA20
   PREFIX CBM. SNT PRV LTR REQ THAT THEY
   SUBMIT CLM. MZX47200
   10/04/2003 AT 10:01:16 CLOSED             BY: ZGSNA20



   TAGGED DCNS
                                                  NEXT INQ NO: _____

INQUIRY LOCKED/PURGED RECORD
   PF01=HELP    PF02=NWKPRV  PF03=RETURN PF04=CLMHISTPF05=ADJMNT PF06=SINQ
   PF07=PREV    PF08=NEXT    PF09=MEMBER PF10=UPDATE PF11=HIQMENU
```

REDACTED

Date: 4/28/2008 Time: 7:15:32 AM

Page: 1 Document Name: untitled

```
GNSIINQ
  AA44828    VTC03511        WELLPOINT GROUP SYSTEM                P 04/28/08 07:15:37   1
                               INQUIRY TRACKING                              VERSION 001

  INQ NO:                      OPER ID: 2590
  IINQ NO:   03266540408 ___                          USER ID: FYI0026   LIM LIB:
  ENTRY DT:  092303            CUST ID: ▓▓▓▓1135       DOMAIN: 01 MEDICAL    MSO: N
    HCID:                      DEPT DT: 092303         CLOSE DT: 100403      ERISA: N
  PAT NAME: _____           GROUP: _____           CASE: _____        CONT: ___
  CUSTOMER: _____             SVC DT: 092303       PROD: ___
  INQ NAME:  NOEMIA CARVALHO                            STATE: __            PMG:  ___
  EMAIL ADDRESS: _____                       PHONE: __            EXT:  ___
  SOURCE:       S SUBSCRIBER               NTWK:                            HRC:  ___
  METHOD:       S MAILBACK/SYS GEN LET     MLH: 03262254700 SEND: _ TO: ____ SYS: _
  TYPE INQ:    CS CLAIMS STATUS / QUES     CLS: IN INQUIRY
  ANALYSIS:                                LANG: _                      USE LANG: _
  RSPNS MTHD:  L LETTER                    ACT: SN SENT INFO
  PEND: __                                 CB: N  DATE: _____
  RTE: _                                   ATTACH: _  REPEAT CALL: _
  TAGGED DCNS


  INQUIRY IS PURGED/CAN NOT BE REOPENED
    PF01=HELP     PF02=CTAPAY  PF03=RETURN  PF04=CLMHST PF05=BENF    PF06=SINQ
    PF07=MBRMNU PF08=TEXT      PF09=MEMBER  PF10=CLOSE  PF11=HIQMENUPF12=LIMLIB
```

REDACTED

Date: 4/28/2008 Time: 7:15:40 AM

Page: 1 Document Name: untitled

```
GNSTINQ
  AA44828  VTC03511        WELLPOINT GROUP SYSTEM      P 04/28/08 07:15:41    1
                          TEXT INQUIRY SCREEN                        VERSION 001
IINQ NO: 03266540408     CUST ID: ████1135  HCID:              GROUP:
ROUTE: __  ATTACH: _  PEND: __  UPDATE: _          RSPNS MTHD: _  ACT: __

  09/23/2003 AT 11:33:32 CREATED             BY: FYI0026
  09/23/2003 AT 11:33:32 SENT TO COCR        BY: FYI0026
  09/23/2003 AT 21:40:44 SENT TO 88CR        BY: ZGC0046
  10/04/2003 AT 09:44:11 UPDATED             BY: ZGSNA20
  RCVD M/B FROM SUB WITH COPY OF I D CARD FOR DCN#03237437203. PULLED COPY OF
  IMAGE, IT IS NOT A CLM ITS A COLLECTION BILL. SNT LTR TO MBR ASKING HER TO
  PLEASE HAVE PRV SND CLM FO RPROCESSING. MZX47200
  10/04/2003 AT 09:45:13 CLOSED              BY: ZGSNA20



TAGGED DCNS
                                                 NEXT INQ NO: _____


INQUIRY LOCKED/PURGED RECORD
   PF01=HELP    PF02=NWKPRV PF03=RETURN PF04=CLMHISTPF05=ADJMNT PF06=SINQ
   PF07=PREV    PF08=NEXT   PF09=MEMBER PF10=UPDATE PF11=HIQMENU
```

REDACTED

Date: 4/28/2008 Time: 7:15:42 AM

```
GNSIINQ
  AA44828  VTC03511        WELLPOINT GROUP SYSTEM          P 04/28/08 07:15:47    1
                              INQUIRY TRACKING                           VERSION 001

  INQ NO: _____         OPER ID: 2590       USER ID: ZGSNA70  LIM LIB: N
  IINQ NO: 02030700662 ___ CUST ID: ____1135   DOMAIN: 01 MEDICAL   MSO: N
  ENTRY DT: 013002         DEPT DT: 013002     CLOSE DT: 013002    ERISA: _
    HCID: _____        GROUP: _____         CASE: _____      CONT: ___
  PAT NAME: _____                                              CONT: ___
  CUSTOMER: _____                        SVC DT: 013002      PROD: ___
  INQ NAME: NOEMIA CARVALHO-CBM                  STATE: __          PMG: ___
  EMAIL ADDRESS: _____                  PHONE: __          EXT: ___
  SOURCE:      S SUBSCRIBER          NTWK: _____                HRC: __
  METHOD:      W WRITTEN INQ/NON SYS  MLH: 02025122593 SEND: _ TO: ____ SYS: _
  TYPE INQ: CS CLAIMS STATUS / QUES  CLS: IN INQUIRY
  ANALYSIS:                          LANG: _
  RSPNS MTHD: L LETTER                                          USE LANG: _
  PEND: _                            ACT: ST CLAIM STATUS GIVEN
  RTE: _                              CB: N DATE: _____
  TAGGED DCNS                      ATTACH: _  REPEAT CALL: _


  INQUIRY IS PURGED/CAN NOT BE REOPENED
    PF01=HELP     PF02=CTAPAY   PF03=RETURN PF04=CLMHST PF05=BENF    PF06=SINQ
    PF07=MBRMNU PF08=TEXT    PF09=MEMBER PF10=CLOSE   PF11=HIQMENUPF12=LIMLIB
```

REDACTED

Page: 1 Document Name: untitled

```
GNSTINQ
   AA44828  VTC03511        WELLPOINT GROUP SYSTEM       P 04/28/08 07:15:50    1
                             TEXT INQUIRY SCREEN                       VERSION 001
   IINQ NO: 02030700662   CUST ID: ████1135   HCID:
   ROUTE: __  ATTACH: _   PEND: __  UPDATE: _              GROUP:
                                              RSPNS MTHD: _  ACT: __

   01/30/2002 AT 16:03:07 CREATED               BY: ZGSNA70
   RECV'D COPY OF ID CRD AND EOB FR BS, DENYING DOS 101901 $118.
   PREFIX CBM. PRV=BAYSIDE PED-NO ADDRESS. MB TO MBR FOR PRV TO BILL US W/
   ITEMIZED BILL. CAN NOT KEY OFF OF BS EOB.
   EDITH H X47093
   01/30/2002 AT 16:04:13 CLOSED                BY: ZGSNA70




   TAGGED DCNS
                                                NEXT INQ NO: _____

   INQUIRY LOCKED/PURGED RECORD
     PF01=HELP     PF02=NWKPRV  PF03=RETURN  PF04=CLMHIST PF05=ADJMNT  PF06=SINQ
     PF07=PREV     PF08=NEXT    PF09=MEMBER  PF10=UPDATE   PF11=HIQMENU
```

REDACTED

Page: 1 Document Name: untitled

```
GNSIINQ                    WELLPOINT GROUP SYSTEM
    AA44828   VTC03511          INQUIRY TRACKING              P 04/28/08 07:16:27    1
                                                                         VERSION 001
    INQ NO:
    IINQ NO:   01002405828  ___  OPER ID: 2590
    ENTRY DT:  010201            CUST ID: ████1135    USER ID: ZKFCCUG   LIM LIB: _
       HCID:   ████1135          DEPT DT: 010201      DOMAIN:  01 MEDICAL    MSO: _
    PAT NAME:  _____   ____ GROUP:  _____     CLOSE DT: 010201    ERISA: _
    CUSTOMER:  _____  _____ _____              CASE:               CONT: _
    INQ NAME:  PAUL         _____           SVC DT:  010201      PROD: _
    EMAIL ADDRESS:                                     STATE:   CA          PMG: _
    SOURCE:    W GROUP ADMIN/TRUST FU NTWK: _____   PHONE:               EXT: _
    METHOD:    I INCOMING CALL        MLH: _                                HRC: _
    TYPE INQ:  BE BENEFITS/ELIGIBILITY CLS: IN INQUIRY        SEND: _ TO: ____ SYS: _
    ANALYSIS:                          LANG: _                           USE LANG: _
    RSPNS MTHD: I INITIAL CONTACT      ACT: MQ QUOTED MEMBERSHIP EL
    PEND: _                            CB:  N  DATE: _____
    RTE: _                            ATTACH: _   REPEAT CALL: _
    TAGGED DCNS
```

```
 INQUIRY IS PURGED/CAN NOT BE REOPENED
   PF01=HELP    PF02=CTAPAY  PF03=RETURN  PF04=CLMHST  PF05=BENF   PF06=SINQ
   PF07=MBRMNU  PF08=TEXT    PF09=MEMBER  PF10=CLOSE   PF11=HIQMENUPF12=LIMLIB
```

REDACTED

Page: 1 Document Name: untitled

GNSTINQ
   AA44828   VTC03511          WELLPOINT GROUP SYSTEM        P 04/28/08 07:16:29      1
                               TEXT INQUIRY SCREEN                         VERSION 001

IINQ NO: 01002405828    CUST ID: ████1135    HCID: ████1135    GROUP:
ROUTE: __   ATTACH: _    PEND: __    UPDATE: _           RSPNS MTHD: _   ACT: __

   01/02/2001 AT 12:10:08 CREATED          BY: ZKFCCUG
   01/02/2001 AT 12:11:59 CLOSED           BY: ZKFCCUG
   KELECHI AJUGWO, ACD 65140, AGNT 47584,
   -----------------SAID MEM SHOULD BE EFF WITH BC
   PPO...................NO NAEMIA CARVALHO DOB
   4.2.1959.........................KELLY.



TAGGED DCNS
                                                        NEXT INQ NO: _____

INQUIRY LOCKED/PURGED RECORD
   PF01=HELP     PF02=NWKPRV  PF03=RETURN  PF04=CLMHISTPF05=ADJMNT  PF06=SINQ
   PF07=PREV     PF08=NEXT    PF09=MEMBER  PF10=UPDATE  PF11=HIQMENU



REDACTED


Date: 4/28/2008 Time: 7:16:30 AM

Page: 1 Document Name: untitled

```
WGMIMNM
  AA44828   VTC05316        WELLPOINT GROUP SYSTEMS
                            MEMBER NAME SEARCH        P 04/24/08 10:47:31 0001
  CASE              GRP/SUFFIX            ID                      VERSION 001
                                                                 MBR CD
S     INQUIRY NAME   LAST CARVALHO                        1135
E     SSN                              FIRST NOEMIA            MID
L STAT TYPE      X          DOB          (MMDDCCYY)
                            (BLANK=ACTIVE, C=CANCEL, X=ALL, P=PURGED)
  MEMB  TYPE     X          (BLANK=SUBS ONLY, D=DEP ONLY, X=ALL)
  NAME                    EID      DOB       REL S SS NUMBER GROUP/SUFX   S
                                                                         T
```

NAME NOT FOUND
  PF07=PREV    PF08=NEXT    PF09=CNTRCT

                              PF11=NWKPRV PF12=CLEAR

REDACTED

Date: 4/24/2008 Time: 10:47:36 AM

Page: 1 Document Name: untitled

```
GNCSCLMI
  AA44828   VTC05316          WELLPOINT GROUP SYSTEM          P 04/24/08 10:47:49      1
                                SUMMARY CLAIMS                            VERSION 001
          ID          ████1135        PURGED MM-YY
  MEMBER CODE:   00                   SUBSCR NAME
  START DATE:                         MEMBER NAME
                _____              PROVIDER ID:
                                                    _____

 S - SVC DATES -   MEM CD/DCN    PROVIDER ID/NAME             DX CDE    TOTAL CHARGE




 NO CLAIM DATA FOUND
  PF07=PREV     PF08=NEXT     PF09=VIEW1    PF04=EOBDTL  PF05=EOBSUM  PF06=TRKCLMS
                                            PF10=VIEW2   PF11=IMAGE   PF12=TRKPRVD
```

REDACTED

Date: 4/24/2008 Time: 10:47:51 AM

Page: 1 Document Name: untitled

```
ICLSCLMI
   AA44828   VTC05484        INDIVIDUAL CLAIMS SYSTEM         P 04/24/08 10:47:59     1
                ID:          INDV SUMMARY CLAIMS                            VERSION 001
                   ████1135    PURGED MM-YY              RUS MBR IND:
       MEMBER CODE:   00        SUBSCR NAME
       START DATE:    ____      MEMBER NAME
                                PROVIDER ID:  _____

 S - SVC DATES -    MEM CD/DCN    PROVIDER ID/NAME            DX CDE    TOTAL CHARGE
```

NO CLAIM DATA FOUND
 PF07=PREV      PF08=NEXT      PF09=VIEW1    PF04=EOBDTL  PF05=EOBSUM  PF06=TRKCLMS
                                            PF10=VIEW2   PF11=IMAGE

REDACTED

Date: 4/24/2008 Time: 10:48:01 AM

Page: 1 Document Name: untitled

```
MMSUBN                 CONSUMER MANAGEMENT SYSTEM       P 04/24/08 10:48:16    1
   AA44828    VTC05484     SUBSCRIBER NAMES SEARCH                    VERSION 001
   ENTITY               PRODUCT              ID        MBR CD

         INQUIRY NAME:  LAST  CARVALHO          FIRST  NOEMIA       MID        PAGE 01
 S LIST TYPE    :    X      (BLANK=ACTIVE, C=CANCEL, X=ALL)   PARTIAL ID:
 E MEMB TYPE    :    X      (BLANK=SUB ONLY, D=DEP ONLY, X=ALL)
 L MEM NAME                 EID       DOB       REL SEX SS NUMBER GROUP# ST DATE
                                                                         PURGE
```

```
 UNABLE TO LOCATE NAME FOR ACTION GIVEN
    PF02=MENU    PF03=RETURN PF07=PREV    PF08=NEXT    ENTR=CRTHST
```

Date: 4/24/2008 Time: 10:48:20 AM

EXHIBIT N



HIGHMARK.

An Independent Licensee of the
Blue Cross and Blue Shield Association

August 1, 2008



Brian C. Frontino, Esquire
Stroock & Strook & Lavan, LLP
2029 Century Park East
Los Angeles, CA 90067-3086

      Re:   *Noemia Carvalho, et al. v. Credit Consulting Services, Inc., et al.*

Dear Mr. Frontino:

      This letter is in response to a subpoena received by Highmark for insurance information concerning Noemia Carvalho. Enclosed herein please find copy of the benefit booklet that was in effect in 2001. Please be advised that Highmark could not locate any claims or communications concerning services rendered to Ms. Carvalho by Bayside Medical Group in October 2001.

      Please be advised that our fee to search, retrieve and compile member records is $25.00 per hour. Please send your check payable to Highmark Inc. in the amount of $25.00 to my attention for processing. Our Federal Tax Identification Number is 23-1294723. Should you have any questions, please feel free to call me at (412) 544-4245. Thank you for your consideration.

      Very truly yours,

Rene Halligan
Paralegal

/rh
Enclosures

PAGE 1

PAID AND REJECTED CLAIMS LISTING

FINALIZED DATE  FROM 09012000 THRU 07232008
DATE OF SERVICE FROM 09012000 THRU 07232008

SELECT RUN REQUEST:  RUN FORMAT 1


**NO DATA TO REPORT**

7/29/2008

# Waste Management

# TABLE OF CONTENTS

I.  WHO IS ELIGIBLE FOR COVERAGE? ....................................................................1

II.  BENEFITS CHART ...........................................................................................2

III.  HOW YOUR BENEFITS ARE APPLIED ...............................................................19

IV.  COVERED SERVICES .....................................................................................21

V.  WHAT IS NOT COVERED...............................................................................31

VI.  OUT-OF-AREA-COVERAGE .........................................................................35

VII.  BENEFITS AFTER TERMINATION OF COVERAGE ..............................................37

VIII. PENNVISION II PROGRAM............................................................................39

IX. COORDINATION OF BENEFITS .......................................................................43

X.  SUBROGATION.............................................................................................44

42378-00, -70; 43318-03, -04, -05, -73, -74, -75;          i
43851-01, -02, -03, -71, -72, and -73

# II. BENEFITS CHART
## For Group Numbers 42378-00 and -70:

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Deductible**<br>　Individual<br>　Family | None<br>None | $300<br>$600 |
| **Coinsurance** | 100% | 80% after deductible |
| **Out-of-Pocket Limit** | Not Applicable | $2,000 Individual<br>$4,000 Family |
| **Lifetime Maximum**<br>**(Includes Mental Health and**<br>**Substance Abuse Services)** | Unlimited | $1,000,000 |
| **Physician Office Visits** | 100% | 80% after deductible |
| **Preventive Care**<br>　*Adult*<br>　Routine physical exams | 100% | 80% after deductible<br>(Limit: $100 per calendar year) |
| 　Routine GYN exams<br>　including PAP Tests | 100% | 80%; deductible and maximums do not apply |
| 　Mammograms as required | 100% | 80% after deductible |
| 　*Pediatric*<br>　Routine physical exams | 100% | Not Covered |
| 　Pediatric immunizations | 100% | 80%; deductible and maximums do not apply |
| **Hospital Services**<br>**(Inpatient and Outpatient)** | 100% | 80% after deductible<br>(Limit: 90 inpatient days per calendar year) |

42378-00, -70; 43318-03, -04, -05, -73, -74, -75;　　　　2　　　　(Continued on next page)
43851-01, -02, -03, -71, -72, and -73

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Transplant Services** | 100% | 80% after deductible |
| | (Limit: $5,000 per lifetime for Donor Benefits) | |
| **Mental Health Services** Inpatient | 100% | 80% after deductible |
| Outpatient | 100% after $20 copayment (Limit:  50 visits per calendar year) | 80% after deductible |
| **Substance Abuse Services** | | |
| **Inpatient Benefits** | 100% | 80% after deductible |
| **Detoxification** Up to 7 days per admission; up to 4 admissions per lifetime | | |
| **Rehabilitation** (Non-hospital) 30 days per year; 90 days per lifetime | | |
| **Outpatient Benefits** Up to 60 full session visits or equivalent partial visits per calendar year, 120 visits per lifetime; 30 visits may be exchanged on a two-for-one basis to secure up to 15 additional days per calendar year for inpatient non-hospital rehabilitation services beyond the 30-day limit.  These are subject to lifetime limits. | 100% | 80% after deductible |
| **Precertification Requirements** | Performed by Network Providers | Performed by Member⓪ |

## For Group Numbers 43318-03, -04, -05, -73, -74, and -75; 43851-03 and -73:

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Deductible**<br>Individual<br>Family | None<br>None | $300<br>$600 |
| **Coinsurance** | 100% | 80% after deductible |
| **Out-of-Pocket Limit** | Not Applicable | $2,000 Individual<br>$4,000 Family |
| **Lifetime Maximum**<br>(Includes Mental Health and Substance Abuse Services) | Unlimited | $1,000,000 |
| **Physician Office Visits** | 100% after $10 copayment per visit | 80% after deductible |
| **Preventive Care**<br>*Adult*<br>Routine physical exams | 100% after $10 copayment per visit | Not Covered |
| Routine GYN exams including PAP Tests | 100% after $10 copayment per visit | 80%; deductible and maximums do not apply |
| Mammograms as required | 100% | 80% after deductible |
| *Pediatric*<br>Routine physical exams | 100% after $10 copayment per visit | Not Covered |
| Pediatric immunizations | 100% | 80%; deductible and maximums do not apply |
| **Hospital Services**<br>(Inpatient and Outpatient) | 100% | 80% after deductible |

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Mental Health Services**<br>Inpatient | 100% | 80% after deductible |
| Outpatient | 100% after $10 copayment<br>(Limit: 50 visits per calendar year) | 80% after deductible |
| **Substance Abuse Services**<br><br>**Inpatient Benefits**<br><br>**Detoxification**<br>Up to 7 days per admission; up to 4 admissions per lifetime<br><br>**Rehabilitation**<br>(Non-hospital) 30 days per year; 90 days per lifetime | 100% | 80% after deductible |
| **Outpatient Benefits**<br>Up to 60 full session visits or equivalent partial visits per calendar year, 120 visits per lifetime; 30 visits may be exchanged on a two-for-one basis to secure up to 15 additional days per calendar year for inpatient non-hospital rehabilitation services beyond the 30-day limit. These are subject to lifetime limits. | 100% | 50% after deductible① |
| **Precertification Requirements** | Performed by Network Providers | Performed by Member② |

## For Group Numbers 43851-01 and -71:

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Deductible** | | |
| Individual | None | $300 |
| Family | None | $600 |
| **Coinsurance** | 100% | 80% after deductible |
| **Out-of-Pocket Limit** | Not Applicable | $2,000 Individual $4,000 Family |
| **Lifetime Maximum** (Includes Mental Health and Substance Abuse Services) | Unlimited | $1,000,000 |
| **Physician Office Visits** | 100% | 80% after deductible |
| **Preventive Care** | | |
| *Adult* | | |
| Routine physical exams | 100% | Not Covered |
| Routine GYN exams including PAP Tests | 100% | 80%; deductible and maximums do not apply |
| Mammograms as required | 100% | 80% after deductible |
| *Pediatric* | | |
| Routine physical exams | 100% | 80% after deductible |
| Pediatric immunizations | 100% | 80%; deductible and maximums do not apply |
| **Hospital Services** (Inpatient and Outpatient) | 100% | 80% after deductible |

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Substance Abuse Services** **Inpatient Benefits** **Detoxification** Up to 7 days per admission; up to 4 admissions per lifetime **Rehabilitation** (Non-hospital) 30 days per year; 90 days per lifetime | 100% | 80% after deductible |
| **Outpatient Benefits** Up to 60 full session visits or equivalent partial visits per calendar year, 120 visits per lifetime; 30 visits may be exchanged on a two-for-one basis to secure up to 15 additional days per calendar year for inpatient non-hospital rehabilitation services beyond the 30-day limit.  These are subject to lifetime limits. | 100% | 50% after deductible① |
| **Precertification Requirements** | Performed by Network Providers | Performed by Member② |

## For Group Numbers 43851-02 and -72:

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Deductible**<br>Individual<br>Family | None<br>None | $300<br>$600 |
| **Coinsurance** | 100% | 80% after deductible |
| **Out-of-Pocket Limit** | Not Applicable | $2,000 Individual<br>$4,000 Family |
| **Lifetime Maximum**<br>(Includes Mental Health and Substance Abuse Services) | Unlimited | $1,000,000 |
| **Physician Office Visits** | 100% after $10 copayment per visit | 80% after deductible |
| **Hearing Examinations** | 100% after $10 copayment per visit<br>(Limit: one examination per 24 month period) | 70% after deductible |
| **Preventive Care**<br>*Adult*<br>Routine physical exams | 100% after $10 copayment per visit | Not Covered |
| Routine GYN exams including PAP Tests | 100% after $10 copayment per visit | 80%; deductible and maximums do not apply |
| Mammograms as required | 100% | 80% after deductible |
| *Pediatric*<br>Routine physical exams | 100% after $10 copayment per visit | Not Covered |
| Pediatric immunizations | 100% | 80%; deductible and maximums do not apply |

| BENEFITS | IN-NETWORK | OUT-OF-NETWORK |
|---|---|---|
| **Mental Health Services**<br>Inpatient | 100% | 80% after deductible |
| Outpatient | 100% after $10 copayment<br>(Limit: 50 visits per calendar year) | 80% after deductible |
| **Substance Abuse Services**<br><br>**Inpatient Benefits**<br><br>**Detoxification**<br>   Up to 7 days per<br>   admission; up to 4<br>   admissions per lifetime<br><br>**Rehabilitation**<br>   (Non-hospital) 30 days<br>   per year; 90 days per<br>   lifetime | 100% | 80% after deductible |
| **Outpatient Benefits**<br>Up to 60 full session visits or<br>equivalent partial visits per<br>calendar year, 120 visits per<br>lifetime; 30 visits may be<br>exchanged on a two-for-one<br>basis to secure up to 15<br>additional days per calendar<br>year for inpatient non-hospital<br>rehabilitation services beyond<br>the 30-day limit. These are<br>subject to lifetime limits. | 100% | 50% after deductible① |
| **Precertification Requirements** | Performed by Network Providers | Performed by Member② |

**Vision Care Program**
**For Group Numbers: 42378-00, -70; 43318-03, -04, -05, -73, -74, -75;**
**43851-01, -02, -03, -71, -72, and -73**

| Type of Expense | Plan Pays |
|---|---|
| Eye Examination and Refraction | $25 |
| Frames | $40 |
| Single Vision Lenses (pair) | $25 |
| Bifocal Vision Lenses (pair) | $35 |
| Trifocal Vision Lenses (pair) | $50 |
| Aphakic Vision Lenses (pair) | $75 |
| Hard Contact Lenses (pair) | $100 |
| Soft Lenses (pair) | $100 |

**Note:**    Payment for frames limited to one set in any 24-month period.  Payments for eye exams/refraction and lenses/contact lenses are limited to once every 12 months for covered persons.

deductibles, mental health/substance abuse expenses, prescription drug expenses, or amounts in excess of the provider's reasonable charge. Your individual out-of-pocket limit applies to each covered person per calendar year. The family out-of-pocket limit refers to the amount you have paid out of your own pocket, excluding the deductible, for total covered services your family received during the calendar year.

## Lifetime Maximum

The maximum benefit that the program will provide for any covered individual during his or her lifetime is specified in your Benefits Chart.

At the start of each benefit period, the amount paid for covered services in the preceding benefit period up to $1,000 will be restored to the lifetime maximum of each person who used the benefits.

The amount paid for covered services under this program will be added to any amount paid for benefits under any other group health care expense plan between the Group and Blue Cross Blue Shield including, but not limited to Major Medical, Comprehensive Major Medical, Wraparound Major Medical, or Point-of-Service for the purpose of calculating the benefit period or lifetime maximum applicable to you and each of your dependents.

Newborn
2nd-4th day

| | |
|---|---|
| by 1 month | 5 years |
| 2 months | 6 years |
| 4 months | 8 years |
| 6 months | 10 years |
| 9 months | 11 years |
| 12 months | 12 years |
| 15 months | 13 years |
| 18 months | 14 years |
| 24 months | 15 years |
| 3 years | 16 years |
| 4 years | 17 years |

- **Hemoglobin/Hematocrit**

  A blood test which measures the size, shape, number, and content of red blood cells.

  - Once between age 1 month through 9 months

  - Menstruating adolescents should be screened

- **Tine Test**

  The tuberculin skin prick test may be recommended for children if they have been exposed to individuals who have tuberculosis or have been near an individual with tuberculosis.

  Based on high risk factors. 12 months-17 years, repeat if still in high risk situation.

  The benefit frequencies specified in the preventive schedule are reviewed annually and are current as of the date of publication of this booklet. You can contact your network physician or the Member Service Department at the number on your I.D. Card for the most current benefit schedule which will include any changes that may have been made since this booklet was printed.

## Adult Preventive Services (Age 18 and Older)

- **Mammographic Screening**

  Women are covered for one routine mammographic screening annually, beginning at age 40. Mammographic examinations for all females regardless of age when such services are physician recommended. Benefits for mammographic screening are payable only if performed by a mammography service provider who is properly certified.

- **Routine Gynecological Examination and Pap Test**

  All females, regardless of age, are covered for one routine gynecological examination, including a pelvic and clinical breast examination, and one routine Papanicolaou smear (pap test) per calendar year. Benefits are not subject to program deductibles or maximums.

The program covers the following adult preventive services only when performed by an *in-network* provider, including routine physical examinations and routine diagnostic services, regardless of medical necessity.

- **Routine History and Physical Examination**

– A bed in a Special Care Unit which gives intensive care to the critically ill.

- **Other Services:**

  – Operating, delivery and treatment rooms and equipment.

  – Drugs and medicines provided to you while you are an inpatient in a hospital or other facility provider.

  – Whole blood, administration of blood, blood processing and blood derivatives.

  – Anesthesia, anesthesia supplies and services rendered in a hospital or other facility provider by an employee of the hospital or other facility provider. Administration of anesthesia ordered by the attending professional provider and rendered by a professional provider other than the surgeon or assistant at surgery.

  – Medical and surgical dressings, supplies, casts and splints.

  – Diagnostic services.

  – Therapy services.

- **Emergency Accident Care**

  Outpatient emergency hospital services and supplies to treat injuries caused by an accident.

- **Emergency Medical Care**

The initial treatment of a sudden onset of a medical condition with acute symptoms of sufficient severity to require immediate medical attention.

- **Surgery**

  – Hospital services and supplies for outpatient surgery furnished by an employee of the hospital or other facility provider.

  – Also covered is the orthodontic treatment of congenital cleft palates involving the maxillary arch, performed in conjunction with bone graft surgery to correct the bony deficits associated with extremely wide clefts affecting the alveolus.

- **Pre-Admission Testing**

  Outpatient tests and studies required for your scheduled admission as an inpatient.

## Surgical/Medical Services

The program covers the following services you receive from a professional provider or other professional provider. If you use an Out-of-Network Professional Provider and an inpatient hospital admission is required, you must contact Member Services prior to your admission.

- **Surgical Services**

  – Payment includes visits before and after surgery.

  – When more than one surgical procedure is performed through the same incision or body opening during

- **Consultation**

  Consultation by another professional provider when requested by the attending professional provider. Staff consultations required by hospital rules are excluded.

- **Newborn Care**

  Professional provider visits to examine the newborn infant while the mother is an inpatient.

## Diagnostic Services

The program covers the following services when ordered by a professional provider:

- Diagnostic X-ray, consisting of radiology, magnetic resonance imaging (MRI), ultrasound and nuclear medicine.

- Diagnostic pathology, consisting of laboratory and pathology tests.

- Diagnostic medical procedures, consisting of electrocardiogram, electroencephalogram, and other electronic diagnostic medical procedures and physiological medical testing approved by Blue Cross Blue Shield.

- Allergy testing, consisting of percutaneous, intracutaneous, and patch tests.

## Therapy Services

The program covers the following services you receive from a professional provider or other professional provider:

- Radiation therapy

- Chemotherapy

- Dialysis treatment

- Physical therapy

- Respiration therapy

- Occupational therapy

- Speech therapy

- Infusion therapy

## Home Infusion Therapy Services

The program covers the following services you receive from a home infusion therapy provider in a home setting:

- pharmaceuticals

- pharmacy services

- intravenous solutions

- medical/surgical supplies

- nursing services associated with home infusion therapy

## Maternity Services

Hospital services and surgical/medical services from a provider for:

- Normal pregnancy

- Complications of pregnancy

- Nursery care

## Spinal Manipulations

Spinal manipulations for the detection and

No home health care benefits will be provided for:

- dietician services

- homemaker services

- maintenance therapy

- dialysis treatment

- custodial care

- food or home delivered meals

## Dental Services for Accidental Injury

Dental services for accidental injury to the jaws, sound natural teeth, mouth or face that occurs on or after your effective date. Injury caused by chewing or biting will not be considered accidental injury.

## Durable Medical Equipment

The rental (or, at the option of Blue Cross Blue Shield, the purchase, adjustment, repairs and replacement) of durable medical equipment for therapeutic use prescribed by a professional provider. Rental costs must not be more than purchase price.

## Prosthetic Appliances

Purchase, fitting, needed adjustment, repairs, and replacements of prosthetic devices and supplies that:

- replace all or part of a missing body organ and its adjoining tissues;
- replace all or part of the function of a permanently useless or malfunctioning body organ.

Dental appliances and the replacement of cataract lenses are not covered.

## Orthotic Devices

Purchase, fitting, necessary adjustment, repairs and replacement of a rigid or semi-rigid supportive device which restricts or eliminates motion of a weak or diseased body part.

## Transplant Services

Human organ or tissue transplant services, including removal of an organ or tissue from a donor when the donor is not covered under this program or any other health care plan.

## Diabetes Education

When the attending physician certifies that you require diabetes education as an ambulatory patient, benefits will be provided for the following services when rendered by an approved outpatient diabetes education program:

- Up to a maximum of four outpatient visits during a calendar year for initial assessment and education. These initial four visits will be provided once during your lifetime.

- Benefits for post-assessment of your competency after completion of the initial visits and review of areas in which competency was not achieved will be limited to two outpatient visits within the calendar year in which the initial visits were completed.

- Subsequent outpatient visits will be limited to two per calendar year for follow-up education and to refresh existing knowledge as well as to present

- **Premier Pharmacies**
  You must purchase drugs from a Premier Pharmacy to be eligible for benefits under *Premier Pharmacy* - A Premier Pharmacy has an arrangement with Highmark Blue Cross Blue Shield to provide prescription drugs to you at an agreed upon price. When you purchase covered drugs from any Premier Pharmacy, present your prescription and identification card to the pharmacist. (Prescriptions which the pharmacy receives by phone from your physician or dentist may also be covered.) You should request and retain a paid receipt for your copayment amount if you need it for income tax or any other purpose.

this program. *No benefits are available if drugs are purchased from a Non-Premier Pharmacy.*

Premier Pharmacies also include Mail Service suppliers designated by Highmark Blue Cross Blue Shield. Mail Service prescriptions or refills for covered drugs shall be dispensed for not less than a 30-day supply and not more than a 90-day supply.

Prescription Drug benefits are not subject to the overall program deductible, coinsurance, or maximum. Refer to the Benefits Chart for the copayment amounts applicable to your prescription drug benefits.

42378-00, -70; 43318-03, -04, -05, -73, -74, -75;
43851-01, -02, -03, -71, -72, and -73

30

benefits or compensation are available, in whole or in part, under the provisions of workers' compensation, occupational disease or similar type legislation. This exclusion applies whether or not you claim the benefits or compensation

- To the extent benefits are provided to members of the armed forces or to patients in Veteran's Administration facilities for service-connected illness or injury unless you have a legal obligation to pay

- For treatment or services for injuries resulting from the maintenance or use of a motor vehicle if such treatment or service is paid or payable under a plan or policy of motor vehicle insurance, including a certified or qualified plan of self-insurance, or any fund or program for the payment of extraordinary medical benefits established by law.

- Which are submitted by a certified registered nurse and another professional provider or other professional provider for the same services performed on the same date for the same patient

- Rendered by a provider who is a member of your immediate family

- Performed by a professional provider or other professional provider enrolled in an education or training program when such services are related to the education or training program

- For operations for cosmetic purposes done to improve the appearance of any portion of the body, and from which no improvement in physiological function can be expected. However, benefits are

payable to correct a condition resulting from an accident which occurs while you are covered by Blue Cross Blue Shield. You must be enrolled without interruption from the date of the accident to the date of the operation to be eligible for cosmetic surgery. Benefits are also payable to correct functional impairment which results from any covered disease, injury or congenital birth defect

- For telephone consultations, charges for failure to keep a scheduled visit, or charges for completion of a claim form

- For personal hygiene and convenience items such as, but not limited to, air conditioners, humidifiers, or physical fitness equipment, stair glides, elevators/lifts or "barrier free" home modifications, whether or not specifically recommended by a professional provider or other professional provider

- For inpatient admissions which are primarily for diagnostic studies

- For custodial care, domiciliary care or rest cures

- For respite care

- Performed on high cost technological equipment such as, but not limited to computed tomography scanners (CT scanners), lithotriptors, and magnetic resonance imaging (MRI) scanners, as defined by Blue Cross Blue Shield, which is not approved through the certificate of need process if applicable and/or is not approved by Blue Cross Blue Shield
- Directly related to the care, filling, removal or replacement of teeth, the

42378-00, -70; 43318-03, -04, -05, -73, -74, -75;
43851-01, -02, -03, -71, -72, and -73

- For any other medical or dental service or treatment, except as provided herein.

In addition, under your Prescription Drug benefits, the following are also excluded:

- Prescription drugs dispensed for any illness or injury eligible or covered by any federal, state, or local government workers' compensation act or occupational disability law.

- Prescription drugs to which you are entitled, with or without charge, under a plan or program of any government or governmental body.

- Treatment or services for injuries resulting from the maintenance or use of a motor vehicle if such treatment or services are paid or payable under any applicable motor vehicle insurance policy or program, including a certified or qualified plan of self-insurance, or any catastrophic loss fund established by law.

- Any charges for therapeutic devices or appliances except as provided herein.

- Any prescription for more than a 34-day supply of drugs or more than 100 unit doses, whichever is greater.

- Any charge for *administration* of drugs or insulin.

- Any drug or medication except as provided herein.

- Any amounts you are required to pay directly to the Premier Pharmacy for each prescription or refill.

- Charges for a prescription drug when such drug or medication is used for unlabeled or unapproved indications where such use has not been approved by the FDA.

- With regard to Mail Service, any drug which requires refrigeration, except insulin.

- Any charge for a contraceptive medication, even if such medication is a prescription drug.

expected settlements or other non-claims transactions with your health care provider or with a specified group of providers. The negotiated price may also be a discount from billed charges that reflects average expected savings. The Blue Cross and/or Blue Shield Plans may adjust their future estimated or average prices if the estimated or average prices used in the past were either too high or too low.

In addition, laws in a small number of states require Blue Cross and/or Blue Shield Plans to use a basis for calculating your payment for covered services that does not reflect the entire savings realized or expected to be realized on a particular claim. When you receive covered health care services in those states, your required payment for these services will be calculated using their statutory methods.

If you are an inpatient on the day your coverage terminates, inpatient benefits will be continued as follows:

- Until the maximum amount of benefits has been paid; or

- Until the inpatient stay ends; or

- Until you become covered under another group program; whichever occurs first.

Your benefits will not be continued if your coverage is terminated because you failed to pay any required premium.

## General Description

Who is eligible to render services under the Pennvision Program?

A professional provider, who is a licensed doctor of medicine or osteopathy, including a specialist in ophthalmology (ophthalmologist), or a licensed doctor of optometry (optometrist), is eligible to provide eye examination, refractive and post-refractive services.

An optician, who is a person who makes, fits, supplies and adjusts eyeglasses in accordance with a prescription written by a provider to correct a patient's vision deficiencies, is eligible to provide post-refractive services.

## Payment for Eye Examination and Refractive and Post-Refractive Services

Payment for covered eye examination and refractive and post-refractive services consisting of lenses and frames and associated services is made on the basis of the allowance as specified in the Benefits Chart or the amount charged, whichever is less.

The Blue Cross Blue Shield payment is made to the participating professional provider who performs the services or to the subscriber when the services are performed by a non-participating provider or an optician. Any difference between the charge and the Blue Cross Blue Shield allowance these services will be the responsibility of the subscriber.

## Eye Examination and Refractive Services

Eye examination and refractive services include, but are not limited to, the following:

> Case History
> Visual acuity, near and far
> External examination, including biomicroscopy or other magnified evaluation of the anterior chamber
> Objective, subjective and ophthalmoscopic examinations
> Binocular measure
> Summary, findings, and recommendations

## Post-Refractive Services

Post-refractive services consist of:

> Ordering lenses and frames
> Cost of the materials
> Verification of the completed prescription
> Adjustment of the completed glasses
> Subsequent servicing (refitting, realigning, readjusting, tightening) for a period not to exceed 90 days.

## Limitations

Payment for covered services will be limited in the following manner:

1. Payment for an eye examination and refraction is limited to once every 12 months for subscribers.

2. Payment for lenses or contact lenses is limited to once every 12 months for subscribers. Eligibility will be determined from the date of the last previous refraction.

3. Regardless of the age of the subscriber,

prescription;

4. replacement of lost, stolen, broken or damaged lenses, contact lenses or frames unless the frequency limitations are met;

5. sunglasses, whether or not requiring a prescription (tinted glasses with a tint other than Number 1 or Number 2 are considered to be sunglasses for the purpose of this exclusion), industrial safety glasses and safety goggles;

6. medical or surgical treatment of the eye;

7. diagnostic services, such as diagnostic X-rays, cardiographic, encephalographic examinations and pathological or laboratory tests;

8. drugs or any other medications;

9. eye examinations or materials necessitated by employment or furnished as a condition of employment;

10. telephone consultations, charges for failure to keep a scheduled appointment, or charges for completion of a claim form;

11. duplicate and temporary devices, appliances, and services;

12. treatment or services for injuries resulting from the maintenance or use of a motor vehicle if such treatment or service is paid or payable under a plan or policy of motor vehicle insurance, including a certified self-insured plan, or payable in any manner under the Pennsylvania Motor Vehicle Financial Responsibility Law;

13. any other service or treatment except as provided in this booklet.

THE PENNVISION III PROGRAM IS NOT AVAILABLE ON A DIRECT BILLING BASIS.

# X. SUBROGATION

Subrogation means that if you incur health care expenses for injuries due to an accident caused by another person or organization, the person or organization causing the accident is responsible for paying these expenses.

For example, if you or one of your dependents receives Blue Cross Blue Shield benefits for injuries caused by another person or organization, Blue Cross Blue Shield has the right, through subrogation, to seek repayment from the other person or his/her insurance company for benefits already paid.

Blue Cross Blue Shield plans will provide eligible benefits when needed, but you may be asked to show documents or take other necessary actions to support Blue Cross Blue Shield plans in its subrogation efforts.

Subrogation does not apply to an individual insurance policy you may have purchased for yourself or your dependents or where subrogation is specifically prohibited by law.

\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*

**PLEASE NOTE:** While this booklet describes the principal features of this Blue Cross Blue Shield Plan, it is not to be considered the contract of benefits and provisions. The complete set of terms of coverage are set forth in the Group Agreement issued by Highmark Blue Cross Blue Shield, An Independent Licensee of the Blue Cross and Blue Shield Association.

You are hereby notified:

Your health care benefit program is between the Group, on behalf of itself and its employees, Highmark Blue Cross Blue Shield. Highmark Blue Cross Blue Shield is an independent corporation operating under a license from the Blue Cross and Blue Shield Association ("the Association"), which is a national association of independent Blue Cross and Blue Shield Plans throughout the United

States. Although all of these independent Blue Cross and Blue Shield Plans operate from a license with the Association, each of them is a separate and distinct corporation. The Association allows Highmark Blue Cross Blue Shield to use the familiar Blue Cross and Blue Shield words and symbols. Highmark Blue Cross Blue Shield shall be liable to the Group, on behalf of itself and its employees for any of Blue Cross Blue Shield obligations under your health care benefit program.

## Laws Affecting Program Benefits

Employees in certain states may be subject to state and federal laws which impact health insurance coverage. The benefits of this Program will be modified to reflect the provision of such laws.

EXHIBIT O



**BlueCross**
of California

*Legal Department*

May 15, 2008

Via Fax (310) 556-5959

Janet Hensch
Stroock, Stroock & Lavan, LLP
2029 Century Park East, Suite 1600
Los Angeles, CA 90067

Re:    Noemia Carvalho v Credit Counseling, Case No. M80093

Dear Ms. Hensch:

After searching various areas of Blue Cross of California and Wellpoint, the parent company, we believe that the 2001 claim you are seeking information regarding is through coverage not with our particular Blue Cross. This is why we are unable to locate any claim information with regard to the Bayside charges or her coverage in 2001 with Blue Cross of California. Judging by the first identification card you provided she had coverage with us at one time, however not in 2001. There are many licensees of the Blue Cross/Blue Shield Association. It appears from the identification card you recently faxed to us that in 2001 Ms. Carvalho was covered through Highmark Blue Cross Blue Shield of Pennsylvania. They are not a part of Wellpoint Health as they are an independent licensee, however the address we found for them is Highmark BC & BS, 120 Fifth Avenue Place, Pittsburgh, PA 15222. The phone number for their main office is (412) 544-7000.

I apologize for the delay in getting this information to you, but it took a bit of research to discover. Unfortunately, we are unable to provide any additional information regarding Ms. Carvalho's coverage in 2001.

Sincerely,


Sharon Lanergan
Senior Records Clerk
(818) 234-2029

Blue Cross of California is an independent Licensee of the Blue Cross Association (BCA).
The Blue Cross name and symbol are registered service marks of the BCA.

EXHIBIT P

*Law Offices of Ron Bochner*
*3333 Bowers Avenue, Suite 130*
*Santa Clara, California 95054*
*408-200-9890*



VIA FACSIMILE (310-556-5959) AND U.S. MAIL

May 29, 2007

Brian Frontino, Esq.
Strook
2029 Century Park East, Suite 1600
Los Angeles, CA 90067

      Re:  Carvalho v. Trans Union

Dear Mr. Frontino:

In regard to your letter of May 15, 2007, you reference form interrogatory response 9.2 and complain that there are no documents reflecting those damages. First, the complaint does not currently allege damages as set forth in CC 1785.31(a), but only willful violation punitive damages and injunctive relief under CC 1785.31(b) and (c). You have stated an unwillingness to allow us to amend the complaint. So the interrogatories are not reasonably calculated to lead to the discovery admissible evidence. Hence, demand 22 is also not calculated and no good cause currently exists to require production. Second, and pertinent to your other concerns, is that Ms. Carvalho has produced all documents in her reasonable possession, custody or control and while she is actively attempting to locate documents and will produce them if and when he can, she would have no issue with you using a subpoena to obtain the documents you seek.

In regards to 11.1, personal injury, you ignore the fact that the objection not calculated to lead to the discovery of admissible evidence is also made. This interrogatory has nothing to do with this case and you have not stated any other reason to make me think it does. Please be more careful when writing me meet and confer letters to assure their completeness. Otherwise, I must assume you meet and confer in bad faith.

In regards to special interrogatory 2 and demands 2 and 25, again, Ms. Carvalho produced such documents as she has. I suggest you review the production again, particularly at 3-7, 12. Again, she is actively attempting to locate documents and will supplement and produce if and when the documents become available/has no problem with you issuing a subpoena.

In regards to interrogatories 16, 17, 20 and 21 and the class allegations, when you propounded these interrogatories, plaintiff was not exactly sure of the response and, at the same time, had propounded discovery to your client on these very subjects. You have so far failed to produce documents that would so indicate the answers and so, at present, information and belief is the

Letter to Frontino
May 29, 2007
Page Two

only basis that can be provided. However, you well know that Trans Union has no means of transmitting documents consumer disputants provide in support of disputes, despite asking disputants for them, and having a statutory duty to transmit them to furnishers of information, through its electronic dispute process. It also appears that Trans Union either does not respond to requests for details on how the reinvestigation was performed, or responds in a manner that comes nowhere near compliance with the statute. These are shown by the documents produced in response to your demand.

In specific regards to 17, regarding adequacy of representation, there is simply no showing of any antagonism with other members of the class and that is the sole criterion. *Marshall v. Holiday Magic* (9th Cir. 1977) 550 F2d 1173, 1177; *Daar v. Yellow Cab* (1967) 67 Cal.2d 695. If you really want an amended response on this, we can get it to you. But it is harassing and does not serve to get to the heart of this matter.

In regards 18, these are matters that can only be determined by your records. We are in the processing of doing this, as you know. If we need to look through every file of every California consumer making a dispute in the last four years, we will do so. Let us know if that is necessary.

In regards 22, see response above.

In regards to 23 and 24, conversation is ambiguous and requires subjective interpretation, viz., was information exchanged? Perhaps you should have used the word "contacts" or "communications". In any case, you have entirely ignored the other part of the response that includes an objection of asked and answered and references the form interrogatories responses and the document production. Please be more careful when writing me meet and confer letters to assure their completeness. Otherwise, I must assume you meet and confer in bad faith.

In regards to 25 and 26, plaintiff will attempt to provide a further response to this, although she would like a stipulation that you will allow her to amend her complaint first. Otherwise, the interrogatories are not calculated to lead to the discovery of admissible evidence. Let me know what you want to do.

In regards to demand 29, see response above.

In regards to demand 36, you misstate the demand. It did not seek all documents used in preparing responses to special interrogatories. It sought documents identified in the special interrogatories responses. As to these, we have produced those in the reasonable possession, custody or control of Ms. Carvalho. We continue to seek these documents, and will supplement our response if and when we locate them. Please be more careful when writing me meet and confer letters to assure their accuracy. Otherwise, I must assume that you meet and confer in bad

Letter to Frontino
May 29, 2007
Page Three

faith.

Please also take this as our request that Trans Union maintain any and all documents regarding the issues in dispute until such time as this matter is fully resolved.

If you have any question, do not hesitate to call.

Very truly yours,

Ron Bochner
RB